Paul R. Niehaus, Esq. (PN-3994)
NIEHAUS LLP
230 Park Avenue, 10th Floor
New York, NY  10169
(212) 551-1445

Dale Lischer, Esq. (DL-9708)
T. Hunter Jefferson, Esq. (TJ-8693)
Deborah A. Heineman, Esq. (DH-5681)
SMITH, GAMBRELL & RUSSELL, LLP
Promenade II, Suite 3100
1230 Peachtree St., N.E.
Atlanta, Georgia  30309
(404) 815-3500

Attorneys for Defendants Activ8now, LLC
and Active8media, LLC

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

| | |
|---|---|
| ADVANCE MAGAZINE PUBLISHERS INC.<br>d/b/a THE CONDÉ NAST PUBLICATIONS,<br><br>　　　　　　　　Plaintiff,<br><br>　　v.<br><br>ACTIV8NOW, LLC and ACTIVE8MEDIA, LLC,<br><br>　　　　　　　　Defendants,<br>　　　　　　　　Counterclaimants Activ8now<br>　　　　　　　　and Active8media,<br><br>v.<br><br>ADVANCE PUBLICATIONS, INC.<br>and RICHFX, INC.,<br><br>　　　　　　　　Additional Counterclaim<br>　　　　　　　　Defendants | CIVIL ACTION NO.:<br>1:05-cv-07516-(KMK)(DFE)<br><br>ACTIV8NOW, LLC AND<br>ACTIVE8MEDIA, LLC'S<br>BRIEF ON  MARKMAN<br>CLAIM CONSTRUCTION |

---

<u>**ACTIV8NOW, LLC AND ACTIVE8MEDIA, LLC'S**</u>
<u>**BRIEF ON MARKMAN CLAIM CONSTRUCTION**</u>

# TABLE OF CONTENTS

TABLE OF AUTHORITIES

Cases..............................................................................................iv

Patent Practice and Procedure References....................................................v

Treatises..............................................................................................v

Dictionaries..........................................................................................v

I. INTRODUCTION..............................................................................1

II. BACKGROUND OF THE INVENTION.................................................2

III. GOVERNING PRINCIPLES OF CLAIM CONSTRUCTION.....................3

IV. ARGUMENT...................................................................................6

    A. Terms Related to Static Media Objects (Joint Statement, Disputed Items 1 and 20)......................................................................6

        1. "Conventional Static Media Object" ('889 Patent) (Joint Statement, Disputed Item 1) ...........................................................6

        2. "Static Media Object" ('889 patent only) (Joint Statement, Disputed Item 20).......................................................................7

    B. Terms Related to Multimedia Object (Joint Statement, Disputed Items 5 and 14)......................................................................9

        1. "Multimedia Object" (Joint Statement, Disputed Item 5)................9

        2. "Receiving Control Input Selecting One of the Multimedia Objects" (Joint Statement, Disputed Item 14).........................................11

    C. "User Identification Code" (Joint Statement, Disputed Item 6)....................11

    D. Terms Related to Intervening Steps (Joint Statement, Disputed Items 12 and 18).......................................................................12

        1. "Providing An/Displaying An/Forwarding The Interactive Electronic Representation Of The Static Media Object In Response To Receiving The Unique Identification Tag" (Joint Statement, Disputed Item 12).......12

i

2.    "Retrieving The Interactive Electronic Representation Of The Static Media Object Based Upon The Unique Identification Tag" (Joint Statement, Disputed Item 18)……………………..…………..…....13

E.    Terms Related to the Relationship Among the Unique Identification Tag, the Interactive Electronic Representation, and the Static Media Object (Joint Statement, Disputed Items 2, 3, 4, 7, 8, 11, 15, 16, 17, and 19)…………………14

1.    "Interactive Electronic Representation" (Joint Statement, Disputed Item 2)……………………………………………………...…14

2.    "Unique Identification Tag" (Joint Statement, Disputed Item 3)………..15

3.    "Image" (Joint Statement, Disputed Item 4)……………………………18

4.    The four phrases: "The Unique Identification Tag Appearing On The Static Media Object Along With The Image Having The At Least Two Objects," "The Unique Identification Tag Appearing On The Conventional Static Media Object Along With The Image Having The At Least Two Objects," "Identifying A Physical Static Media Object With A Unique Identification Tag," and "Associating The Physical Static Media Object With A Unique Identification Tag," (Joint Statement, Disputed Items 7, 8, 15, and 16)……………………………………………...19

5.    The two phrases: "Creating An Association Between The Unique Identification Tag And An Interactive Electronic Representation Of The Static Media Object Comprising At Least One Multimedia Object" and "Associating The Interactive Electronic Representation Of The Physical Static Media Object With The Unique Identification Tag" (Joint Statement, Disputed Items 11 and 17)…………………………………...20

6.    "Imprinting A Static Media Object With A Unique Identification Tag" (Joint Statement, Disputed Item 19)……………………………………22

F.    Terms Related to the World Wide Web Embodiment Claimed by the Patentees (Joint Statement, Disputed Items 2, 9, 10, 12, and 13)………………22

1.    "Interactive Electronic Representation" (Joint Statement, Disputed Item 2)……………………………………………………………23

2.    The two phrases: "Receiving the Unique Identification Tag" and "Receiving the Unique Identification Tag and a User Identification Code" (Joint Statement, Disputed Items 9 and 10)………………….....24

LIT\947266.6

3.      "In Response To The Selection Of The Multimedia Object, Associating Demographic Information With The User Identification Code" (Joint Statement, Disputed Item 13)……………………………….…..24

V.     CONCLUSION……………………………………………………………….…..25

LIT\947266.6

# TABLE OF AUTHORITIES

## CASES

*Abtox, Inc. v. Exitron Corp.*,
122 F.3d 1019 (Fed. Cir. 1997)........................................................................18

*Electro Med. Sys., S.A. v. Cooper Life Sciences*,
34 F.3d 1048 (Fed. Cir. 1994)......................................................................6, 16

*Elkay Mfg. Co. v. Ebco Mfg. Co.*,
192 F.3d 973 (Fed. Cir. 1999)........................................................................17

*Gart v. Logitech, Inc.*,
254 F.3d 1334 (Fed. Cir. 2001)......................................................................15

*Intervet Am. v. Kee-Vet Lab.*,
887 F.2d 1050 (Fed. Cir. 1989).........................................................................5

*Johnson Worldwide Assocs. V. Zebco, Corp.*,
175 F.3d 985 (Fed. Cir. 1999)........................................................................20

*KCJ Corp. v. Kinetic Concepts, Inc.*,
223 F.3d 1351 (Fed. Cir. 2000)......................................................................17

