

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 10/459,397 | 06/11/2003 | Peeter Todd Mannik | 044110.008CIP | 1781 |

| 25461 | 7590 | 06/06/2006 | EXAMINER |
|---|---|---|---|
| SMITH, GAMBRELL & RUSSELL, LLP<br>1230 PEACHTREE STREET, N.E.<br>SUITE 3100, PROMENADE II<br>ATLANTA, GA 30309-3592 | | | DURAN, ARTHUR D |

| ART UNIT | PAPER NUMBER |
|---|---|
| 3622 | |

DATE MAILED: 06/06/2006

Please find below and/or attached an Office communication concerning this application or proceeding.

PTO-90C (Rev. 10/03)

| Application No. | Applicant(s) |
|---|---|
| 10/459,397 | MANNIK ET AL. |
| Examiner | Art Unit |
| Arthur Duran | 3622 |

# Office Action Summary

*-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address --*

## Period for Reply

A SHORTENED STATUTORY PERIOD FOR REPLY IS SET TO EXPIRE **3** MONTH(S) OR THIRTY (30) DAYS, WHICHEVER IS LONGER, FROM THE MAILING DATE OF THIS COMMUNICATION.
- Extensions of time may be available under the provisions of 37 CFR 1.136(a). In no event, however, may a reply be timely filed after SIX (6) MONTHS from the mailing date of this communication.
- If NO period for reply is specified above, the maximum statutory period will apply and will expire SIX (6) MONTHS from the mailing date of this communication.
- Failure to reply within the set or extended period for reply will, by statute, cause the application to become ABANDONED (35 U.S.C. § 133). Any reply received by the Office later than three months after the mailing date of this communication, even if timely filed, may reduce any earned patent term adjustment. See 37 CFR 1.704(b).

## Status

1) ☒ Responsive to communication(s) filed on *27 March 2006*.
2a) ☒ This action is **FINAL**.        2b) ☐ This action is non-final.
3) ☐ Since this application is in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 11, 453 O.G. 213.

## Disposition of Claims

4) ☒ Claim(s) *48-98* is/are pending in the application.
    4a) Of the above claim(s) _____ is/are withdrawn from consideration.
5) ☐ Claim(s) _____ is/are allowed.
6) ☒ Claim(s) *48-98* is/are rejected.
7) ☐ Claim(s) _____ is/are objected to.
8) ☐ Claim(s) _____ are subject to restriction and/or election requirement.

## Application Papers

9) ☐ The specification is objected to by the Examiner.
10) ☐ The drawing(s) filed on _____ is/are: a) ☐ accepted or b) ☐ objected to by the Examiner.
    Applicant may not request that any objection to the drawing(s) be held in abeyance. See 37 CFR 1.85(a).
    Replacement drawing sheet(s) including the correction is required if the drawing(s) is objected to. See 37 CFR 1.121(d).
11) ☐ The oath or declaration is objected to by the Examiner. Note the attached Office Action or form PTO-152.

## Priority under 35 U.S.C. § 119

12) ☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).
    a) ☐ All   b) ☐ Some * c) ☐ None of:
        1. ☐ Certified copies of the priority documents have been received.
        2. ☐ Certified copies of the priority documents have been received in Application No. _____.
        3. ☐ Copies of the certified copies of the priority documents have been received in this National Stage application from the International Bureau (PCT Rule 17.2(a)).
    * See the attached detailed Office action for a list of the certified copies not received.

**Attachment(s)**

1) ☒ Notice of References Cited (PTO-892)
2) ☐ Notice of Draftsperson's Patent Drawing Review (PTO-948)
3) ☐ Information Disclosure Statement(s) (PTO-1449 or PTO/SB/08) Paper No(s)/Mail Date _____.
4) ☐ Interview Summary (PTO-413) Paper No(s)/Mail Date. _____.
5) ☐ Notice of Informal Patent Application (PTO-152)
6) ☐ Other: _____.

Application/Control Number: 10/459,397                                        Page 2
Art Unit: 3622

## DETAILED ACTION

1. Claims 48-98 have been examined.

### *Response to Amendment*

2. The 37 CFR 1.131 Amendment filed on 3/27/06 is sufficient to overcome the prior rejection. A reference has been added to the 35 USC 103 rejection.

### *Priority*

3. The later-filed application must be an application for a patent for an invention which is also disclosed in the prior application (the parent or original nonprovisional application or provisional application). The disclosure of the invention in the parent application and in the later-filed application must be sufficient to comply with the requirements of the first paragraph of 35 U.S.C. 112. See *Transco Products, Inc. v. Performance Contracting, Inc.*, 38 F.3d 551, 32 USPQ2d 1077 (Fed. Cir. 1994).

