Frank G. Smith, III
George D. Medlock, Jr.
Alston & Bird LLP
One Atlantic Center
1201 W. Peachtree Street
Atlanta, Georgia  30309-3424
(404) 881-7000
(404) 881-7777  (Facsimile)

Robert Eliot Hanlon
Alston & Bird, LLP
90 Park Avenue
New York, NY 10016
(212) 210-9410
(212) 210-9444  (Facsimile)

Counsel for RichFX, Inc.

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ADVANCE MAGAZINE PUBLISHERS INC. d/b/a THE CONDÉ NAST PUBLICATIONS, | : : : : : |
| Plaintiff, | : : : CIVIL ACTION NO.: 1:05-cv-07516-(KMK)(DFE) |
| v. | : : : |
| ACTIV8NOW, LLC and ACTIVE8MEDIA, LLC, | : : : : : |
| Defendants, Counterclaimants Activ8now and Active8media, | : : : : : |
| v. | : : : |
| ADVANCE PUBLICATIONS, INC. and RICHFX, INC., | : : : : : |
| Third Party Defendants. | : : |

---

**RICHFX, INC.'S OPENING CLAIM CONSTRUCTION BRIEF**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................ iii

TABLE OF ABBREVIATIONS ....................................................................... v

I.      INTRODUCTION ............................................................................. 1

II.     FACTUAL BACKGROUND ............................................................. 1

III.    THE LAW GOVERNING CLAIM CONSTRUCTION ....................... 3

IV.     ACTIV8'S MISAPPLICATION OF CLAIM
        CONSTRUCTION PRINCIPLES ..................................................... 4

        A.  Significance of the Prosecution History ........................................ 4

            1.  Prosecution of the '006 Patent .................................... 5

            2.  Prosecution of the '889 Patent .................................... 6

        B.  Limiting the Scope of Claims by Importing Limitations
            From An Illustrative Embodiment ................................... 7

V.      THE PROPER CONSTRUCTIONS OF KEY TERMS IN
        THE PATENTS. ............................................................................. 10

        A.  Unique Identification Tag ............................................................. 10

            1.  Activ8's Construction Improperly Reads Out the
                Unique Limitation In this Claim Term. ...................... 11

            2.  A Unique Identification Tag Has to be Separately
                Added to a Static Media Object. ............................... 13

        B.  Image ............................................................................................ 17

        C.  Associating the Physical Static Media Object With A
            Unique Identification Tag ............................................... 17

        D.  Identifying the Physical Static Media Object With A
            Unique Identification Tag ............................................... 18

            Imprinting A Physical Static Media Object With A
            Unique Identification Tag ............................................... 18

        E.  Creating An Association between the Unique
            Identification Tag And An Interactive Electronic
            Representation of The Static Media Object Comprising
            At Least One Multimedia Object ...................................... 18

        F.  Associating the Interactive Electronic Representation of
            the Physical Static Media Object With A Unique
            Identification Tag ............................................................ 19

        G.  Multimedia Object ........................................................................ 20

        H.  Conventional Static Media Object ............................................... 22

ATL01/12238355v15

I. Static Media Object ('889 Patent Only)............................................................ 24

J. The Unique Identification Tag Appearing On The Static
   Media Object Along with The Image Having The At
   Least Two Objects ............................................................................................ 25

   The Unique Identification Tag Appearing On The
   Conventional Static Media Object Along with the
   Image Having the At Least Two Objects........................................................ 25

K. Receiving the Unique Identification Tag. ........................................................ 26

   Receiving The Unique Identification Tag And A User
   Identification Code.......................................................................................... 26

   Receiving Control Input Selecting One of the
   Multimedia Objects......................................................................................... 26

L. User Identification Code ................................................................................... 26

M. The Remaining Disputed Terms ...................................................................... 26

VI.     CONCLUSION..................................................................................................... 27

ATL01/12238355v15

# TABLE OF AUTHORITIES

**Cases**

*Abbott Labs. v. TorPharm, Inc.*, 300 F.3d 1367 (Fed. Cir. 2002) ....................................... 8

*Barry Fiala v. Stored Value Sys., Inc.*, No. 02-2248, 2005 U.S.
 Dist. LEXIS 20068 (W.D. Tenn. March 31, 2005) ..................................................... 12

*Cias, Inc. v. Alliance Gaming Corp.*, 424 F. Supp. 2d 678
 (S.D.N.Y. 2006).......................................................................................................... 12

*Digital Biometrics, Inc. v. Identix, Inc.*, 149 F.3d 1335 (Fed. Cir.
 1998) .......................................................................................................................... 20

*GLOBEtrotter Software, Inc. v. Elan Computer Group, Inc.*, No.
 C-98-20419, 1999 U.S. Dist. LEXIS 22482 (N.D. Cal. Oct. 22,
 1999) .......................................................................................................................... 12

*Interactive Techs., Inc. v. Pittway Corp.*, No. 98-1464, 1999 U.S.
 App. LEXIS 11166, (Fed. Cir. June 1, 1999) ............................................................ 12

*Johnson Worldwide Assocs. v. Zebco Corp.*, 175 F.3d 985 (Fed.
 Cir. 1999)...................................................................................................................... 8

*K-2 Corp. v. Salomon S.A.*, 191 F.3d 1356 (Fed. Cir. 1999) ........................................... 11

*N. Telecom Ltd v. Samsung Elecs. Co.*, 215 F.3d 1281 (Fed. Cir.
 2000) ............................................................................................................................ 8

*Nike Inc. v. Wolverine World Wide, Inc.*, 43 F.3d 644 (Fed. Cir.
 1994) .......................................................................................................................... 10

*Novo Nordisk of N. Am., Inc. v. Genetech, Inc.*, 77 F.3d 1364 (Fed.
 Cir. 1996).................................................................................................................... 23

*Omega Eng'g, Inc. v. Raytek Corp.*, 334 F.3d 1314 (Fed. Cir.
 2003) ............................................................................................................................ 4

*Optical Disc. Corp. v. Del Mar Avionics*, 208 F.3d 1324 (Fed. Cir.
 2000) ............................................................................................................................ 3

*Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005), cert.
 denied, 1265 S. Ct. 1332 (2006) ........................................................................... 3, 4

*Rheox, Inc. v. Entact, Inc.*, 276 F.3d 1319 (Fed. Cir. 2002) ................................. 8, 22, 24

*Southwall Tech., Inc. v. Cardinal IG Co.*, 54 F.3d 1570 (Fed. Cir.
 1995).................................................................................................................... 3, 4, 24

*Starpay.com L.L.C. v. Visa International Serv. Ass'n*, No. 3-03-
 CV976-L, 2005 U.S. Dist. LEXIS 28 (N.D. Tex., Jan. 4, 2005) ................................. 12

*Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576 (Fed. Cir.
 1996) ...................................................................................................................... 8, 20

ATL01/12238355v15

*Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17
(1997) ........................................................................................................ 11

*Wilson Sporting Goods v. Hillerich & Bradsby Co.*, 442 F.3d 1322
(Fed. Cir. 2006) ......................................................................................... 3

## Statutes

35 U.S.C. §102 .................................................................................................. 6

35 U.S.C. §103 .................................................................................................. 6

## Other Authorities

*Manual of Patent Examining Procedure*, § 201.08 (8th ed. Rev.2
2004) .......................................................................................................... 6

Webster's Ninth New Collegiate Dictionary (1991) ....................................... 12

## TABLE OF ABBREVIATIONS

The following abbreviations are used in this Brief to refer to the materials identified in this Table:

| ABBREVIATION | FULL TITLE |
|---|---|
| '006 patent | United States Patent No. 6,557,006 |
| '889 patent | United States Patent No. 6,535,889 |
| '171 Application | U.S. Application No. 09/406,171 |
| '687 Application | U.S. Application No. 09/468,687 |
| Activ8 | Activ8now, LLC and Active8media, LLC |
| Activ8's Brief | Activ8now, LLC and Active8media, LLC's Brief on Markman Claim Construction |
| Activ8's Infringement Contentions | Activ8now, LLC and Active8media, LLC's Disclosure of Asserted patents and Infringement Contentions |
| Advance | Advance Magazine Publishers, Inc., d/b/a The Condé Nast Publications, and Advance Publications, Inc. |
| JCC Statement | The Parties' Joint Claim Construction Statement |
| PTO | U. S. Patent and Trademark Office |
| RichFX | RichFX, Inc. |
| RichFX's and Advance's Invalidity Contentions | Plaintiff's and Third Party Defendants' Invalidity Contentions |
| www | World Wide Web |

# I. INTRODUCTION

This lawsuit concerns a patented method for linking and displaying a uniquely identified page in a print publication to an interactive electronic version of that page. Activ8 has accused RichFX and Advance of infringing the '006 and the '889 patents[1] based on the publication of electronic versions of four printed magazines. RichFX had no involvement with two of these magazines.[2]

Activ8's proposed constructions of the disputed claims omit limitations in the claims, misconstrue the specifications of the patents, and ignore binding statements Activ8 made to the PTO during prosecution of the patents. In particular, Activ8 ignores the prosecution history which irrefutably contains amendments and representations that Activ8 made to distinguish its purported "invention" over the prior art during the three years it negotiated with the PTO to secure its patents.

# II. FACTUAL BACKGROUND

In the late 1990s, several companies, including Activ8, began to make magazines and other publications electronically accessible to consumers. The invention for which Activ8 ultimately received two patents was linking a uniquely identified page in a print publication to an interactive electronic version of the page. ('006 patent, col. 7, ll. 33-44; '889 patent, col. 9, ll. 9-20). In Activ8's patents, a page in a printed publication is described as a "static media object." ('006 patent, col. 2, ll. 19-23; '889 patent, col. 2, ll. 57-63). The patents then teach that a "unique identification tag" is placed on each page

---

[1] Copies of the '006 and '889 patents are in the Appendix as Exhibits A and B, respectively. The claims in both patents are method claims meaning that Activ8 has claimed a process for practicing the inventions, as a opposed to a specific apparatus that constitutes the invention.

[2] A copy of Activ8's Infringement Contentions appears in the Appendix as Exhibit C. RichFX is accused of infringing only the March 2005 issue of Vogue Magazine and the May 2005 issue of Condé Nast Traveler Magazine.

in a printed publication. ('006 patent, col. 7, ll. 33-44, '889 patent, col. 9, ll. 9-20). As a result, each unique identification tag corresponds to a static media object, *i.e.*, a page in a print publication. The patents teach that having the print pages in electronic form benefits the user. To somewhat oversimplify, the purported benefit of the invention is that a consumer may use the unique identification tag to obtain an interactive electronic representation of the static media object. Once the consumer accesses the print page in its electronic form, the consumer can interact with the electronic page to select products for purchase or to obtain additional information concerning products.

Activ8's patents do not, however, represent a pioneering invention in a new field, as Activ8 would erroneously have this Court believe. Rather, the patents reflect a minor improvement over existing art. Specifically, placing an interactive electronic representation of a product on a computer, in order to allow a consumer to purchase (or inspect) a product was not new at the time of Activ8's patent applications. Indeed, the file histories include prior art documentation from, *inter alia*, Amazon.com, a company that had been selling products online long before Activ8 submitted its patent applications. (Exh. D, '006 File History, p. 107; Exh. E, '889 File History, p. 210). Thus, during prosecution, Activ8 was compelled to narrow the scope of its claims in order for the PTO to allow the applications to issue over the existing art. What Activ8 persuaded the PTO was novel was the ability to "link[ ] the physical world with the digital world." (Exh. D, '006 File History, p. 116; Exh. E, '889 File History, p. 140). Accordingly, Activ8's patents -- as issued -- are much narrower that it now argues to this Court. *See*, *e.g.*, Activ8's Brief, p. 18 (stating that a unique identification should not be limited to a single interactive electronic representation for each unique identification tag). Indeed, Activ8's

- 2 -

Brief completely ignores the requirement that the physical page of a magazine be linked to the electronic version of the physical page by a separately added, unique identifier. *Id.* at 16-17.

### III. THE LAW GOVERNING CLAIM CONSTRUCTION

Subject to one caveat, RichFX does not dispute Activ8's abstract statement of the law of claim construction set forth in Activ8's Brief at pp. 3-6. The caveat is: Activ8 improperly minimizes the significant role of the prosecution history in claim construction. *Id.* at 4. ("[T]he Court **can** consider the prosecution history of the patent.") (emphasis added). As the Federal Circuit made clear in its controlling en banc decision in *Phillips v. AWH Corp.*, 415 F.3d 1303, 1317 (Fed. Cir. 2005), cert. denied, 1265 S. Ct. 1332 (2006), the Court "'**should** also consider the patent's prosecution history, if it is in evidence.'" (emphasis added).

The reason Activ8 denigrates the role of the prosecution history in its claim construction is that, during the prosecution of its patents, Activ8 materially narrowed the claims in order to have the patents issued. Activ8 now seeks a broader reading of certain of its claims in order to establish its infringement position. That is improper in claim construction. *Optical Disc. Corp. v. Del Mar Avionics,* 208 F.3d 1324, 1333 (Fed. Cir. 2000) ("claim scope is determined without regard to the accused device"). While it is not improper to consider the accused products in order to place the claims into context, *Wilson Sporting Goods v. Hillerich & Bradsby Co.,* 442 F.3d 1322, 1330-31 (Fed. Cir. 2006), it is improper to construe the claims to read on the accused products when the proposed construction was surrendered during the prosecution of the patent. *Southwall Tech., Inc. v. Cardinal IG Co.,* 54 F.3d 1570, 1576 (Fed. Cir. 1995) ("Claims may not be

- 3 -

construed one way in order to obtain their allowance and in a different way against the accused infringers.")