*Markman v. Westview Instruments, Inc.*,
52 F.3d 967 (Fed. Cir. 1995), *aff'd*, 517 U.S. 370 (1996) ........................3, 16

*Mars Inc. v. H.J. Heinz Co.*,
377 F.3d 1369 (Fed. Cir. 2004)......................................................................13

*Medrad, Inc. v. MRI Devices, Corp.*,
401 F.3d 1313 (Fed. Cir. 2005).........................................................................4

*Moleculon Research Corp. v. CBS, Inc.*,
793 F.2d 1261 (Fed. Cir. 1986)......................................................................13

*Northern Telecom Ltd. v. Samsung Elecs. Co.*,
215 F.3d 1281 (Fed. Cir. 2000)......................................................................20

*Novo Nordisk of N. Am., Inc. v. Genetech, Inc.*,
77 F.3d 1364 (Fed. Cir. 1996)........................................................................23

*Phillips v. AWH Corp.*,
415 F.3d 1303 (Fed. Cir. 2005)..............................................................3, 4, 5

LIT\947266.6

*Pitney Bowes, Inc. v. Hewlett-Packard Co.*,
182 F.3d 1298 (Fed. Cir. 1999)..................................................................8

*Scanner Technoologies Corp. v. ICOS Vision Systems*,
365 F.3d 1299 (Fed. Cir. 2004)................................................................17

*Specialty Composites v. Cabot Corp.*,
845 F.2d 981 (Fed. Cir. 1988).........................................................5, 6, 16

*Teleflex, Inc. v. Ficosa N. Am. Corp.*,
299 F.3d 1313 (Fed. Cir. 2002)................................................................10

*Vanderlande Indust. Nederland BV v. International Trade Comm'n*,
366 F.3d 1311 (Fed. Cir. 2004)..................................................................9

*Vitronics Corp. v. Conceptronic, Inc.*,
90 F.3d 1576 (Fed. Cir. 1996)....................................................................3

## PATENT PRACTICE AND PROCEDURE  REFERENCES

MANUAL OF PATENT EXAMINING PROCEDURE, § 2111.03 (8th ed. 2003) ......................13

## TREATISES

ROBERT C. FABER, LANDIS ON MECHANICS OF PATENT CLAIM DRAFTING 531 (3d ed. 1990).......18

## DICTIONARIES

WEBSTER'S NINTH NEW COLLEGIATE DICTIONARY (1990) .............................................9

WIKIPEDIA , THE FREE ENCYCLOPEDIA, *available at* http:en.wikipedia.org/wiki/multimedia ........9

LIT\947266.6

## I.    INTRODUCTION

Activ8now, LLC and Active8media, LLC (collectively "Activ8") assert that Advance Magazine Publishers Inc., d/b/a The Condé Nast Publications, and Advance Publications, Inc. (collectively "Advance"), and RichFX, Inc. ("RichFX") have infringed United States Patent Nos. 6,557,006 ("the '006 Patent") (Ex. 1)[1] and 6,535,889 ("the '889 Patent") (Ex. 2) owned by Activ8now, LLC (collectively the "Activ8 Patents"). The Activ8 Patents disclose and claim methods for displaying interactive electronic representations ("IERs") of print magazine pages or electronic static media objects using the web browser of a personal computer.

At issue here are the meaning and construction of the asserted claims of the Activ8 Patents. The meaning of the claims is a prerequisite to a finding of patent infringement. Particularly, the construction for each of twenty terms and phrases from the asserted claims of the Activ8 Patents is before the Court for resolution. The parties have filed a Joint Claim Construction Statement ("Joint Statement") (Ex. 3) that identifies the disputed terms and phrases.

In accordance with well-established Federal Circuit precedent, Activ8 seeks reasonable and accurate claim constructions that: (1) are based upon the plain and ordinary meaning of the claim language; (2) comport with the understanding of one of ordinary skill in the art; and (3) are supported by the patent specifications and prosecution histories. Moreover, where the specifications disclose broad inventive concepts, as is the case with the Activ8 Patents, the specifications support claims of similarly broad scope.

In their proposed claim construction (Joint Statement), Advance and RichFX apparently ask the Court to ignore the fundamental rules of claim construction and ask the Court to read

---

[1]    All exhibit references herein correspond to Activ8's Appendix of Exhibits filed herewith.

LIT\947266.6

multiple limitations into the claims that are cherry picked from the preferred embodiments of the invention and are solely designed to save Advance and RichFX from their infringement.

## II.    BACKGROUND OF THE INVENTION

The Activ8 Patents disclose and claim methods for displaying an Interactive Electronic Representation of a Static Media Object (a print magazine page) using a www (World Wide Web) browser of a personal computer.  In arriving at their invention, the inventors understood that there was a need for a method for displaying an Interactive Electronic Representation corresponding to and duplicating a Static Media Object, such as a page of a magazine.  The invention was intended to bridge the gap between print media (static media) and electronic media (computers) in order to provide interactive capability for print media where none existed previously.  The inventors also recognized the need for an Interactive Electronic Representation of an associated Static Media Object that would allow tracking of Demographic Information about consumers of the Static Media Object, for example the readers of a magazine.

In order to satisfy those needs, the Activ8 Patents disclose creating an Interactive Electronic Representation that is an electronic duplicate of the Image on the magazine page and storing the Interactive Electronic Representation on a www server that is accessible from a standard www browser (Explorer, Netscape, etc.).  The Interactive Electronic Representation has links so that the user of a www browser can access additional information about the Image displayed by the Interactive Electronic Representation.

In order to access the Interactive Electronic Representation by means of a www browser, a Unique Identification Tag is located on the page of the magazine (the Static Media Object) that is to be activated.  The Unique Identification Tag may consist of a sequence of letters and numbers and may also consist of information that identifies publication, region, issue, date, or page numbers for the associated Static Media Object.  The Unique Identification Tag is a

2

reference tag that corresponds to the Static Media Object and associates the Static Media Object with the related Interactive Electronic Representation stored on the www server. By inputting the Unique Identification Tag into the www browser, the user can access the associated Interactive Electronic Representation stored on the www server. Once the Interactive Electronic Representation is accessed, the user can then click on the links to get additional information about the Image displayed by the Interactive Electronic Representation.

One example of a Static Media Object is an advertisement on a page in a fashion magazine which depicts a model wearing a skirt and blouse marketed by a specific designer. The magazine reader, using a www browser, can view the magazine's website, click on the designer's name or trademark (the Unique Identification Tag), and see the Interactive Electronic Representation of the printed page or pages on which the advertisement is located. In order to gain additional information about the skirt or blouse shown in the advertisement, the reader clicks on the links associated with the skirt or blouse in the Interactive Electronic Representation, and additional information is then displayed for the reader. Further, because the website has the ability to collect Demographic Information based on the use of cookies, each click by the reader can be tracked in order to determine the number of clicks and the amount of time that the user spends reviewing a particular advertisement.