The disclosure of the prior-filed application, Application No. 6,557,006, fails to provide adequate support or enablement in the manner provided by the first paragraph of 35 U.S.C. 112 for one or more claims of this application. Claims 49-77 and 89-98 do not find support for any "thumbnails" in the Specification or Diagrams of the prior-filed parent application, Application No. 6,557,006. Therefore, these claims, 49-77 and 89-98, do not receive the benefit of the earlier priority date of 6,557,006.

## *Claim Rejections - 35 USC § 103*

The following is a quotation of 35 U.S.C. 103(a) which forms the basis for all obviousness rejections set forth in this Office action:

> (a) A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. Patentability shall not be negatived by the manner in which the invention was made.

4.  Claims 48-98 are rejected under 35 U.S.C. 103(a) as being unpatentable over Hudetz (5,978,773) in view of Kitsukawa (2002/0059590) in view of Rogers (5,915,256).

Hudetz discloses presenting a media source and media object (Fig. 7; col 11, lines 9-20).

Hudetz discloses utilizing magazines and advertising:

"(13)  Many users learn of resources on the Internet or a proprietary on-line service through magazine articles and advertisements. These articles and advertisements include the necessary URL or other network address to access the desired site. Many publications compile lists of sites they deem particularly worthwhile. When a user sees a listing for a site which looks interesting, he can manually enter the published URL or other mnemonic address into his browser or other software, and access the site (col 2, lines 27-36);

(40)  Articles of Commerce. As shown in FIG. 7, product identification numbers-- whether bar coded or otherwise--may be placed all types of items, such as a consumer product 102, newspaper 104 or book 106, as well as coupons, fliers, cards and advertisements (not illustrated). For example, by placing a product's UPC code on an advertisement for the product, the advertiser could, in accordance with the invention, facilitate access to Internet resources concerning the product" (col 10, lines 2-11).

Hudetz does not explicitly disclose that the further information on a website concerning products in printed advertisements includes interactive graphics.

However, Rogers discloses presenting copies of images/scenes/photographs from magazines/printed publications including advertisements that can be interacted with (Fig. 3; Fig. 3, item 336; and below citations):

"(18) FIG. 3 shows a flow diagram of the library feature of the system. The library permits quick access to audio, image and text data stored on the digital media element 100. Step 302 outputs the contents of the library to the output device 106. FIG. 10 shows the top level menu options supported in the library feature. In the preferred embodiment, the library supports five features: (1) the "Newsweek Interactive Media" library 1000, (2) the "Newsweek Back Issues" library 1002, (3) the "Washington Post Clippings" library 1004, (4) a glossary 1006, and (5) advertisements 1008. Step 304 recognizes which of the five functions is selected and transfers program control to step 306, 312, 322, 332, or 336, or the exit procedure at step 338 (col 6, lines 25-40);

(27) Step 336 engages a selected advertisement. The system presents audio/image promotional material from one of the sponsors of the digital media element 100. <u>The advertisements in multimedia form resemble television advertisements, although they may also add elements of user control, such as forward, reverse and the selection of hypertext information.</u> At the conclusion of the advertisement, program control returns to step 302" (col 8, lines 12-20).

And, Kitsukawa discloses an interactive electronic representation of a page of a publication/broadcast or of a photographic scene and receiving control input for selecting the

graphical image of a product or a child object to obtain informational regarding the same or an interactive electronic representation of media objects (Fig. 5; Fig 9; Fig. 10; Paragraphs [44, 45]; claim 7).

Kitsukawa further discloses magazine publications and advertising, and also storing content for viewing at point in time (Paragraphs [7, 38]; claim 7).

Therefore, it would have been obvious to one having ordinary skill in the art at the time the invention was made to add Rogers' interactive advertisements related to magazine advertisements and Kitsukawa's interactive image on a website for further product information related to an advertisement to Hudetz's website for further product information related to a magazine advertisement. One would have been motivated to do this in order to present further product information in a manner interesting to the user.

Hudetz does not disclose utilizing thumbnail image.

However, Rogers discloses presenting electronic images of past images from magazines in order to allow view selection (Fig. 14).

Rogers further discloses presenting advertising:

"The system provides for enhanced features, including a library function, an "Interactive Poll" feature, a "Face-to-Face" interview feature, and sponsor advertising" (Abstract);

(16) The present invention further provides additional features such as a library means for direct access to the audio, image and text information stored on the digital media element. Such information may or may not comprise discrete elements of the story. The information to which library access is allowed includes text with hypertext links, text without hypertext links,

audio, still images, moving images, moving images with synchronized audio, and interactive branches. Further and additional features are provided, such as an "Interactive Poll" feature, a "Face-to-Face" interview feature, and sponsor <u>advertising"</u> (col 3, lines 20-30).