## IV. ACTIV8'S MISAPPLICATION OF CLAIM CONSTRUCTION PRINCIPLES

Although Activ8, for the most part, correctly states the law of claim construction, it misapplies those principles in two very important ways. *First*, as noted, Activ8 improperly minimizes the significance of the prosecution history. *Second*, Activ8 limits the scope of its claims by importing limitations from an "illustrative embodiment" in order to avoid prior art that invalidates many of the claims in Activ8's patents. The result is a serious misreading of many claim terms that yields, paradoxically, both broader constructions in some instances yet narrower constructions in others than proper readings of the terms would allow.

### A.    Significance of the Prosecution History.

The prosecution file history provides evidence of how both the PTO and the inventor understood the terms of the patent. *Phillips*, 415 F.3d. at 1317. Where the specification describes a claim term broadly, arguments and amendments made during prosecution may require a more narrow interpretation. *Southwall*, 54 F.3d at 1576 (Fed. Cir. 1995). As discussed below, Activ8 went through a lengthy negotiation process in the PTO during which it presented numerous arguments and amendments that narrowed the scope of its claims. As a result of Activ8's disavowal of certain meanings that could have been associated with claim terms, the doctrine of prosecution disclaimer applies, *Omega Eng'g, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1324 (Fed. Cir. 2003), and the claims in Activ8's patents are now limited by what it "disclaimed" in its statements to the PTO. *Southwall*, 54 F.3d at 1576.

- 4 -

### 1.    Prosecution of the '006 Patent.

On September 23, 1999, Activ8 filed the '171 Application, which ultimately led to the '006 patent. (Exh. D, '006 File History, p. 21). As filed, the '171 Application contained twenty-one claims directed to displaying an interactive electronic publication based on associating a unique identification tag with a page in a print publication.

The PTO, in its first substantive action, rejected all of Activ8's claims under 35 U.S.C. §102 and/or §103 in view of the prior art patents issued to Astiz, Kirsh, and Finseth. *Id.* at 93. In response, Activ8 canceled four claims and amended all of the remaining claims and presented arguments to the PTO as to why its newly amended claims were not covered by the prior art. *Id.* at 109.[3]

The PTO, in its second substantive action, again rejected all of the pending claims under 35 U.S.C. §102 and/or §103 in view of Ikeda , Astiz, and/or Finseth. *Id.* at 125. Activ8 then conducted a telephonic interview with the Examiner in an attempt to have the claims allowed. *Id.* at 137. After the telephonic interview, Activ8 filed a response with the PTO and set forth its views as to why its current claims should be allowed. *Id.* at 142. Unlike its previous response, Activ8 did not amend the claims in this response. A few months later, Activ8 filed an Amendment in which it amended several of its then pending claims. *Id.* at 153. On November 15, 2002, in response to the Amendment, the Examiner issued a Notice of Allowance granting Activ8 seventeen claims, none of which appeared as drafted in Activ8's original application. In the Notice of Allowance, the Examiner

---

[3] *See, e.g.*, Section V.A.2. below.  To avoid prior art, Activ8 argued that a unique identification tag was limited to "placing a coded identifier on a physical object."

ATL01/12238355v15

took the unusual step of setting forth specific examples of methods that would not infringe the narrow invention granted. *Id.* at 170.[4]

### 2.    Prosecution of the '889 Patent.

The '687 Application, which led to the '889 patent, was filed December 20, 1999. (Exh. E , '889 File History, p. 25). The '889 patent is a continuation-in-part of the '006 patent.[5] When filed, the '687 Application contained twenty claims directed to displaying an interactive electronic publication based on associating a unique identification tag with a page in a publication.

Just as in the '171 Application, the PTO, in its first substantive action, rejected all of Activ8's claims under 35 U.S.C. §102 and/or §103 in view of the prior art patents issued to Astiz, Kirsh, and Finseth. *Id.* at 118. In response, Activ8 again canceled four claims and amended all of the remaining claims and presented arguments to the PTO as to why its newly amended claims were not covered by the prior art. *Id.* at 133.[6]

The PTO, in its second substantive action, again rejected all of the pending claims under 35 U.S.C. §102 and/or §103 in view of Ikeda and/or Finseth. *Id.* at 151. Activ8 once more conducted a telephonic interview with the Examiner in an attempt to have the claims allowed. *Id.* at 163. After the telephonic interview, Activ8 filed a response to the PTO in which it amended several of its claims and set forth arguments as to why its newly amended claims should be allowed. *Id.* at 173. On November 14, 2002, in

---

[4] *See*, e.g., Section V.A.2. below. The Examiner included an example in the Notice of Allowance that precluded a pre-existing product identifier from being a unique identification tag.

[5] A continuation-in-part, or "CIP," is "an application filed during the lifetime of an earlier [ ] application, repeating some substantial portion or all of the earlier [ ] application and *adding matter not disclosed* in the said earlier [ ] application." *Manual of Patent Examining Procedure*, § 201.08 (8th ed. Rev.2 2004).

[6] *See*, e.g., Section V.A.2. below. Again, Activ8 argued that a unique identification tag was limited to "placing a coded identifier on a physical object."

- 6 -

response to the Amendment, the Examiner issued a Notice of Allowance granting Activ8

sixteen claims, none of which appeared as drafted in Activ8's original application. In the

Notice of Allowance, the Examiner set forth the same non-infringing examples as those

identified in the '171 Application discussed above. *Id.* at 197.[7]

Thus, during prosecution of its patents, Activ8 clearly and materially limited the

scope of many of the claim terms in dispute in this litigation. As explained more fully

below, by failing to cite to the prosecution history in its Brief and by downplaying the

role of the prosecution history to this Court, Activ8 hopes to expand the meaning of

certain claim terms by avoiding being bound by the statements it made and the limitations

it accepted in order to obtain its patents.

### B.   Limiting the Scope of Claims by Importing Limitations From An "Illustrative Embodiment."

Activ8 improperly inserts the "www" limitation into no fewer than nine of the

disputed claim terms.[8] Importing this limitation from an "illustrative embodiment" ('006

patent, col. 7, ll. 45-60; '889 patent, col. 9, ll. 21-26) of its "invention" is a blatant

---

[7] *See*, e.g., Section V.A.2. below. Once more, the Examiner included an example in the Notice of Allowance that precluded a pre-existing identifier from being a unique identification tag.