## III.    GOVERNING PRINCIPLES OF CLAIM CONSTRUCTION

Claim construction is a question of law. *Markman v. Westview Inst., Inc.*, 52 F.3d 967 (Fed. Cir. 1995), *aff'd*, 517 U.S. 370 (1996). When construing patent claims, courts give primary importance to the "intrinsic evidence of record, i.e., the patent itself, including the claims, the specification and, if in evidence, the prosecution history." *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996). *Accord Phillips v. AWH Corp.*, 415 F.3d 1303, 1314 (Fed. Cir. 2005).

3

In *Phillips*, the Federal Circuit clarified the main principles of claim construction and identified certain guidelines for construing the claims. First, the Federal Circuit emphasized that it is a "bedrock principle" of patent law that "the claims of a patent define the invention to which the patentee is entitled the right to exclude." *Id.* at 1312 (citations omitted). "Each claim term is given the ordinary and customary meaning . . . that the term would have to a person of ordinary skill in the art in question . . . as of the effective filing date of the patent application." *Id.* at 1312, 1313. The meaning of the terms to one of ordinary skill in the art forms a "starting point" for construing the claims. *Id.* at 1313.

Second, each claim term of a patent must be read in the context of the particular claim in which it appears, and in the context of the entire patent, including the specification and other claims. *Id.* As the Federal Circuit held in *Medrad, Inc. v. MRI Devices, Corp.*, 401 F.3d 1313 (Fed. Cir. 2005), "[w]e cannot look at the ordinary meaning of the term . . . in a vacuum. Rather, we must look at the ordinary meaning in the context of the written description and the prosecution history." Hence, the specification "is always highly relevant to the claim construction analysis . . . and is the single best guide to the meaning of a disputed term." *Phillips*, 415 F.3d at 1315 (citation omitted).

Third, the Court can consider the prosecution history of the patent. This consists of the full record of the proceedings to obtain the patent before the Patent Office, including the prior art cited by the examiner during examination. *Id.* However, the Federal Circuit noted that the prosecution history often lacks the clarity of the specification and is less useful in construing claims.

Fourth, the Court can consider extrinsic evidence, including but not limited to expert and inventor testimony, dictionaries, and learned treatises. *Id.* at 1317. While such evidence may be

4

useful to a court construing the claims, extrinsic evidence must be considered in the context of

the intrinsic evidence and be given less weight because extrinsic evidence is not part of the

intrinsic record and can be less reliable. *Id.* at 1319.

Importantly, there is no rigid process for claim construction. As explained by the Federal

Circuit:

> [T]here is no magic formula or catechism for conducting claim construction. Nor
> is the court barred from considering any particularized sources or required to
> analyze sources in any specific sequence, as long as those sources are not used to
> contradict claim meaning that is unambiguous in light of the intrinsic evidence....
> The sequence of steps used by the judge in consulting various sources is not
> important; what matters is for the court to attach the appropriate weight to be
> assigned to those sources in light of the statutes and policies that inform patent
> law.

*Id.* at 1324. One important caveat the *Phillips* court stressed, however, was that an initial focus

on the claims and specification does not mean that limitations from the specification can be

imported into the claims. *Id.* at 1323-24. Limitations from the preferred or alternative

embodiments disclosed in the specification cannot be incorporated into the claims absent some

compelling reason found in the claim language itself, the understanding of a person skilled in the

art, the specification, or the file history.

When the meaning of words in a claim is in dispute, the specification and prosecution

history can provide relevant information about the scope and meaning of the claims. *Specialty*

*Composites v. Cabot Corp.,* 845 F.2d 981, 986 (Fed. Cir. 1988). Claims, however, are not to be

interpreted by adding limitations appearing only in the specification. *See Intervet Am. v. Kee-Vet*

*Lab.,* 887 F.2d 1050, 1053 (Fed. Cir. 1989) ("No matter how great the temptations of fairness or

policy making, courts do not rework claims. They only interpret them."). "Thus, although the

specifications may well indicate that certain embodiments are preferred, particular embodiments

appearing in a specification will not be read into the claims when the claim language is broader

than such embodiments." *See Electro Med. Sys., S.A. v. Cooper Life Sciences*, 34 F.3d 1048, 1054 (Fed. Cir. 1994) (citing *Specialty Composites*, 845 F.2d at 987).

Applying these principles, Activ8 urges the Court to construe the claim terms at issue as set forth below.

## IV.    ARGUMENT

### A.    Terms Related to Static Media Objects (Joint Statement, Disputed Items 1 and 20)

#### 1.    "Conventional Static Media Object" ('889 Patent) (Joint Statement, Disputed Item 1)

Activ8 asserts that the term "Conventional Static Media Object" in the claims of the '889 Patent means "an electronic publication or electronic visual material, such as a web page or digital image." The parties have agreed that for both Activ8 Patents "Physical Static Media Object" means "a static publication or object such as a page in a magazine or a newspaper, *that cannot by itself provide access to related electronic information*." (Ex. 3.) For the '006 Patent, the parties have agreed that "Static Media Object" means the same as Physical Static Media Object. Advance and RichFX propose that Conventional Static Media Object also be defined the same as Physical Static Media Object with the limiting phrase "*that cannot by itself provide access to related electronic information*."

In the '889 Patent, "Conventional Static Media Object" has a different meaning and is defined by the patentees in the '889 Patent to mean an electronic publication or electronic visual material, such as a web page or digital image. '889 Patent, Col. 8:3-7. The invention of the '889 patent was specifically developed to include a new category of Static Media Objects including electronic publications or electronic visual material. '889 Patent, Col. 2:14-36. Particularly, the '889 Patent discloses two separate types of Static Media Objects, Physical Static Media Objects

LIT\947266.6

(sometimes referred to as traditional static media objects) and Conventional Static Media Objects:

> Similar to traditional [physical] static media, conventional static media present in some electronic publications on the Internet, typically do not provide any detailed information about products shown in digital or electronic images within the electronic publication.  While such digital or electronic images may be "hot-linked" to corresponding Internet sites, such static media do not provide a break down of products forming the digital or electronic image contained within the electronic publication.

'889 Patent, Col. 2:14-18.

Despite the explicit distinction drawn in the '889 specification between Conventional Static Media Objects and Physical Static Media Objects, Advance and RichFX propose a construction for Conventional Static Media Object that would engraft the limiting phrase "that cannot by itself provide access to related electronic information."  Advance and RichFX's proposed construction is unsupportable in view of the disclosures of the '889 patent, and the meaning of Conventional Static Media Object is not limited as Advance and RichFX urge.