Therefore, it would have been obvious to one having ordinary skill in the art at the time the invention was made to add Rogers' utilization of selectable icons to Hudetz's selection of products for further information. One would have been motivated to do this in order to present the products in a manner interesting to the user.

Hudetz discloses a variety of printed media which can be a media source (Fig. 1; Fig. 7).

### *Response to Arguments*

5.  Applicant's arguments with respect to claims 48-98 have been considered but are moot in view of the ground(s) of rejection above.

Examiner further notes that it is the Applicant's claims as stated in the Applicant's claims that are being rejected with the prior art. Also, although the claims are interpreted in light of the specification, limitations from the specification are not read into the claims. See *In re Van Geuns*, 988 F.2d 1181, 26 USPQ2d 1057 (Fed. Cir. 1993). And, Examiner notes that claims are given their broadest reasonable construction. See *In re Hyatt*, 211 F.3d 1367, 54 USPQ2d 1664 (Fed. Cir. 2000).

Examiner notes that while specific references were made to the prior art, it is actually also the prior art in its entirety and the combination of the prior art in its entirety that is being referred to. Also, one cannot show nonobviousness by attacking references individually where

the rejections are based on combinations of references. See *In re Keller*, 642 F.2d 413, 208 USPQ 871 (CCPA 1981); *In re Merck & Co.*, 800 F.2d 1091, 231 USPQ 375 (Fed. Cir. 1986).

### *Conclusion*

The following prior art made of record and not relied upon is considered pertinent to applicant's disclosure:

a) Schena (6,448,979) discloses relevant features for interactive advertisements related to printed publications:

> "For example, a user may
> find four advertisements of interest in a printed medium 50, such as a
> magazine. The scanner 100 could read the four codes 10 from the magazine
> advertisements and store them in the memory 110. Subsequently, at a time
> convenient to the user, the user can upload the information to the receiver 180
> for processing.
>
> (12) The information in the code 10 could be simple data or complex
> data-type-plus data, such as encoded, printed multimedia information. A UPC
> code is an example of simple data. The information used by the system can also
> be non-coded or raw. For example, a universal resource locator ("URL") is
> non-coded data, but when encoded as a URL-type code 10, the information in the
> code 10 may be processed.
>
> (36) For example, according to the invention a person can scan an ordinary
> black and white car ad placed in a newspaper by a local dealer that is enhanced
> with code 10. Shortly thereafter, the person experiences a full-featured
> multimedia presentation related to the car ad on the person's Web TV or
> computer. The tracking module 220 calculates a fee to be shared between the
> manufacturer, the dealer, and the person buying the car based on a percentage
> of the sale. The funds management module can accept Ecash from the person and
> either distribute it to all parties involved in the transaction or store the
> information as debits and credits in an account database.
>
> (40) The invention provides for allowing the information providers 600 to
> electronically receive codes 10 to embed in the advertisements. It also allows
> the publishers of the advertisements, such as newspaper and magazine companies,
> to print their own ad codes and share this information with the portal server
> 200. The invention contemplates using an enhanced code in the ads containing

information on the identity of the publication and the product. The system enables the publishers to share in the flow-through profits of a transaction even though they may not provide any products. The system further enables simple marketers and catalogue providers to operate with reduced infrastructure by including information in the code 10 which points to portal-operated e-commerce stores or to the manufacturer/distributor's e-commerce store.";

b) Rodriguez (20030050961) discloses relevant features for interactive advertisements related to printed publications:

"[0023] Even the "card" paradigm is too restrictive. The same techniques can be applied to any object. A music CD cover can be encoded to point to a promotional site associated with the music artist. A book jacket can link to a similar site. Printed advertising distributed through the US mail (cards, magazines, etc.) can be encoded to point to related web-based promotional sites. (Sponsors of such advertising or other sites can reward visits to their internet site by issuing visitors digital tokens or coupons that can be redeemed for premiums, cash-back, etc., either for any such visit, or only if the visit was effected through the portal of a steganographically-encoded printed medium.)