[8] The improper "www" limitation has been added to the following terms: (1) Interactive Electronic Representation; (2) User Identification Code; (3) Receiving the Unique Identification Tag; (4) Receiving the Unique Identification Tag and A User Identification Code; (5) Creating An Association Between the Unique Identification Tag and An Interactive Electronic Representation of the Static Media Object Comprising At Least One Multimedia Object; (6) Providing An/Displaying An/Forwarding the Interactive Electronic Representation Of the Static Media Object In Response To Receiving the Unique Identification Tag; (7) In Response To the Selection Of the Multimedia Object, Associating Demographic Information With the User Identification Code; (8) Associating the Interactive Electronic Representation Of the Physical Static Media Object With the Unique Identification Tag; and (9) Retrieving the Interactive Electronic Representation Of the Static Media Object Based Upon the Unique Identification Tag. *See e.g.*, Activ8's Brief at p.22, and Exh. H, Joint Claim Construction Statement at pp. 4-14, disputed claim terms numbered 2, 6, 9, 10, 11, 12, 13, 17, and 18.

- 7 -

attempt to exclude the "stand alone application program"[9] embodiment in an effort to avoid invalidating prior art cited by RichFX and Advance in their Invalidity Contentions.[10]  It is clearly improper to import limitations into the claims from the preferred embodiment without any basis.  *N. Telecom Ltd v. Samsung Elecs. Co.*, 215 F.3d 1281, 1290 (Fed. Cir. 2000)  (noting that the court will not read unstated limitations into the claims); *Johnson Worldwide Assocs. v. Zebco Corp.*, 175 F.3d 985, 990 (Fed. Cir. 1999)  (stating that if the Court begins to include elements not mentioned in the claim in order to limit the claim, it would never know where to stop).

It is also well settled that constructions which would "exclude the preferred embodiment (as well as all other embodiments) disclosed by the patent specifications . . . are 'rarely, if ever, correct.'"  *Abbott Labs. v. TorPharm, Inc.*, 300 F.3d 1367, 1372 (Fed. Cir. 2002) (quoting *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1583 (Fed. Cir. 1996.  Although "where the prosecution history requires a claim construction that excludes some but not all of the preferred embodiments, such a construction is permissible . . .[,]" *Rheox, Inc. v. Entact, Inc.*, 276 F.3d 1319, 1327 (Fed. Cir. 2002), the prosecution history here shows that Activ8 never excluded the "stand-alone application program" embodiment.  Thus, it is improper to propose, as Activ8 does, claim constructions that would read this embodiment out of the claims.

---

[9] A stand-alone application program exists when a program is located locally on a computer.  In such an environment, a consumer would simply access the hard drive of his personal computer to obtain data corresponding to an interactive electronic representation.  In contrast, an application program in a distributed environment can access parts of the program distributed over the Internet.  Therefore, in an application program in a distributed environment, a consumer utilizing a  www browser would access a server on the Internet to download the interactive electronic representation.

[10] A copy of RichFX's and Advance's Invalidity Contentions appears in the Appendix as Exhibit F.

- 8 -

The specifications of both patents disclose "an application program for retrieving the [interactive electronic representation] embodying aspects of the present invention" and a voice network for retrieving an interactive electronic representation. ('006 patent, col. 2:37-41, 3:15-30; '889 patent, col. 3, ll. 8-12, col. 4, ll. 1-16). While the voice network appears to have been disclosed but not claimed in Activ8's patents, an application program is clearly within the claims of the patent.[11]

The specification states that an application program can function in a "stand-alone or in a distributed computer network environment." ('006 patent, col. 4, ll. 5-20; '889 patent, col. 5, ll. 1-16). "Examples of such distributed computer environments include local area networks and the Internet." *Id.* In addition, immediately after discussing the www embodiment, the specification states that, "[t]hose skilled in the art will also appreciate that aspects of the invention may also be embodied in a stand-alone application program." ('006 patent, col. 6, ll. 61-63, '889 patent, col. 7, ll. 57-59). Thus, the specifications disclose embodiments covering application programs that (i) reside on a computer and operate in a stand-alone environment or (ii) use a web browser to access application programs distributed over the Internet. Nothing in the claims or the prosecution history limits Activ8 to a www embodiment. Thus, there is nothing in the claims that would prevent a stand-alone application program on a computer from accessing an interactive electronic representation. It is therefore improper for Activ8 to insert such a limitation.

The reason that Activ8 takes such an improper claim construction position is that RichFX and Advance have identified – and, as required, disclosed to Activ8 -- a prior art

---

[11] For example, no limitation in claim 1 restricts that claim to the www to the exclusion of a stand-alone application program.

- 9 -

CD that was not considered by the Examiner in granting the patents.[12]  The CD contains

an electronic version of a paper catalog and allows consumers to select and purchase

products.  This electronic catalog can be downloaded from the CD to a computer and

operated in a stand-alone application program.  In light of this invalidating prior art,

Activ8 now attempts to have the Court read in an improper limitation and narrow certain

of its claims to preserve their validity.  This in inconsistent with claim construction law,

and Activ8's obvious attempt to read in an improper limitation should be rejected.  *Nike*

*Inc. v. Wolverine World Wide, Inc.*, 43 F.3d 644, 647 (Fed. Cir. 1994) (noting that a

patentee "cannot in effect, rewrite its patent claims to suit its needs in this litigation.")

## V. THE PROPER CONSTRUCTIONS OF KEY TERMS IN THE PATENTS.

### A.    <u>Unique Identification Tag.</u>  (Disputed Claim Term 3)

This phrase is properly construed to mean:

> An identifier that is separately added to a single Static Media Object that is associated
> with a single Interactive Electronic Representation creating a 1:1 correspondence
> between the Static Media Object and the Interactive Electronic Representation.

RichFX submits that this is the single most important claim term the construction

of which is in dispute.  Contrary to Activ8's assertions, RichFX has not imported

limitations from the preferred embodiments into this claim; rather, RichFX's construction

is faithful to the claim terms, specification, and prosecution history.  Whereas Activ8's

construction eliminates a term from the claim and ignores the specification and file

history.

---

[12] RichFx submits that this and other prior art that was not disclosed to the Examiner during the prosecution of the '006 '889 patents invalidates substantially all, if not all, of the claims in those patents.

ATL01/12238355v15

**1.    Activ8's Construction Improperly Reads Out the "Unique" Limitation In this Claim Term.**

The patents teach that a unique identification tag is applied to a static media object and that each unique identification tag is used to retrieve a single corresponding "interactive electronic representation." In other words, the patents teach that a specific physical page in a magazine is connected to an electronic image of that page by a unique identifier. As a result, each unique identification tag creates a 1:1 correspondence between the static media object and the interactive electronic representation.