### 2.    "Static Media Object" ('889 patent only) (Joint Statement, Disputed Item 20)

Activ8 asserts that the term "Static Media Object" in the claims of the '889 Patent means "a physical/traditional static media object or conventional static media object."  As explained above, the specification of the '889 Patent supports that definition.

Although courts generally start with the presumption that a claim term cannot be given a different meaning in the various claims of the same or related patent, this presumption may be overcome if the written description or prosecution history provides for different uses of the term, or if some claims using the term contain certain limitations that other claims using the term do not.  Accordingly, the meaning of a term used in a patent claim can be different in a related patent because the related patent contains new matter that contemplates a different use of the

7

term. In *Pitney Bowes, Inc. v. Hewlett-Packard Co.*, 182 F.3d 1298, 1310-11 (Fed. Cir. 1999), the Federal Circuit held that in certain circumstances, a court may construe a claim term that appears in claims of different, related patents as having different meanings when the written description uses the terms differently. The Federal Circuit set forth the following rule as an exception to the general principle favoring consistency in meaning:

> In circumstances such as this, where the language of the written description is sufficient to put a reader on notice of the different uses of a term, and where those uses are further apparent from publicly-available documents referenced in the patent file, it is appropriate to depart from the normal rule of construing seemingly identical terms in the same manner. This entirely accords with the public notice function of claims.

*Pitney Bowes*, 182 F.3d at 1311.

The '006 Patent discloses a system and method for displaying an Interactive Electronic Representation of a Physical Static Media Object, such as a page in a magazine, newspaper, or catalog. '006 Patent, Col. 2:19-23. The '889 Patent issued from a continuation-in-part application of the '006 Patent and, by contrast, discloses displaying Interactive Electronic Representations of both Physical Static Media Objects (print media) and Conventional Static Media Objects (electronic publications).

When read in the context of the '889 Patent, the term "Static Media Object" in the claims of the '889 Patent is plainly different than the term "Static Media Object" in the claims of the '006 Patent. The '889 Patent specification provides a "Brief Explanation of Terms" which explicitly states that "[t]he term 'static media' includes both traditional and conventional publications." '889 Patent, Col 7:60-62. Consequently, the term "Static Media Object" in the claims of the '889 Patent means either a Physical Static Media Object, i.e. "a static publication or object such as a page in a magazine, a newspaper, or a catalog, that cannot by itself provide

8

access to related electronic information," or a Conventional Media Object, i.e. "an electronic publication or electronic visual material, such as a web page or digital image."

**B.    Terms Related to Multimedia Object (Joint Statement, Disputed Items 5 and 14)**

**1.    "Multimedia Object" (Joint Statement, Disputed Item 5)**

Activ8 asserts that the term "Multimedia Object" in the claims of the Activ8 Patents means "an object from a media database 'hot-linked' to an Interactive Electronic Representation that may be transmitted to a computer." The definition is based both on the plain and ordinary meaning of the term Multimedia Object and on the intrinsic evidence of the Activ8 Patents. Because "multimedia" is a common term, definitions from general dictionaries are relevant to determine its meaning. *See Vanderlande Indust. Nederland BV v. International Trade Comm'n*, 366 F.3d 1311, 1321 (Fed. Cir. 2004) ("To the extent that this artisan would understand a claim term to have the same meaning in the art as that term has in common, lay usage, a general-usage dictionary can be helpful aid to claim construction.").

The term "multimedia" means "using, involving, or encompassing several media" WEBSTER'S NINTH NEW COLLEGIATE DICTIONARY (1990) or "the use of several different media (e.g. text, graphics, animation, video, and interactivity) to convey information," WIKIPEDIA, THE FREE ENCYCLOPEDIA, *available at* http:en.wikipedia.org/wiki/multimedia. Active8's definition of Multimedia Object is consistent with the dictionary definitions of "multimedia."

Advance and RichFX, on the other hand, would have the Court import a limitation from the preferred embodiment into the definition of Multimedia Object in the claims. Such importation of limitations is not permitted. *See Teleflex, Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1326 (Fed. Cir. 2002) (holding that limitations from the specification are not to be read into the claims). Advance and RichFX propose that Multimedia Object be limited to the

9

preferred embodiment of "sound clips or movie files associated with a Static Media Object." The Activ8 Patents disclose that the Interactive Electronic Representation "*may* comprise multimedia objects, such as sound clips or movie files associated with static media object." '006 Patent, Col. 8:46-50 and '889 Col. 10:29-33 (emphasis added).   Contrary to Advance and RichFX's proposed construction, the specification does not limit the definition of Multimedia Object to only sound clips and movie files but instead cites them merely as examples in the preferred embodiment.

Furthermore, Activ8's broader construction finds support in Figure 4 of the Activ8 Patents.  In response to receiving the Unique Identification Tag from the user, www server 142 retrieves an Interactive Electronic Representation associated with the Static Media Object 202a from media database 420 and transmits that Interactive Electronic Representation to the www browser running on the user's personal computer 100.   The media database contains the Interactive Electronic Representation and other objects that are "hot-linked" to the Interactive Electronic Representation.  '006 Patent, Col. 9:12-17 and '889 Patent, Col. 12:22-28.  Later in response to the user clicking on a selected portion of the Interactive Electronic Representation, the www browser may retrieve additional Multimedia Objects associated with the selected portion of the Interactive Electronic Representation from the media database.  These Multimedia Objects may then be transmitted to the user's computer.  '006 Patent, Col. 9:31-36 and '889 Patent, Col. 12: 41-45.  Thus, the reference to additional Multimedia Objects in the latter step demonstrates that the term Multimedia Object encompasses those objects stored in the media database that are hot-linked to an Interactive Electronic Representation and that may be transmitted to a user's computer.  Consequently, the specifications of the Activ8 Patents broadly

LIT\947266.6

disclose Multimedia Objects so that the term Multimedia Objects in the claims in not limited to the preferred embodiment of sound clips and movie files as urged by Advance and RichFX.

### 2.    "Receiving Control Input Selecting One Of The Multimedia Objects" (Joint Statement, Disputed Item 14)

Activ8 asserts that the phrase "receiving control input selecting one of the multimedia objects" in the claims of the Activ8 Patents means "the user selects a Multimedia Object." The only dispute to this definition relates to the definition of the term Multimedia Object discussed above.

### C.    "User Identification Code" (Joint Statement, Disputed Item 6)

Activ8 asserts that the term "User Identification Code" in the claims of the Activ8 Patents means "a code or other information that identifies a computer user that accesses the Interactive Electronic Representation on a www server." Advance and RichFX contend that the User Identification Code must be input by a user. Nothing in the claim language compels the construction urged by Advance and RichFX. The claim language is broad enough to encompass any User Identification Code whether input by the user or not.