Abstract
An exemplary application is a computer system that looks at a printed magazine advertisement (20) and initiates a link to a corresponding internet page. In one such implementation, the computer system senses an identifer encoded in the advertisement, forwards the identifier to remote database, receives from the database (17) a corresponding internet address (18a, 18b, 18c), and directs a browser to that address (18a, 18b, 18c). The same arrangement can be used for on-line ordering from printed merchandise catalogs. Another application is a computer system that looks at a printed spreadsheet (20), and retrieves from disk storage an electronic version of the same document for editing.";

c) Rathus (2005/0199713) and Rathus (5,932,863) disclose relevant features for interactive advertisements related to printed publications:

"Abstract
These methods and apparatus allow a user to access and make use of electronic media input and output devices by reference to and/or utilization of standard printed matter, such as magazines, textbooks, or any other printed matter that can be correlated to electronic media.";

d) Mankoff (20050071230) discloses relevant features for interactive advertisements related to printed publications:

"[0063] In the print media embodiments mentioned above, a media company (e.g., a magazine or newspaper) may solicit its advertisers to provide a coupon or discount. In one specific embodiment, the `couponing` service provider, on behalf of the media company, would scan the image of the advertisement in the magazine or newspaper, into a relational database, such as those described above. The image of that advertisement would be associated with the advertiser, the specific discount provided by that advertiser, and perhaps a text message telephone number for the print media company. Separately, the customer of the magazine or newspaper would register with that magazine or newspaper using his credit or debit card. The customer would then eventually receive the magazine or newspaper, such as through a subscription or a newsstand purchase.

[0064] In one embodiment, when the customer finds an advertisement in the magazine or newspaper that he is interested in, he takes a picture of it with his camera phone or other digital imaging device and transmits that image to a designated telephone number, text message number, e-mail address, or the like. In alternative embodiments, rather than taking a picture of the advertisement, the advertisement or magazine could have a text message number, a telephone number, or even a short code on it that the customer could simply use, for example via a text message or an e-mail. In embodiments where a transmitted image is used, the coupon service provider would receive the image and would associate the consumer with the advertisement, for example matching the number used to text message the image to the media company. Then, for example, based on the text message number the customer delivered the image to, the coupon service provider would process the image that was transmitted by the customer, and determine if there is a match with the image advertised in the magazine or newspaper. If a match is found, the coupon service provider would deliver to the customer (e.g., via his phone from where he sent the image), a text message appearing to be from the magazine, which would inform the customer that a certain percentage or dollar-off discount for the advertiser's online or offline store has been virtually added to the customer's credit card registered with the magazine company. Also, such notification may be done via the consumer's e-mail address, a telephone call, or any other viable means by which to communicate the virtual coupon has been provided.";

e) Bezos (6,029,141) discloses a variety of media sources and tracking and targeting a user;

f) Rothschild (6,430,554) discloses linking advertising and website;

g) Tognazzini (6,519,584) discloses advertising and websites with further linkable information related to the advertising/magazine/catalog:

"(13) The invention also relates to a method of displaying advertising information by displaying an image and related product information, selecting a related product from the related product information, and providing an element for performing the step of replacing the image with an image of a selected related product.

(14) The invention is also directed to a method of displaying advertising information by displaying an image and catalog information, selecting a product category from the catalog information, displaying a list of products for the product category, selecting a product from the list of products, and replacing the image with an image of a product selected from the list of products";

d) Hennessey (6,360,216) discloses advertising and websites with further linkable information related to the advertising/magazine/catalog.

**THIS ACTION IS MADE FINAL.** Applicant is reminded of the extension of time policy as set forth in 37 CFR 1.136(a).

A shortened statutory period for reply to this final action is set to expire THREE MONTHS from the mailing date of this action. In the event a first reply is filed within TWO MONTHS of the mailing date of this final action and the advisory action is not mailed until after the end of the THREE-MONTH shortened statutory period, then the shortened statutory period will expire on the date the advisory action is mailed, and any extension fee pursuant to 37 CFR 1.136(a) will be calculated from the mailing date of the advisory action. In no event, however, will the statutory period for reply expire later than SIX MONTHS from the mailing date of this final action.

Any inquiry concerning this communication or earlier communications from the examiner should be directed to Arthur Duran whose telephone number is (571) 272-6718. The examiner can normally be reached on Mon- Fri, 8:00-4:00.

If attempts to reach the examiner by telephone are unsuccessful, the examiner's supervisor, Eric Stamber can be reached on (571) 272-6724. The fax phone number for the organization where this application or proceeding is assigned is 571-273-8300.

Information regarding the status of an application may be obtained from the Patent Application Information Retrieval (PAIR) system. Status information for published applications may be obtained from either Private PAIR or Public PAIR. Status information for unpublished applications is available through Private PAIR only. For more information about the PAIR system, see http://pair-direct.uspto.gov. Should you have questions on access to the Private PAIR system, contact the Electronic Business Center (EBC) at 866-217-9197 (toll-free).

Arthur Duran
Primary Examiner
4/5/2006