Activ8's overly simplistic proposed construction, "a reference that corresponds to a Static Media Object," improperly reads out the word "unique." As set forth by the Supreme Court, "[e]ach element contained in a patent claim is deemed material to defining the scope of the patented invention[.]". *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 29 (1997). Since each element is material, it is improper to construe a patent claim so that a claim limitation is rendered meaningless. *K-2 Corp. v. Salomon S.A.*, 191 F.3d 1356, 1363-1366 (Fed. Cir. 1999) (noting that courts will not read limitations out of the claims). If Activ8's proposed construction were correct, it could -- and should -- have used the term "identification tag," instead of "unique identification tag." To allow a unique identification tag to refer to more than one static media object and therefore more than one interactive electronic representation would render the word "unique" meaningless.[13]

---

[13] Activ8 imprecisely cites cases at pp. 17-18 in its Brief for the proposition that the article "an" can encompass both the singular and the plural and as a result the phrase "an interactive electronic representation" can be singular or plural. The cases cited by Activ8 make it clear that intrinsic evidence can limit the article "an" to the singular. Thus, the use of the claim term "unique" here limits the article "an" to the singular.

- 11 -

The construction proposed by RichFX is consistent with the words in the claim and the specification. As shown in Fig. 2 of both patents, two static media objects, *i.e.*, two pages from a magazine, have been associated with unique identifiers. Each of the unique identification tags are distinct: 2255-EFGH is the unique identification tag for the left page and 2245-ABCD is used for the right page. ('006 patent, col. 7, ll. 36-39, '889 patent, col. 9, ll. 12-15).[14]

The construction proposed by RichFX is also consistent with precedent construing the term "unique." For example, Judge Kaplan of the S.D.N.Y. recently construed the term "unique authorized information" consistent with RichFX's proposed construction of "unique identification tag." *Cias, Inc. v. Alliance Gaming Corp.*, 424 F. Supp. 2d 678 (S.D.N.Y. 2006). The *Cias* Court found that the term "unique authorized information" carried a "common and ordinary meaning," and construed the term to mean "information associated with each object, unique to that object . . . " *Id.* at 687 (emphasis added). Judge Kaplan thus concluded that identifying information is "unique" when it is associated with only a single object.[15]

---

[14] Extrinsic evidence also supports RichFX's construction of the term. According to Webster's Ninth New Collegiate Dictionary (1991), the term unique means "being the only one... being without a like or equal..." (Exh. G, Webster's Ninth New Collegiate Dictionary).

[15] The Federal Circuit and district courts in other jurisdictions have also construed the term "unique" in a manner consistent with both *Cias* and RichFX's proposed construction. *See, Interactive Techs., Inc. v. Pittway Corp.*, No. 98-1464, 1999 U.S. App. LEXIS 11166, at *13 (Fed. Cir. June 1, 1999); *Starpay.com L.L.C. v. Visa International Serv. Ass'n*, No. 3-03-CV976-L, 2005 U.S. Dist. LEXIS 28, at *9 (N.D. Tex., Jan. 4, 2005) (construing "unique identification identifier" as "specifically identify[ing] an individual transaction"); *GLOBEtrotter Software, Inc. v. Elan Computer Group, Inc.*, No. C-98-20419, 1999 U.S. Dist. LEXIS 22482, at *36 (N.D. Cal. Oct. 22, 1999); *Barry Fiala, Inc. v. Stored Value Sys., Inc.*, No. 02-2248, 2005 U.S. Dist. LEXIS 20068, at *32 (W.D. Tenn. Mar. 31, 2005) (construing an "identification number" that is "unique" to be "associated with only one metered account.").

- 12 -

2.    **A Unique Identification Tag Has to be Separately Added to a Static Media Object.**

The specification and the file history of the patents make it clear that the unique identification tag must be separately added to a static media object. In the specifications, the inventors pointed out that their invention addressed inadequacies present in current static media objects, such as pages in a magazine. ('006 patent, cols. 1-2, ll. 15-16; '889 patent, cols. 1-2, ll. 23-54). In particular, the patents note that "static media typically cannot provide the depth of content permitted by electronic publications." ('006 patent, col. 1, ll. 29-31; '889 patent, ll. 38-39). Therefore, according to the invention, paper media as it existed in early 1999, before the filing of Activ8's patent applications, was inadequate to meet the electronic needs of modern society. The solution proposed for adapting existing paper media was to place a unique identification tag on the paper media that would link the paper world to the digital world. ('006 patent, Fig. 2; '889 patent, Fig. 2). As shown in Fig. 2 of the patents, static media objects, such as pages of a magazine, are modified by including a unique identification tag on each page in order to link the physical world to the digital world. This modified version of existing static media objects allowed Activ8 to create a unique connection between the paper world and the digital world.

In the prosecution history, when Activ8 was faced with potentially invalidating prior art, Activ8 argued to the PTO that the prior art "provides no suggestion, and certainly no disclosure, of linking physical media objects with interactive electronic representations of those physical static media objects." (Exh. D, '006 File History, p. 115; Exh. E, '889 File History, p.139). Activ8 also argued to the PTO that the prior art "**does not suggest placing any coded identifier on a physical object,**" and that the prior

- 13 -

art "**provides no suggestion for placing unique identification tags on physical objects,**

**such as advertisements that appears in a magazine.**" (Exh. D , '006 File History, pp.

116-117; Exh E, '889 File History, p.140-141) (emphasis added).

In order to demonstrate to the Examiner why the invention claimed in the patents

should not be invalidated by the prior art cited by the Examiner, Activ8 explained:

> The Examiner's attention is once again drawn to the embodiment of the
> invention represented at www.activ8now.com. This website has
> numerous examples of interactive electronic representations all of which
> have duplicate images of images that appear in various magazines, such as
> in Teen. One such interactive electronic representation is associated with
> the unique identification tag of **TEEN.1200.23**, shows an image of a lady,
> and has objects which include lip stick, shampoo, and mascara. Thus, a
> reader of Teen magazine seeing this advertisement can pull up the
> interactive electronic representation and obtain more information on the
> lip stick, shampoo, and/or mascara.

(Exh. E, '889 File History, p. 187) (emphasis added). Thus, Activ8 not only told the

Examiner that the prior art does not involve separately adding a unique identification tag

to pages in a magazine, but that separately adding a unique identification tag to a

magazine page to connect the page to an interactive electronic representation was

precisely what constituted Activ8's invention.

In the Notice of Allowance, the Examiner took the unusual step of setting forth

examples of methods that would not be covered by the invention. In one example, the

Examiner stated:

> The claimed invention being different from seeing an item number in a
> catalog and going to the web site of the company issuing the catalog and
> inputting the item number to see the item listed in a catalog.

(Exh. D, '006 File History, p. 170; Exh. E, '889 File History, p. 197). The Examiner

made it clear that the item number in a catalog cannot be the unique identification tag.