A common User Identification Code may be in the form of a cookie that websites use to identify computers that access the website as is well known to persons of ordinary skill in the art. The specifications of the Activ8 Patents disclose User Identification Codes that are input by a user and User Identification Codes that are embodied in cookies. "Such demographic information [user information input by the user], and additional information as known to those skilled in the art [cookies], may also be compiled by demographic engine 414." '889 Patent, Col. 13:8-10. Consequently, the term User Identification Code is broadly disclosed in the specifications and should be construed to encompass information resulting from the ordinary use

LIT\947266.6

of cookies as well as user input information. Again, there is no basis for compelling the term User Identification Code to be limited to a particular one of the alternative embodiments.

### D. Terms Related to Intervening Steps (Joint Statement, Disputed Items 12 and 18)

Advance and RichFX urge the Court to import a negative limitation not even found in the specifications into disputed items 12 and 18. Particularly, Advance and RichFX seek to limit the claims to a particular sequence that excludes intervening steps in the claimed methods.

### 1. "Providing An/Displaying An/Forwarding The Interactive Electronic Representation Of The Static Media Object In Response To Receiving The Unique Identification Tag" (Joint Statement, Disputed Item 12)

Activ8 asserts that the phrases "providing an interactive electronic representation of the static media object in response to receiving the unique identification tag," "displaying an interactive electronic representation of the static media object in response to receiving the unique identification tag," and "forwarding the interactive electronic representation of the static media object in response to receiving the unique identification tag" in the claims of the Activ8 Patents mean "the www server transmits the Interactive Electronic Representation to a www browser of a user." Advance and RichFX propose that the "Interactive Electronic Representation is displayed as a direct result of the submission of a Unique Identification Tag without any intervening step(s) or activity." Advance and RichFX propose adding the limitation "without any intervening step(s) or activity" to the phrases so that Advance and RichFX can avoid infringement by the addition of meaningless intervening steps to their infringing methods.

All of the claims that include the phrases at issue use the open-ended term "comprising." For example, Claim 1 of the '006 Patent states: "[a] method for displaying an interactive electronic representation of a corresponding static media object, comprising: displaying an interactive electronic representation of the static media object in response to receiving the unique

12

identification tag." The term "comprising" is a transitional phrase that joins the preamble of a claim with the body of a claim and is a term of art that affects the legal scope of a claim. The Manual of Patent Examining Procedure explains that "'comprising,'…is synonymous with 'including,' 'containing,' or 'characterized by.'" MANUAL OF PATENT EXAMINING PROCEDURE § 2111.03 (2003); *see also Mars Inc. v. H.J. Heinz Co.*, 377 F.3d 1369 (Fed. Cir. 2004). Furthermore, it is well established that the term "comprising" is inclusive or open-ended and does not exclude additional, unrecited elements or method steps. *See Moleculon Research Corp. v. CBS, Inc.*, 793 F.2d 1261 (Fed. Cir. 1986) (citing MANUAL OF PATENT EXAMINING PROCEDURE, § 2111.03 (6th ed. 1997)).

Therefore, the term "comprising" in the claims of the Activ8 Patents are infringed by any method that has each of the claim steps without regard to the addition of any intervening steps or activity. Adding the limitation of "without any intervening step(s) or activity," as proposed by Advance and RichFX, is not justified by the claim structure and should not be permitted.

**2.    "Retrieving The Interactive Electronic Representation Of The Static Media Object Based Upon The Unique Identification Tag" (Joint Statement, Disputed Item 18)**

Activ8 asserts that the phrases "retrieving the interactive electronic representation of the static media object based upon the unique identification tag" in the claims of the Activ8 Patents means simply that "a www server retrieves the Interactive Electronic Representation based on the Unique Identification Tag." Advance and RichFX again propose that the "Interactive Electronic Representation must be retrieved in direct response to the submission of a Unique Identification Tag without any intervening step(s) or activity." For the reasons discussed above, such a construction is contrary to established law of claim construction.

13

E.    **Terms Related to the Relationship Among the Unique Identification Tag, the Interactive Electronic Representation, and the Static Media Object (Joint Statement, Disputed Items 2, 3, 4, 7, 8, 11, 15, 16, 17, and 19)**

1.    **"Interactive Electronic Representation" (Joint Statement, Disputed Item 2)**

Activ8 asserts that the term "Interactive Electronic Representation" in the claims of the Activ8 Patents means "an electronically recreated representation of the Static Media Object transmitted from a www ('World Wide Web') server." The claim language and specifications of the Activ8 Patents support this definition. Advance and RichFX contend that "Interactive Electronic Representation" should be defined as "an electronic representation of a Static Media Object <u>absent</u> the Unique Identification Tag that provides electronic access to related additional electronic information." Advance and RichFX's proposed limitation of "Static Media Object absent the Unique Identification Tag" is a transparent attempt to limit the claims to the preferred embodiment and thereby avoid the consequences of their infringement.

Nothing in the claim language compels or even suggests the proposed claim limitation that removes the Unique Identification Tag from the Interactive Electronic Representation of the Static Media Object. The claim language instead states: "the unique identification tag and the image with the two different objects represented within the image being visible to the user on the static media object" and "displaying the Interactive Electronic Representation of the static media object." Claims 1 of the '006 Patent and the '889 Patent. Because the Unique Identification Tag and the Image are visible to the user on the Static Media Object and because the Interactive Electronic Representation is a representation of the Static Media Object, logic compels that the Unique Identification Tag is part of the Interactive Electronic Representation.

While Figure 3b of the Activ8 Patents shows the Interactive Electronic Representation without the Unique Identification Tag, the written description does not mention the presence or

14

absence of the Unique Identification Tag.  The presence or absence of the Unique Identification Tag on the Interactive Electronic Representation has no bearing on the operation of the claimed method, and therefore reading that limitation into the claims is clearly improper.  A patent's drawings were "not meant to represent 'the' invention or to limit the scope of coverage defined by the words used in the claims themselves."  *Gart v. Logitech, Inc.*, 254 F.3d 1334, 1342 (Fed. Cir. 2001).

Based on the foregoing, no justification exists for limiting the claims, as proposed by Advance and RichFX, to an Interactive Electronic Representation that presents an Image that does not display the Unique Identification Tag.