Otherwise, the Examiner would not have issued Activ8's patents because it was common

- 14 -

sense for people to investigate a product by looking for product identifiers, such as item

numbers in a catalog that existed in static media long before Activ8's claimed invention.

Based on the specification and prosecution history, it is clear that the unique identifier

has to be something that is separately added to the static media object in order to create a

bridge between the paper world and the digital world.

In order to understand why Activ8 has stretched the term "unique identification

tag" well beyond its meaning, as limited by the prosecution history, one only need

examine Activ8's infringement contentions. (Exh. C, Activ8's Infringement

Contentions). In those contentions, Activ8 claims that the brand names or logos that

appear in the ads of the four accused magazines are the unique identification tags. As

discussed above, a construction broad enough to cover such brand names or logos is

clearly inconsistent with the specification and prosecution history. *First*, in the accused

magazines, in most instances, a logo or brand name corresponds to multiple ads. Under

Activ8's analysis in its infringement contentions, a unique identification tag could

correspond to multiple ads, which would result in a unique identification tag retrieving

multiple interactive electronic representations, a result inconsistent with the intrinsic and

extrinsic record. *Second*, as shown in the Notice of Allowance, pre-existing product

identifiers may not be used as a unique identification tag. Therefore, in accordance with

the prosecution history, the Notice of Allowance and Fig. 2 of the specification, a unique

identifier has to be something that is separately added to a static media object.

As further evidence of just how broadly Activ8 is attempting to stretch this term,

the specification states that "unique identification tags 204a and 204b may be shown

**adjacent** to a well-known logo or symbol that a reader may associate with a WWW

- 15 -

address."[16] ('006 patent, col. 7, ll. 53-56; '889 patent, col. 9, ll. 29-32) (emphasis added). Plainly, a first thing that is **adjacent** to second thing cannot be the second thing. However, now that the patents are in litigation, Activ8 argues that instead of the unique identification tag being **adjacent** to the logo, it **is** the logo.

According to Activ8, even though (i) the specifications of the patents identify a unique identification tag as a separately added tag, 2225-EFGH, as shown in Fig. 2; (ii) during the prosecution of the patents in order to distinguish over the prior art Activ8 argued that its invention was patentable because it involved placing a coded identifier on a physical object; (iii) the representative product shown to the Examiner in order to obtain the patent used the unique identification tag TEEN.1200.23; and (iv) the Examiner indicated that an item number in a catalog of static media could not be the unique identification tag, Activ8 now argues that a unique identification tag can be any number, letter, word or logo present in any paper media. This construction is clearly improper. Activ8 has not based this construction on the complete intrinsic record or corroborating extrinsic evidence, but rather on the outcome it hopes to achieve in this litigation. In contrast, RichFX's construction gives meaning to all the words of the claim and comports with the specification and the prosecution history.

---

[16] In Activ8's Brief, at p. 16, it incorrectly argues that the above quote and additional text in the specification support its position. The additional text on which Activ8 relies states: "Unique identification tags 204a and 204b may also comprise information that conveys the specific publication, region, issue, date, or page number." ('006 patent, col. 7, ll. 47-50; '889 patent, col. 9, ll. 23-26). As stated earlier, tags 204a and 204b are clearly separately added as shown in Fig. 2 of the patents. Furthermore, it is clear that the separately added unique identification tag "TEEN.1200.23," shown to the Examiner as the invention, clearly identifies the Teen Magazine publication and possibly the date and page number. Now that the patents are in litigation, Activ8 argues that the language from the specifications quoted above means that a unique identification tag can be something as broad as the pre-existing publication name "without more" on the cover of a magazine. This is clearly incorrect.

- 16 -

**B.**     <u>Image.</u> **(Disputed Claim Term 4)**

This phrase is properly construed to mean:

> The visual representation in the Static Media Object distinct from the Unique Identification Tag.

The claims in the patents disclose that the image in the static media object is recreated and displayed in electronic form via the interactive electronic representation. Therefore, an image that exists in paper form is transferred to electronic form. As discussed earlier with regard to the unique identification tag, Activ8 now argues that portions of the image may be considered the unique identification tag. For example, in an image containing a picture of a model and the brand name, Activ8 is attempting to argue that the brand name contained in the image is now the unique identification tag. As discussed earlier, this is clearly inconsistent with the extrinsic and intrinsic evidence. An image is simply the visual representation in the static media object distinct from the unique identification tag.

**C.**     <u>Associating the Physical Static Media Object With A Unique Identification Tag.</u> **(Disputed Claim Term 16)**

This phrase is properly construed to mean:

> The Unique Identification Tag separately added to an otherwise complete Physical Static Media Object is uniquely correlated with the Physical Static Media Object.

As set forth earlier regarding the term "unique identification tag," the complete intrinsic record and extrinsic evidence make it clear that each identification tag must be unique. In addition, in accordance with the specification and representations that Activ8 made to the PTO, a unique identification tag also has to be separately added. Therefore, "Associating the Physical Static Media Object With A Unique Identification Tag" must mean that the Unique Identification Tag separately added to an otherwise complete

- 17 -

Physical Static Media Object is uniquely correlated with the Physical Static Media Object.

**D.    Identifying the Physical Static Media Object With A Unique Identification Tag. (Disputed Claim Term 15)**
**Imprinting A Physical Static Media Object With A Unique Identification Tag. (Disputed Claim Term 19)**

These phrases are properly construed to mean:

> The Unique Identification Tag is added to an otherwise complete Physical Static Media Object.

Adding a unique identification tag to a physical static media object was what Activ8 set forth as its invention in the specification and the file history of the patents. RichFX's construction is proper and should be adopted, since it is consistent with the specification and file history of the patents.

**E.    Creating An Association between the Unique Identification Tag And An Interactive Electronic Representation of The Static Media Object Comprising At Least One Multimedia Object. (Disputed Claim Term 11)**

This phrase is properly construed to mean:

> A unique 1:1 relationship is made between the single Unique Identification Tag and a single Interactive Electronic Representation.

As discussed earlier, Activ8's basic claim construction position eliminates the limitation "unique" from the term "unique identification tag." If Activ8 desired an identifier to refer to more than one interactive electronic representation, it could have simply used the term "identification tag." The term "unique identification tag," however, has to mean that each identification tag on a static media object corresponds to only one interactive electronic representation.