### 2.    "Unique Identification Tag" (Joint Statement, Disputed Item 3)

Activ8 asserts that the term "Unique Identification Tag" in the claims of the Activ8 Patents means "a reference that corresponds to a Static Media Object."  Advance and RichFX, however, seek to import at least three unsupportable limitations from the preferred embodiment of the invention into the claims by their proposed claim interpretation.  Advance and RichFX contend that a "unique identification tag" means "an identifier that is [1] *separately added to a single* Static Media Object that is [2] *associated with a single* Interactive Electronic Representation creating [3] a *unique 1:1 correspondence* between the Static Media Object and the Interactive Electronic Representation."

The broad disclosure of the Unique Identification Tag in the specifications does not suggest or compel such narrow limitations apparently imported by Advance and RichFX from the preferred embodiment of the invention.  The specifications of the Activ8 Patents describe the Unique Identification Tags broadly as follows:  "[U]nique identification tags 204a and 204b are utilized to create an association between the static media object, such as left page 202a, and a

15

related interactive electronic representation of the static media object." '006 Patent, Col. 7:40-44; '889 Patent, Col. 9:16-20. Nothing in that disclosure compels the limitations of "separately added to a single Static Media Object," "associated with a single Interactive Electronic Representation," or "a unique 1:1 correspondence." Again, it is "function and purpose of the claims," not the "written description part of the specification itself," to "delimit the right to exclude." *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 980 (Fed. Cir. 1995); *see also Specialty Composites*, 845 F.2d at 987, 6. U.S.P.Q.2d at 1605 ("Where a specification does not *require* a limitation, that limitation should not be read from the specification into the claims."). *See Electro Med. Sys., S.A. v. Cooper Life Sciences*, 34 F.3d 1048, 1054 (Fed. Cir. 1994) ("[P]articular embodiments appearing in a specification will not be read into the claims when the claim language is broader than such embodiments.").

With respect to the proposed "separately added to a single Static Media Object" limitation, the specifications of the Activ8 Patents explicitly contemplate embodiments in which the Unique Identification Tag is part of the Static Media Object and not separately added. For instance, both Activ8 Patents disclose that the Unique Identification Tag may comprise a sequence of unique numbers and letters. The Unique Identification Tag may also comprise information that conveys a specific publication, region, issue, date, or page number, or the Unique Identification Tag may be shown adjacent to a well-known logo or symbol that the reader may associate with a www address on the Static Media Object. '006 Patent, Col. 7:47-50; '889 Patent, Col. 9:23-26. There is nothing in any of that broad disclosure to suggest that the Unique Identification Tag is separately added to the Static Media Object. A page number, for example, is not "separately added" to a magazine page.

LIT\947266.6

The proposed "separately added" limitation also raises questions of temporal indefiniteness. For example, if a page number is separately added to a magazine page or if a trademark is separately added to an advertisement, when does the separate addition occur? Does the separate addition of a trademark to an advertisement occur after the advertisement photograph is originally taken, after the advertisement artwork is completed, or after the page proofs of the final magazine page are completed? Therefore, not only is the "separately added" limitation not compelled in view of the broad disclosure of the patent specifications, the proposed limitation has no discernible meaning from which infringement could be determined.

With respect to the "associated with a single Interactive Electronic Representation" limitation, there is nothing in the disclosures or claims of the Activ8 Patents that requires that the Unique Identification Tag is "associated with a single Interactive Electronic Representation." The claim language specifically states that the method includes "creating an association between the unique identification tag and *an* interactive electronic representation of the static media object." '889 Patent, claim 1. The use of the phrase "an interactive electronic representation" in the claims is clearly broader in scope than the phrase "a single interactive electronic representation" urged by Advance and RichFX. In conventional claim construction, the term "an" encompasses both the singular and the plural while the term "a single" only encompasses the singular. It is well established that the indefinite article "a" or "an" in patent parlance carries the meaning of "one or more" in open-ended claims containing the transitional phrase "comprising" as is the case in the claims at issues here. *See Scanner Tech. Corp. v. ICOS Vision Sys.*, 365 F.3d 1299, 1304 (Fed. Cir. 2004); *KCJ Corp. v. Kinetic Concepts, Inc.*, 223 F.3d 1351, 1356 (Fed. Cir. 2000); *Elkay Mfg. Co. v. Ebco Mfg. Co.*, 192 F.3d 973, 977 (Fed. Cir. 1999);

17

*Abtox, Inc. v. Exitron Corp.*, 122 F.3d 1019, 1023 (Fed. Cir. 1997); *see also* ROBERT C. FABER, LANDIS ON MECHANICS OF PATENT CLAIM DRAFTING 531 (3d ed. 1990).

Similarly no basis exists for limiting the meaning of the Unique Identification Tag to a "unique 1:1 correspondence between the Static Media Object and the Interactive Electronic Representation." The "1:1 correspondence" limitation is simply imported from the preferred embodiment without any basis. Further, the expression "a unique 1:1 correspondence between the Static Media Object and the Interactive Electronic Representation" is vague and indefinite and is not helpful in construing the claims. If Advance and RichFX's proposed construction only means that the Interactive Electronic Representation includes a duplicate image of the Image on the Static Media Object, then the proposed limitation is redundant because that limitation already appears in other parts of the claims. If, on the other hand, the proposed limitation means something else, Advance and RichFX must come forward with a proposed construction that is clear and unambiguous.

Based on the foregoing, "unique identification tag" should be defined simply as "a reference that corresponds to a Static Media Object" in conformity with the broad disclosure of the specifications of the Activ8 patents.

### 3.    "Image" (Joint Statement, Disputed Item 4)

Activ8 asserts that the term "Image" in the claims of the Activ8 Patents means "a visual depiction including Objects shown on the Static Media Object (page)." Advance and RichFX's proposed construction of the term Image is "the visual representation in the Static Media Object distinct from the Unique Identification Tag." That proposed construction is a further attempt to bolster the "separately added" limitation found in Advance and RichFX's proposed definition of the Unique Identification Tag (Joint Statement, Item 3). For the reasons previously identified with respect to Advance and RichFX's proposed addition of the "separately added" limitation to

18

the Unique Identification Tag, the construction offered by Advance and RichFX should be rejected and the ordinary meaning for the term Image proposed by Activ8 should be adopted.