- 18 -

The position advanced by Activ8 at pp. 21-22 of its Brief, based on language in the specification to the '006 patent, in fact confirms the correctness of RichFX's construction of this term. The specification states: "In response to receiving **the** unique identification tag, WWW server 142 retrieves **an** [interactive electronic representation] associated with **the** static media object 202a from media database 420 and transmits **the** [interactive electronic representation] to the WWW browser executing on computer 100." ('006 patent, col. 9, ll. 12-16) (emphasis added). RichFX submits that this language confirms that the unique identification tag establishes a 1:1 relationship between a single static media object and a single interactive electronic representation. Therefore, the proper construction of "Creating An Association between the Unique Identification Tag And An Interactive Electronic Representation of The Static Media Object Comprising At Least One Multimedia Object" must mean that a unique 1:1 relationship is created between the single Unique Identification Tag and a single Interactive Electronic Representation.

F.    **Associating the Interactive Electronic Representation of the Physical Static Media Object With A Unique Identification Tag.** (Disputed Claim Term 17)

This phrase is properly construed to mean:

> A unique 1:1 correlation is created between the Unique Identification Tag and a single Interactive Electronic Representation.

As set forth in Section E, a unique identification tag creates a 1:1 correspondence between a single static media object and a single Interactive Electronic Representation. Since each static media object is given a Unique Identification Tag that corresponds to an interactive electronic representation, it is clear that a single Unique Identification Tag

- 19 -

also identifies a single interactive electronic representation. Therefore, "Associating the Interactive Electronic Representation of the Physical Static Media Object With A Unique Identification Tag" has to mean a unique 1:1 correlation is created between the Unique Identification Tag and a single Interactive Electronic Representation.

### G.    Multimedia Object. (Disputed Claim Term 5)

This phrase is properly construed to mean:

Sound clips or movie files associated with a Static Media Object.

The intrinsic record requires RichFX's construction. The specification states that an interactive electronic representation consists of "text, graphic, or multimedia objects." ('006 patent, col. 11, ll. 40-43; '889 patent, cols. 14-15, ll. 67-4). Thus, the patent describes three distinct types of objects: (i) text objects; (ii) graphic objects; and (iii) multimedia objects. As a result, a multimedia object cannot be a text object or a graphic object; it has to be something else. The specification provides this needed clarification when it states that an interactive electronic representation "may comprise multimedia objects, such as sound clips or movie files associated with the static media object." ('006 patent, col. 8, ll. 46-50; '889 patent, col. 10, ll. 29-33). Consistent with the specification, multimedia objects should be construed as sound clips or movie files associated with a static media object.[17]

---

[17] Activ8 appears to want to rely on an extrinsic dictionary definition that is inconsistent with the specification to support its position. It is well-settled law, however, that applying a dictionary definition that conflicts with the use of a term in the specification cannot be the proper construction of that term. *Digital Biometrics, Inc. v. Identix, Inc.*, 149 F.3d 1335, 1346 (Fed. Cir. 1998) (noting that "[b]ecause the intrinsic record is clear, [the Court would] not give weight to an inconsistent dictionary definition."); *Vitronics*, 90 F.3d at 1584 n. 6 (stating that Judges "may also rely upon dictionary definitions when construing claim terms, so long as the dictionary definition does not contradict any definition found in or ascertained by a reading of the patent documents."). The definition proffered by Activ8 would have this Court draw no distinction between a multimedia object, a text object and a graphic object, yet the specification clearly defines these as three separate types of objects.

- 20 -

Activ8's construction "an object from a media database 'hot-linked'[18] to an

Interactive Electronic Representation that may be transmitted to a computer" does not

define a multimedia object. Rather, Activ8's construction only indicates how objects are

connected to the interactive electronic representation in the invention, *i.e.*, by hot-linking.

The relevant inquiry is not whether a text object is hot-linked, whether a graphic object is

hot-linked, or whether a multimedia object is hot-linked. Rather, the relevant inquiry is

what constitutes a multimedia object. In contrast, Activ8's construction does not

distinguish a text object or a graphic object from a multimedia object. It simply states

that objects are hot-linked to interactive electronic representations.

Furthermore, it is unclear how Activ8 can credibly argue in its Brief at pp. 9-10

that RichFX's definition for this term is an improper importation of limitations from an

embodiment in the specification when Activ8's definition also comes directly from an

embodiment in the specification, which states "[m]edia database contains [interactive

electronic representations] and other objects that are 'hot-linked' to [interactive electronic

representations]." ('006 patent, col. 9, ll. 16-17, '889 patent, col. 12, ll. 26-28).

Apparently, Activ8 considers its selection of support for its claim construction from an

embodiment found in column nine of the specification to be proper, while RichFX's

reliance on embodiments found in columns eight and ten of the specification somehow

improperly imports limitations. Putting to one side the issue as to whose importation of a

---

[18] Hot-linking involves creating a connection to an object contained in the interactive electronic representation. For example, in order to display a graphic object in an interactive electronic representation, the interactive electronic representation would either link to a server or to a local hard drive in a personal computer containing the graphic object.

ATL01/12238355v15

limitation from the specification is improper,[19] what is clear is that Activ8's construction

fails because it does not define a multimedia object but instead simply states how objects,

in general, are connected to the interactive electronic representation. Since RichFX's

proposed construction relies on the intrinsic record and is supported by extrinsic

evidence, RichFX's proposed construction is proper.

**H.**    **Conventional Static Media Object.** **(Disputed Claim Term 1)**

This phrase is properly construed to mean:

A static publication or object such as a page in a magazine or a newspaper, that cannot by
itself provide access to related electronic information.[20]

This phrase appears only in the '889 patent. Activ8 claims that the '889 patent

discloses both a *physical* static media object and a *conventional* static media object. Both

parties agree that a *physical* static media object is a printed publication, such as a page in

a magazine.[21] As for the term "*conventional* static media object," Activ8 argues that it

means "an electronic publication or electronic visual material, such as a web page or

digital image."

However, as the prosecution history of the '889 patent makes clear, Activ8

disclaimed that a conventional static media object could be an electronic publication. In

the prosecution history, Activ8 amended the claims to remove references to this

electronic embodiment in response to the Examiner's rejection of the independent claim

---

[19] RichFx does not concede that its construction of "multimedia object" imports limitations from the specification. However, Activ8's absolutist position that "importation of limitations is not permitted" Activ8's Brief, at p.9, is incorrect. Limitations can and should be imported to the claims based, for example, on the prosecution history. *Rheox*, 276 F.3d at 1325 ("The prosecution history limits the interpretation of claim terms so as to exclude any interpretation that was disclaimed during prosecution." (quoting Southwall, 54 F.3d at 1576)).

[20] This is the same construction as the agreed to term "physical static media object."

[21] The JCC Statement appears in the Appendix as Exhibit H.