    **4.**    **The four phrases: "The Unique Identification Tag Appearing On The Static Media Object Along With The Image Having The At Least Two Objects," "The Unique Identification Tag Appearing On The Conventional Static Media Object Along With The Image Having The At Least Two Objects," "Identifying A Physical Static Media Object With A Unique Identification Tag," and "Associating The Physical Static Media Object With A Unique Identification Tag," (Joint Statement, Disputed Items 7, 8, 15, and 16)**

    With respect to disputed items 7 and 8, Activ8 asserts that the phrases "the unique identification tag appearing on the static media object along with the image having the at least two objects" and "the unique identification tag appearing on the conventional static media object along with the image having the at least two objects" in the claims of the Activ8 Patents mean "the Unique Identification Tag appears on the Physical Static Media Object along with the Image and both the Unique Identification Tag and the Image are visible together on the Physical Static Media Object" and "the Unique Identification Tag appears on the Conventional Static Media Object along with the Image and both the Unique Identification Tag and the Image are visible together on the Conventional Static Media Object," respectively. With respect to disputed items 15 and 16, Activ8 asserts that the phrases "identifying a physical static media object with a unique identification tag," and "associating the physical static media object with a unique identification tag," mean "the unique identification tag is a reference to the Physical Static Media object" and "creating a relationship between the Unique Identification Tag and the Static Media Object," respectively.

    Advance and RichFX again seeks to bolster the "separately added" limitation proposed for the Unique Identification Tag by defining the relationship between the Unique Identification Tag and the Static Media Object as follows for disputed items 7 and 8: "[T]he Unique

<div align="center">19</div>

Identification Tag is separate from and is an external, visible addition to an otherwise complete, uniquely-associated, single Static Media Object." With respect to disputed item 15, Advance and RichFX propose: "The Unique Identification Tag is added to an otherwise complete Physical Static Media Object," and for disputed item 16, Advance and RichFX propose: "The Unique Identification Tag separately added to an otherwise complete Physical Static Media Object is uniquely correlated with the Physical Static Media Object."

Those constructions proposed by Advance and RichFX fail because, as previously explained, Advance and RichFX are simply importing limitations into the claims from the preferred embodiment without any basis. *E.g., Northern Telecom Ltd. v. Samsung Elecs. Co.,* 215 F.3d 1281, 1290 (Fed. Cir. 2000) (This court has repeatedly and clearly held that it will not read unstated limitations into claims language."); *Johnson Worldwide Assocs. V. Zebco, Corp.,* 175 F.3d 985, 990 (Fed. Cir. 1999) ("If we once begin to include elements not mentioned in the claim in order to limit such claim...we should never know where to stop.").

Further, the proposed construction is even more vague than Advance and RichFX's proposed limitations for the Unique Identification Tag. For example, what is meant by "otherwise complete"? Does that implicate a temporal limitation or a physical limitation? What is meant by an "external, visible addition? How does one make the Unique Identification Tag external and yet visible?

> **5.**    **The two phrases: "Creating An Association Between The Unique Identification Tag And An Interactive Electronic Representation Of The Static Media Object Comprising At Least One Multimedia Object" and "Associating The Interactive Electronic Representation Of The Physical Static Media Object With The Unique Identification Tag" (Joint Statement, Disputed Items 11 and 17)**

With respect to disputed items 11 and 17, Activ8 asserts that both phrases "creating an association between the unique identification tag and an interactive electronic representation of

the static media object comprising at least one multimedia object" and "associating the interactive electronic representation of the physical Static Media Object with the Unique Identification Tag" in the claims of the Activ8 Patents mean "the Unique Identification Tag is associated with or linked to the Interactive Electronic Representation on a www server so that the Unique Identification Tag can retrieve the Interactive Electronic Representation from the www server.

For disputed items 11 and 17, Advance and RichFX propose the following constructions: "a unique 1:1 relationship is made between a single Unique Identification Tag and a single Interactive Electronic Representation" and "a unique 1:1 correlation is created between the Unique Identification Tag and a single Interactive Electronic Representation," respectively. [2] The result of the proposed construction apparently means that when a user provides a Unique Identification Tag to the www server, the www server returns one and only one Interactive Electronic Representation.

Advance and RichFX's construction has two fatal flaws.  First, the claim language defines the step of "creating an association between the unique identification tag and <u>an</u> interactive electronic representation."  Emphasis supplied.  Again Advance and RichFX ignore the well-established concept that the term "an" in a patent claim means one or more, as previously explained.  Second, the specifications of the Activ8 Patents broadly describe the relationship between the unique identification tag and the interactive electronic representation Column 9, lines 10 through 15, of the '006 Patent states:

---

[2]    It should be noted that the 1:1 relationships proposed for disputed items 11 and 17 define the relationship between the Unique Identification Tag and the Interactive Electronic Representation whereas the 1:1 correspondence for the Unique Identification Tag (disputed item 3) defines the relationship between the Static Media Object and the Interactive Electronic Representation.

21

> Consumer 402 visits the RETAILSTREET.COM WWW site and provides the
> unique identification tag associated with the static media object 202a. In response
> to receiving the unique identification tag, WWW server 142 retrieves an IER
> associated with the static media object 202a from media database 420 and
> transmits the IER to the WWW browser executing on computer 100.

Nothing in this disclosure discloses, suggests, or compels that the server return a single

Interactive Electronic Representation in response to receiving the Unique Identification Tag.

### 6.     "Imprinting A Static Media Object With A Unique Identification Tag" (Joint Statement, Disputed Item 19)

Activ8 asserts that the term "imprinting a physical static media object with a unique

identification tag" in the claims of the Activ8 Patents means "the Unique Identification Tag is

rendered or printed on the Physical Static Media Object." Notwithstanding this clear claim

language, Advance and RichFX propose the importation of a limitation not even suggested by

the preferred embodiment of the invention. Advance and RichFX contend that the term

imprinting means "the Unique Identification Tag is added to an otherwise complete Physical

Static Media Object." The proposed limitation is a further attempt to bolster the "separately

added" limitation and should be rejected for the reasons previously given concerning importing

preferred embodiment limitations and Advance and RichFX's vague and indefinite definitions.

### F.     Terms Related to the World Wide Web Embodiment Claimed by the Patentees (Joint Statement, Disputed Items 2, 9, 10, 12, and 13)

The Activ8 Patents disclose systems and methods for displaying Interactive Electronic

Representations of Static Media Objects through the transmission and receipt of information by a

www browser of a personal computer over the Internet. Because the disclosed invention is a

method that uses the World Wide Web for transmitting visual images, the construction of several

terms of the Activ8 Patents is impacted by the nature of the disclosed invention.

"While claims are to be interpreted in light of the specification, [not] all that appears in

the specification is… necessarily within the scope of the claims and thus entitled to protection.

What is not claimed, even though disclosed as part of the 'invention,' cannot be enjoined. It appears that [the patentee] wrote a broader disclosure, but settled for patent protection for its preferred embodiment." *Novo Nordisk of N. Am., Inc. v. Genetech, Inc.*, 77 F.3d 1364, 1370, n.8. (Fed. Cir. 1996). In *Novo Nordisk of N. Am., Inc.*, 77 F.3d 1364, the Federal Circuit held that the patentee's claimed method, interpreted in light of the claim language and the patent's prosecution history, was limited to "direct" expression and did not cover "fusion protein" expression even though the specification stated that the invention encompassed both direct expression and fusion protein expression.