- 22 -

containing the term limitation "conventional static media object". (Exh. E, '889 File

History, p. 146); *Novo Nordisk of N. Am., Inc. v. Genetech, Inc.*, 77 F.3d 1364, 1370 n.8

(Fed. Cir. 1996) (noting that a patentee may draft a broad specification but actually settle

for patent protection for a much narrower embodiment in order to obtain the patent). In

response to the Examiner's rejection, Activ8 amended claim 19 in the '171 Application,

to delete the phrase "comprising electronic content." [22] Therefore, in response to the

Examiner's citation of prior art, the claim was changed from "identifying a conventional

static media object **comprising electronic content** with a unique identification tag" to

"identifying a conventional static media object with a unique identification tag." (Exh. E

, '889 File History, p.146).

   After amending the claim to remove the phrase "comprising electronic content,"

Activ8 argued to the Examiner that the claim as amended was now distinct from the prior

art. In particular, when arguing to the Examiner for the patentability of claim 19

(corresponding to claim 1 of the issued '889 patent), Activ8 only argued that the prior art

was not invalidating because it did not "provide any disclosure or suggestion for linking

the physical world with the digital world." (Exh. E, '889 File History, pp. 140-141).

Activ8 further argued that since the prior art "does not suggest placing any coded

identifier on a physical object, [the prior art] fails to anticipate the claimed invention and

the rejection should be withdrawn." *Id.*

   To summarize, in response to the Examiner identifying prior art that he thought

read on the term "conventional static media object," Activ8 amended the claim to remove

language that described a conventional static media object as electronic content and then

---

[22] Claim 19 in the '171 Application corresponds to claim 1 in the issued '889 patent.

proceeded to argue that the amended claim was patentable because it dealt with connecting the physical world to the digital world. A physical static media object, not an electronic publication, is involved in connecting the physical world to the digital world. (Exhibit H, JCC Statement) Because Activ8 clearly disclaimed the electronic publication embodiment for a "conventional static media object" and only claimed a conventional static media object that represented a physical publication, the phrase "conventional static media object" is limited to mean the same as a physical static media object. Activ8 may not now reclaim in litigation what it gave up in prosecution. *Rheox*, 276 F.3d at 1325. ("The prosecution history limits the interpretation of claim terms so as to exclude any interpretation that was disclaimed during prosecution." (quoting *Southwall*, 54 F.3d at 1576 ) ("Claims may not be construed one way in order to obtain their allowance and in a different way against accused infringers.")).

I.   **Static Media Object ('889 Patent Only).** (Disputed Claim Term 20)

This phrase is properly construed to mean:

> A static publication or object such as a page in a magazine or a newspaper, that cannot by itself provide access to related electronic information.

As discussed above regarding conventional static media object, Activ8 disclaimed any embodiment of conventional static media object that would cover electronic content. Therefore, Activ8's construction that a Static Media Object in the '889 patent means "A Physical/Traditional Static Media Object or Conventional Static Media Object" is incorrect. A conventional static media object has to be the same as a physical static

media object.[23]  In accordance with the prosecution history, RichFX's construction is

proper.

       **J.**     **The Unique Identification Tag Appearing On The Static Media Object Along with The Image Having The At Least Two Objects. (Disputed Claim Term 7)**

              **The Unique Identification Tag Appearing On The Conventional Static Media Object Along with the Image Having the At Least Two Objects. (Disputed Claim Term 8)**

These phrases are properly construed to mean:

> The Unique Identification Tag is separate from and is an external, visible addition to an otherwise complete, uniquely associated single Static Media Object.

As discussed earlier, static media objects such as advertisement pages in a

magazine existed long before Activ8's invention.  Activ8 told the PTO that its inventions

served as a bridge between the paper world and the digital world.  (Exh. D, '006 File

History, p. 114; Exh. E, '889 File History, p.138).  This was accomplished -- as described

in the specification, file history and representative examples -- by adding a unique

identification tag that was separate from, external, and a visible addition to an otherwise

complete, uniquely associated single static media object. Therefore, for the reasons set

forth in section V.A. regarding the proper construction of the term Unique Identification

Tag, the above phrases must mean that The Unique Identification Tag is separate from

and is an external, visible addition to an otherwise complete, uniquely associated single

static media object.

---

[23] Activ8's proposed construction uses the term physical/traditional static media object.  The '889 patent states that a "traditional static media object" includes parts or portions of physical publications [.]"  ('889 patent, col. 7, ll. 66-67).  Therefore, a traditional static media object is the same as the agreed to term physical static media object.

**K.**    Receiving the Unique Identification Tag. (Disputed Claim Term 9)[24]

**Receiving The Unique Identification Tag And A User Identification Code.** (Disputed Claim Term 10)

**Receiving Control Input Selecting One of the Multimedia Objects.** (Disputed Claim Term 14)

RichFX does not believe that any construction is required for these phrases beyond construction of the following terms (which are in dispute) that are contained within these phrases: User Identification Tag, User Identification Code, and Multimedia Object. RichFX notes that it does not agree with Activ8's improper inclusion of the www limitation in the "Receiving The Unique Identification Tag" and "Receiving The Unique Identification Tag And A User Identification Code." As stated previously, Activ8's proposed constructions would improperly read out the stand-alone application program embodiment disclosed in the specification in a blatant attempt to overcome invalidating prior art which discloses such a stand-alone application program.

**L.**    User Identification Code. (Disputed Claim Term 6)

This phrase is properly construed to mean:

A code or other information that identifies a computer user that accesses the Interactive Electronic Representation.

In an effort to reduce the number of terms for the Court to construe, RichFX is willing to adopt Activ8's construction minus the clearly unsupportable www limitation.

**M.    The Remaining Disputed Terms**

RichFX adopts the arguments articulated by Advance with respect to the proper constructions of the remaining claim terms that are in dispute: (i) Interactive Electronic Representation; (ii) Providing An/Displaying An/Forwarding The Electronic

---

[24] Initially, RichFX and Advance proposed a construction for this phrase in the JCC statement. However, RichFX believes that only the phrase "unique identification tag" requires construction by the Court.

Representation Of The Static Media Object In Response To Receiving the Unique

Identification Tag; (iii) Retrieving The Interactive Electronic Representation Of the Static

Media Object Based Upon The Unique Identification Tag; and (iv) In Response To The

Selection Of The Multimedia Object, Associating Demographic Information With The

User Identification Code.

## VI.    CONCLUSION

For the foregoing reasons and on the authorities citied, RichFX respectfully

requests that the Court adopt its proposed constructions of the disputed claim terms.

This ___/2___ day of June, 2006.

Frank G. Smith, III (admitted pro hac vice)
George D. Medlock, Jr.\ (admitted pro hac vice)
ALSTON & BIRD LLP
One Atlantic Center
1201 West Peachtree Street
Atlanta, GA  30309-3424 USA

Robert E. Hanlon
ALSTON & BIRD LLP
90 Park Avenue
New York, New York 10016-1387
(212) 210-9400
Attorneys for RichFX, Inc.

- 27 -