### 1.   "Interactive Electronic Representation" (Joint Statement, Disputed Item 2)

As previously stated, Activ8 asserts that the term "Interactive Electronic Representation" in the claims of the Activ8 Patents means "an electronically recreated representation of the Static Media Object transmitted from a www ('World Wide Web') server."

The Activ8 Patents disclose two enabled embodiments of the invention: A World Wide Web embodiment and a voice (phone) network embodiment ('889 Patent, Col. 4:1-16). No other enabled embodiments of the invention are disclosed. With respect to the voice network, the claims of the Activ8 Patents do not read on the voice network embodiment. Independent claims 1 of the Activ8 Patents require "displaying" the Interactive Electronic Representation, which includes an Image. Claims 4 and 12 of the '006 Patent and Claims 3 and 1 of the '889 Patent define the Interactive Electronic Representation to have Images that the user can "see". Consequently, the claims of the Activ8 Patents are limited to the World Wide Web embodiment. Construing the Interactive Electronic Representation to include a www server is fully consistent with the claim language and the disclosed invention.

LIT\947266.6

### 2. The two phrases: "Receiving the Unique Identification Tag" and "Receiving the Unique Identification Tag and a User Identification Code" (Joint Statement, Disputed Items 9 and 10)

All of the independent claims of the Activ8 Patents provide for "receiving the unique identification tag." Claims 1 of both Activ8 Patents also provide for "receiving the unique identification tag and a user identification code." For the reasons stated above, both phrases must be understood to mean "receiving the Unique Identification Tag and User Identification Code by a www server." Joint Statement, Items 9 and 10. Advance and RichFX even acknowledge in their proposed construction for "receiving the unique identification tag" that the Unique Identification Tag is "transmitted" indicating their understanding that the claims are directed to the World Wide Web embodiment of the invention. Accordingly, both phrases, "receiving the unique identification tag" and "receiving a user identification code," should be construed to mean "receiving the Unique Identification Tag by a www server" and "receiving the User Identification Code by a www server," respectively.

### 3. "In Response To The Selection Of The Multimedia Object, Associating Demographic Information With The User Identification Code" (Joint Statement, Disputed Item 13)

Activ8 asserts that the phrase "in response to the selection of the multimedia object, associating demographic information with the user identification code" in the claims of the Activ8 Patents means "that the selection of the Multimedia Object by the user allows the www server to capture user Demographic Information without further input from the user." For the reasons discussed above, the phrase "in response to the selection of the multimedia object, associating demographic information with the user identification coder" clearly reads on the World Wide Web embodiment, and the www server captures the Demographic Information.

24

LIT\947266.6

## V.    CONCLUSION

Activ8's interpretations of the asserted claims of the Activ8 Patents, as set forth above, are consistent with the established principles of claim construction and should be adopted by the Court.

This 22nd day of May, 2006.

<div style="margin-left:40%">

s/Deborah A. Heineman
Dale Lischer (DL-9708)
T. Hunter Jefferson  (TJ-8693)
Deborah A. Heineman (DH-5681)
SMITH, GAMBRELL & RUSSELL, LLP
Promenade II, Suite 3100
1230 Peachtree Street, N.E.
Atlanta, Georgia  30309-3592
404.815.3500
404.815.3509 (Facsimile)

Paul R. Niehaus (PN-3994)
NIEHAUS LLP
230 Park Avenue, 10th Floor
New York, NY  10169
(212) 551-1445

Attorneys for Activ8now, LLC and Active8media, LLC

</div>

LIT\947266.6

## CERTIFICATE OF SERVICE

I hereby certify that I have filed a copy of the within and foregoing Activ8now, LLC and Active8media, LLC's Brief on Markman Claim Construction with the Clerk of Court using the CM/ECF system which will send electronic notice of such filing to:

    Randy Lipsitz, Esq.
    Richard L. Moss, Esq.
    Aaron Mark Frankel, Esq.
    KRAMER LEVIN NAFTALIS & FRANKEL LLP
    1177 Avenue of the Americas
    New York, New York  10036

    Robert Eliot Hanlon, Esq.
    ALSTON & BIRD, LLP
    90 Park Avenue
    New York, New York  10016

    Frank G. Smith, III, Esq.
    George D. Medlock, Esq.
    ALSTON & BIRD, LLP
    1201 W. Peachtree Street
    Atlanta, Georgia 30309

This 22nd day of May, 2006.

                        s/Deborah A. Heineman
                        Deborah A. Heineman

Paul R. Niehaus, Esq. (PN-3994)
NIEHAUS LLP
230 Park Avenue, 10th Floor
New York, NY  10169
(212) 551-1445

Dale Lischer, Esq. (DL-9708)
T. Hunter Jefferson, Esq. (TJ-8693)
Deborah A. Heineman, Esq. (DH-5681)
SMITH, GAMBRELL & RUSSELL, LLP
Promenade II, Suite 3100
1230 Peachtree St., N.E.
Atlanta, Georgia  30309
(404) 815-3500

Attorneys for Defendants Activ8now, LLC
and Active8media, LLC

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ADVANCE MAGAZINE PUBLISHERS INC. d/b/a THE CONDÉ NAST PUBLICATIONS, : | |
| : | |
| Plaintiff, : | CIVIL ACTION NO.: 1:05-cv-07516-(KMK)(DFE) |
| : | |
| v. : | |
| : | |
| ACTIV8NOW, LLC and ACTIVE8MEDIA, LLC, : | ACTIV8NOW, LLC AND ACTIVE8MEDIA, LLC'S APPENDIX OF EXHIBITS IN SUPPORT OF THEIR MEMORANDUM ON CLAIM CONSTRUCTION |
| Defendants, Counterclaimants Activ8now : and Active8media, | |
| : | |
| v. : | |
| : | |
| ADVANCE PUBLICATIONS, INC. and RICHFX, INC., : | |
| : | |
| Third Party Defendants : | |

**ACTIV8NOW, LLC AND ACTIVE8MEDIA, LLC'S APPENDIX OF EXHIBITS IN SUPPORT OF THEIR MEMORANDUM IN SUPPORT OF CLAIM CONSTRUCTION**

Activ8now, LLC and Active8media, LLC file this Appendix of Exhibits in Support of their Memorandum on Claim Construction. The following Exhibits are attached:

1. United States Patent No. 6,557,006 (the '006 Patent);

2. United States Patent No. 6,535,889 (the '889 Patent);

3. Joint Claim Construction Statement previously filed with the Court on May 8, 2006

LIT\947266.6