Paul R. Niehaus, Esq. (PN-3994)
NIEHAUS LLP
230 Park Avenue, 10th Floor
New York, NY 10169
(212) 551-1445

Dale Lischer, Esq. (DL-9708)
T. Hunter Jefferson, Esq. (TJ-8693)
Deborah A. Heineman, Esq. (DH-5681)
SMITH, GAMBRELL & RUSSELL, LLP
Promenade II, Suite 3100
1230 Peachtree St., N.E.
Atlanta, Georgia 30309
(404) 815-3500
Attorneys for Defendants Activ8now, LLC
and Active8media, LLC

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

―――――――――――――――――――――――――

| | |
|---|---|
| ADVANCE MAGAZINE PUBLISHERS INC. d/b/a THE CONDÉ NAST PUBLICATIONS, : : : : Plaintiff, : : v. : : ACTIV8NOW, LLC and ACTIVE8MEDIA, LLC, : : : Defendants, : Counterclaimants, : : v. : : ADVANCE PUBLICATIONS, INC. : and RICHFX, INC., : : Third Party Defendants : | CIVIL ACTION NO.: 1:05-cv-07516-(KMK)(DFE) |

―――――――――――――――――――――――――

**ACTIV8NOW, LLC AND ACTIVE8MEDIA, LLC'S REPLY TO ADVANCE MAGAZINE PUBLISHERS D/B/A THE CONDÉ NAST PUBLICATIONS, ADVANCE PUBLICATIONS, INC.'S AND RICHFX, INC.'S CLAIM CONSTRUCTION BRIEFS**

1

Activ8now, LLC and Active8media, LLC (collectively "Activ8") submit their brief in reply to Advance Magazine Publishers Inc. d/b/a/ The Condé Nast Publications and Advance Publications, Inc.'s (collectively "Advance") and RichFX, Inc.'s ("RichFX") Response Briefs concerning the construction of the claims of the patents asserted by Activ8 namely, United States Patent Nos. 6,557,006 (the "'006 Patent") and 6,535,889 (the "'889 Patent") (collectively the "Activ8 Patents").  As set forth herein, Advance and RichFX's proposed claim constructions are fundamentally flawed and should not be adopted by this Court.

## I.    INTRODUCTION

Despite their assertions to the contrary, Advance and RichFX fail to follow Federal Circuit law on how to construe patent claims.  A fundamental principle of patent law is that the invention is defined by the claims of the Patent.  *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005).[1]  Of course, "claims 'must be read in view of the specification, of which they are a part.' "  *Id.* at 1315 (citation omitted).  "The specification is always highly relevant to the claim construction analysis.  Usually it is dispositive."  *Id.*  However, limitations from the specification must not be read into the claims.  *Id.* at 1323.

In direct contravention of these principles, Advance and RichFX virtually ignore the ordinary meaning of the claim terms at issue and repeatedly try to import limitations into their claims constructions, which are not required by the specifications of the Activ8 Patents and which do not even appear anywhere in the specifications.  Activ8's proposed constructions, by contrast, consistently apply the claim construction principles of *Phillips* and should be adopted.

---

[1]    Despite Advance's attempts to mischaracterize the invention throughout its Initial Brief, the invention is defined not by Advance's self serving references to the "crux" of the invention or "heart" of the invention but by the claims.  Furthermore, contrary to Advance's assertions, Activ8 never claims to have invented the internet, hotlinking or conventional drop down menus.  Advance's statements to this effect merely underline the inaccuracy of their arguments and seek to distract the Court from the true issues at hand.

## II. WORLD WIDE WEB EMBODIMENT (JOINT STATEMENT, DISPUTED ITEMS 2, 9, 10, 12 AND 13)

Advance and RichFX take the position that Activ8 is somehow inconsistent in its claim construction. There is no inconsistency in Activ8's position that the only enabled embodiment of the invention defined by the claims is the World Wide Web embodiment. Activ8 agrees that importing limitations from the specification into the claims is improper; in construing the meaning of the term Interactive Electronic Representation ("IER") and related functional terms, Activ8 has not done so. As previously stated in Activ8's Initial Brief at page 23, the Activ8 Patents disclose two enabled embodiments of the invention: A World Wide Web embodiment and a voice (phone) network embodiment. ('889 Patent, Col. 4:1-16). RichFX admits that the claims do not read on the voice network embodiment. (RichFX Initial Brief p. 9). Consequently, the only enabled embodiment of the invention disclosed in the specifications of the Activ8 Patents is the World Wide Web ("www") embodiment. Therefore defining the Interactive Electronic Representation in terms of its relationship to the www server is not importing a limitation into claims. Instead, defining the Interactive Electronic Representation in terms of its relationship to the www server is a clarification of the fundamental nature of the Interactive Electronic Representation.

Advance and RichFX assert that references in the specifications to a "stand-alone environment" are inconsistent with Activ8's position that the Interactive Electronic Representation is stored on and must be transmitted from a www server. Advance and RichFX's reliance on the "stand-alone reference" in the patent specifications reflects a basic misunderstanding of the technology embodied by the Activ8 Patents and the description of the invention in the specifications.

The term "stand-alone" does not indicate, as Advance and RichFX suggest, that the *entire* invention, including the database containing the Interactive Electronic Representations, runs on a stand-alone computer. The term "stand-alone" instead refers to the fact that the program modules for an application program, e.g. a browser like Internet Explorer, may either be located on a stand-alone computer or may be spread out among many computers for running the browser. A stand-alone computer running a browser must still be connected to the network, i.e. www/Internet, in order to retrieve the Interactive Electronic Representations from the network connected www server. The references in the specifications to a "stand-alone computer" do not change the fact that according to the invention, the Interactive Electronic Representation must be on a www server. Storing the Interactive Electronic Representation on a www server for retrieval over the network is the only description for the Interactive Electronic Representation that appears in the specifications and the patent drawings.

The specifications of the Activ8 Patents are repeatedly clear that the Interactive Electronic Representations are located on a network connected www server. *See*, *e.g.*, '006 Patent and '889 Patent, Figs. 1, 3A, 3B, and 4. For instance, Figure 1 clearly illustrates that although the application program (the browser) may run on a stand-alone computer, identified as (100), the computer (100) must be connected to a www server, identified as (142), over the Internet, identified as (138). The www server (142) then receives and transmits the data, including the Interactive Electronic Representations transmitted back to the stand-alone computer (100). '889 Patent, Col. 7:30-44.

The key is that stand-alone merely refers to whether the application program (browser) has its program modules (files for running on the application program) running on a stand-alone computer or through a distributed environment. Wherever the browser program modules are

4

running, the www server containing the Interactive Electronic Representations and network retrieval of the Interactive Electronic Representations are part of the steps of the *claimed* methods of the invention.

Construing the Interactive Electronic Representation to include a www server is fully consistent with the claim language and the disclosed invention and does not constitute the prohibited, arbitrary importation of a claim limitation from the preferred embodiment disclosed in the specification. The only disclosure of the Interactive Electronic Representation in the specifications is an Interactive Electronic Representation on a www server and therefore the only appropriate definition of Interactive Electronic Representation is an Interactive Electronic Representation transmitted from a www server. In the specification of the '889 Patent, the term www server is used no less than 16 times, and 5 times directly in connection with the Interactive Electronic Representation. *See Phillips*, 415 F.3d at 1313 (holding that "[i]mportantly, the person of ordinary skill in the art is deemed to read the claim term not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent, including the specification"). Therefore, Activ8's construction of the terms related to the World Wide Web Embodiment should be adopted.

## III. UNIQUE IDENTIFICATION TAG (JOINT STATEMENT, DISPUTED ITEMS 2, 3, 4, 7, 8, 11, 15, 16, 17 and 19)

Although Advance and RichFX state that it is improper to read limitations from the specifications into the claims, Advance and RichFX repeatedly ask the Court to violate that prohibition when they suggest that a 1:1 correspondence and separately added requirement be read into the construction of Unique Identification Tag. Activ8's construction of Unique Identification Tag is a reference that corresponds to a Static Media Object. That construction is fully supported by the specifications and the prosecution histories. Further, none of the

limitations proposed by Advance and RichFX even appear in the specifications of the Activ8 Patents.

### A.    The Term Unique Identification Tag Must Be Construed As A Whole

In the first instance, Advance and RichFX's interpretation of the term Unique Identification Tag is fundamentally flawed because they improperly remove the word "unique" from "identification tag" but offer no interpretation for the phrase "identification tag" separate from Unique Identification Tag, provide no support from the specifications for such a separation, and did not disclose that the word "unique" would need interpretation when the parties prepared the joint claims construction chart.  Advance and RichFX make the same mistake with the word "tag."  There is no basis to construe "unique" or "tag" separate from Unique Identification Tag; Unique Identification Tag should be construed as a coherent whole.  *See ZMI Corp. v. Cardiac Resuscitator Corp.*, 844 F.2d 1576, 1580 (Fed. Cir. 1988) (construing the term "speech pattern" as an entire phrase because it appeared as such in the specifications and refusing to separate it into its component parts).  For example, the words "identification tag" never appear in the Activ8 Patents except in the term Unique Identification Tag.  The only use of the word "unique" is in connection with Unique Identification Tag in the claims and specifications or with that term's synonym "unique identifier" in the specifications.  Moreover, the word "tag" only appears as part of Unique Identification Tag.   Accordingly, there is no basis in either the claims or the specifications for treating Unique Identification Tag as anything but a coherent whole.

The decision in *Biovail Laboratories Intern. SRL. v. Impax Laboratories*, — F. Supp. 2d. —, 2006 W.L. 1450532 (E.D. Pa. 2006) demonstrates why Unique Identification Tag should not be separated.  In that case, the court was confronted with whether the words "delayed release" should be construed apart from the complete term "delayed release tablet."  The court rejected the request to parse the term.  First, the court noted that "[t]he Federal Circuit has explicitly

warned courts against 'focus[ing] the inquiry on the abstract meaning of words rather than on the meaning of claim terms within the context of the patent." *Id*. at *3 (citing *Phillips*, 415 F.3d at 1321). The court concluded that "to construe 'delayed release' apart from 'tablet' would be to construe that phrase in the abstract rather than in its proper context." *Id*. Second, the court noted that the words "delayed release" only appeared once in the patent in suit without the word "tablet." Finally, the court noted that there had been no definition of "delayed release" which did not make reference to "tablet." *Id*.

In this case, Unique Identification Tag is a single integrated term in the context in which the inventors used it in the Activ8 Patents. It is a term used consistently as an integrated whole, and not merely as the sum of its component parts, which are never separately used in the Activ8 Patents. Accordingly, it should be construed as a coherent whole consistent with the function it serves in the specifications.

**B.**    **Activ8's Claim Construction for Unique Identification Tag is Entirely Consistent with the Patent Specifications.**

Advance and RichFX's justify their parsed analysis of the term Unique Identification Tag by arguing that the phrase "Unique *i*dentification Tag" is not defined in the patents. Contrary to Advance and RichFX's assertion, the specifications of the Activ8 Patents clearly define the integrated Unique Identification Tag broadly: "[U]nique identification tags 204a and 204b are utilized to create an association between the static media object, such as left page 202a, and a related interactive electronic representation of the static media object." '006 Patent, Col. 7:40-44; '889 Patent, Col. 9:16-20. Further, the term Unique Identification Tag is defined in the specifications by its structure and by way of example. '[U]nique identification tags 204a and 204b have been shown as a sequence of unique numbers and letters. Unique identification tags 204a and 204b may also comprise information that conveys the specific publication, region,

issue, date, or page number of the associated static media object." '006 Patent, Col. 7:45-50;

'889 Patent, Col.9:21-26.

The Federal Circuit has explicitly stated that the Court should look to the specifications to

determine the definition of a claim term:

> If the disputed claim term "is a term with no previous meaning to those of ordinary skill in the prior art[, i]ts meaning, then, must be found [elsewhere] in the patent. Most often, the specification "is the single best guide to the meaning of a disputed term." Even when guidance is not provided in explicit definitional format, "the specification may define claim terms 'by implication' such that the meaning may be ' found in or ascertained by a reading of the patent documents.' "

*Novartis Pharm. Corp. v. Abbott Labs.*, 375 F.3d 1328, 1334 (Fed. Cir. 2004). Consequently, it

is correct to look to the specifications for illustration of the meaning of the entire integrated term

Unique Identification Tag rather than resorting to extrinsic dictionary definitions or other

extrinsic evidence for the definition of each component part.

### 1.  Advance and RichFX's Parsed Analysis Of "Unique" Is Flawed

Even if term Unique Identification Tag were to be parsed as Advance and RichFX urge,

their construction of the word "unique" by itself remains flawed. Advance and RichFX assert

that each Unique Identification Tag must be unique, have a 1:1 correspondence, to a single Static

Media Object and a single Interactive Electronic Representation. Nothing in the claim language

or in the specifications of the Activ8 Patents compels or even suggests this 1:1 correspondence.[2]

Further, even the extrinsic evidence on which Advance and RichFX so heavily rely does not

establish that "unique" necessarily means a 1:1 correspondence or one of a kind as urged by

Advance and RichFX. "Unique" can also mean "distinctively characteristic or unusual,"

---

[2]    Advance's reference to the CIP applications use of a different term is completely irrelevant. CIPs are separate patent applications and do not act to disavow subject matter of other independent patents/applications.

8

MERRIAM-WEBSTER ONLINE DICTIONARY (2005-2006), or "characteristic of a particular category, condition, or locality," THE AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE (4th ed. 2000). The dueling dictionary definitions serve to highlight the wisdom of looking to the definition found in the specifications for the whole term Unique Identification Tag. Activ8's construction of the term Unique Identification Tag in the context of having a particular function, i.e. to create an association between the Static Media Object and a related Interactive Electronic Representation is wholly consistent with the specifications. '006 Patent, Col. 7:39-44; '889 Patent, Col. 9:15-20.

In furtherance of imported limitations, Advance and RichFX also urge this Court to further limit the term Unique Identification Tag by holding that "unique" means that the Unique Identification Tag identifies a *single* Interactive Electronic Representation despite the plain claim language. The claim language specifically states that the method includes "creating an association between the unique identification tag and *an* interactive electronic representation of the static media object." '889 Patent, Claim 1 (emphasis supplied). The claim does not state that the association is between the Unique Identification Tag and one and only one Interactive Electronic Representation. As a matter of law, the use of **"*an*"** in the claims of the patent encompasses both the singular and the plural. *See Scanner Tech. Corp. v. ICOS Vision Sys.*, 365 F.3d 1299, 1304 (Fed. Cir. 2004). Advance and RichFX have offered nothing to undermine this well-established principle of claim construction. Advance's argument that Activ8 uses "a" and "an" in the Joint Statement seems meaningless and not persuasive. Advance Initial Brief, p. 19.

In order to find some support for their 1:1 correspondence argument, Advance and RichFX resort to extrinsic evidence through the definitions for "unique" offered by other courts in other unrelated circumstances. Each of these cases construes the term "unique" in the specific

context of the patent at issue and the specification in those cases. Because the evidence used to construe the claims in those cases differs from the evidence here, the cases cited by Advance and RichFX are simply irrelevant to the present claim construction. For example, in *GLOBEtrotter Software, Inc. v. Elan Computer Group, Inc.*, 1999 U.S. Dist. LEXIS 22482 (N.D. Cal., Oct. 22, 1999), the court construed the entire integrated term "unique identification" based on its meaning in the specification. The *GLOBEtrotter* court construed "unique identification" to mean "identify[ing] each license file such that it will not be confused with any other license file then in existence" based on explicit language found in the specification of the patent at issue. The specification for that patent defined "a unique identification tag as identification assigned to a given license file." *Id.* at *35. The *GLOBEtrotter* court stated that the definition is further understood in the context of the patented invention in conjunction with the specification disclosure that the "operating system assigns an identification to each license file." The *GLOBEtrotter* court's construction was based on the intrinsic evidence available in that case, a finding irrelevant to the case at hand. Advance and RichFX's reliance on these wholly unrelated court decisions for construction of a claim term in different and wholly unrelated patents is contrary to established principles of claim construction.

Therefore, nothing in the specifications of the Activ8 Patents suggests or compels that that Unique Identification Tag is limited to a 1:1 relationship between the Unique Identification Tag and the Static Media Object or the Interactive Electronic Representation. Advance and RichFX's resort to extrinsic definitions for one component, "unique," of the whole term Unique Identification Tag cannot create that 1:1 correspondence limitation.

### 2.    Advance and RichFX's Parsed Analysis Of "Tag" Is Flawed

Advance and RichFX seek to engraft yet a further imported limitation onto the term Unique Identification Tag by parsing out and separately analyzing the word "tag." Advance and

RichFX argue that the Unique Identification Tag is separately added to the Static Media Object, i.e. the magazine page. Advance and RichFX concoct a justification that relies on extrinsic definitions for "tag" and supposedly relies on the specifications. Advance argues that "tag" is ignored in Activ8's definition of Unique Identification Tag. That argument has no traction when the specifications use "unique identification tag" and "unique identifier" synonymously. *See*, *e.g.*, '006 Patent, Col. 2:23, 26, 33, 34. Instead of reading the specifications, which confirm that "tag" does not somehow alter the meaning of the whole term Unique Identification Tag, Advance seeks out extrinsic definitions for "tag" including defining a "tag" as a strip of leather.[3]

With respect to the specifications, Advance cites to Figures 2 and 3c in support of its argument that the Unique Identification Tag must be separately added to the Static Media Object. The Federal Circuit has stated that "particular embodiments appearing in a specification will not be read into the claims when the claim language is broader that such embodiments." *Electro Med. Sys., S.A. v. Cooper Life Sciences*, 34 F.3d 1048, 1054 (Fed. Cir. 1994). There is nothing in the broad disclosure of Unique Identification Tag to require that the Unique Identification Tag must be separately added. Because the disclosure is broader than the particular embodiment on which Advance relies, the term Unique Identification Tag cannot be limited by the particular embodiment.

The specifications of the Activ8 Patents explicitly provide that the Unique Identification Tag may comprise "a sequence of unique numbers and letters" and may also comprise

---

[3]    Activ8 has already demonstrated the problems with using dictionaries rather than the specifications and claim language to interpret claim terms. This can be seen in the fact that "tag" is also defined as "a descriptive word or phrase applied to a person, group, organization, etc. as a label or means of identification." WEBSTER'S ENCYCLOPEDIC UNABRIDGED DICTION OF THE ENGLISH LANGUAGE 1447 (1994). Nothing in this definition requires that the "tag" be added, only that it serve to describe. This is exactly how Unique Identification Tag is used in the Activ8 Patents.

information that "conveys the specific publication, region, issue, date or page number of the associated static media object." '006 Patent, Col. 7:47-50; '889 Patent, Col. 9:23-26. The specifications of the Activ8 Patents explicitly contemplate embodiments, such as page numbers, issues, dates etc., in which the Unique Identification Tag is part of the Static Media Object and is not separately added.

In order to avoid their infringement, Advance and RichFX repeatedly insist that a Unique Identification Tag cannot be a trademark.[4] The patent specification and file history do not disavow trademarks or any other combinations of letters/numbers that can provide a reference for a user to locate the corresponding Interactive Electronic Representation of the Static Media Object, i.e. a magazine page. For example, the use of the trademark Wal-Mart is able to serve as a Unique Identification Tag the same way that a page number can constitute a Unique Identification Tag. The trademark Wal-Mart enables the retrieval of a particular category of Interactive Electronic Representations, in this case, Wal-Mart brand advertisements, not Target brand advertisements. Furthermore, the trademark Wal-Mart is certainly a Unique Identification Tag because the trademark can identify and be linked to an Interactive Electronic Representation of an advertisement for Wal-Mart products or services. *See* 15 U.S.C. § 1127 ("The term trademark includes any word, name, symbol, or device or any combination thereof…which a person has a bona fide intention to use in commerce and applies to register on the principal register established by this chapter, to identify and distinguish his or her goods, including a unique product, from those manufactured or sold by others…").

---

[4]        Advance's position on trademarks is particularly curious because *Vogue* specifically asked that advertisers' trademarks be used to navigate the original September 2004 *Vogue* website set up by Activ8 and licensed under the Activ8 patents in suit. In other words, if trademarks did not constitute Unique Identification Tags, then there would have been no reason for a license.

In the support of the "separately added" limitation, RichFX seizes upon the statement in the specification that "unique identification tags 204a and 204b *may* be shown adjacent to a well-known logo or symbol that a reader may associate with a WWW address." From that statement, RichFX concludes that an item that is adjacent to a second item cannot be the same as the second item. What RichFX ignores is that the statement is predicated on the word "may." The use of the term "may" demonstrates that this is only one embodiment or illustration of a Unique Identification Tag. This includes the possibility that the Unique Identification Tag may not be adjacent to a well-known logo or symbol. The statement in the specifications further implicates the possibility that the Unique Identification Tag can be the page number, which obviously can be adjacent to a logo or symbol. Consequently, the statement is illustrative of one possible implementation of the invention, i.e. a page number next to a logo, out of a broad universe of implementations. Nothing in that statement clearly disavows the possibility that the Unique Identification Tag is a trademark that may or may not be adjacent to another trademark.

Based on the foregoing, no justification exists for limiting the claims, as proposed by Advance and RichFX, to a Unique Identification Tag that must be "separately added" to the static media object. Again, Advance and RichFX selectively choose part of the term Unique Identification Tag to construe the claim in a manner that fits their selected construction rather than looking to the patent specifications and the term Unique Identification Tag as a whole.

### C. Activ8's Claim Construction for Unique Identification Tag is Entirely Consistent with the Prosecution Histories.

In addition to consulting the specification, courts "should also consider the patent's prosecution history, if it is in evidence." *Phillips*, 415 F.3d at 1317. In construing patent claims, a court considers the prosecution history to determine whether applicant *clearly and unambiguously disclaimed or disavowed* any interpretation during prosecution in order to obtain

claim allowance.  *Salazar v. Procter & Gamble Co.*, 414 F.3d 1342, 1344 (Fed. Cir. 2005) (citing *3M Innovative Props. Co. v. Avery Dennison Corp.*, 350 F.3d 1365, 1371 (Fed. Cir. 2003)).  Despite Advance and RichFX's arguments to the contrary, at no point during the prosecution of the Activ8 Patents, did the inventors disclaim, disavow, or limit the term Unique Identification Tag to having a 1:1 correspondence with the Interactive Electronic Representation or to being separately added to the Static Media Object.

### 1.    The File Histories Do Not Support the 1:1 Correspondence Limitation

In support of its position on 1:1 correspondence, Advance makes the reverse argument that the prosecution histories for the Activ8 Patents contain no suggestion that the applicants intended for the Unique Identification Tag limitation to have any meaning other than 1:1 correspondence.  Even if that were true, which it is not, that reasoning by Advance is simply backwards.  In order to get the limitation it needs so desperately, Advance must show that the inventors *affirmatively disclaimed or disavowed* the broader interpretation.  Because the 1:1 correspondence requirement does not appear anywhere in the specification or the prosecution histories, the inventors' silence on this point in the file histories does not constitute a *disclaimer or disavowal*.

Advance and RichFX's arguments are based on a handful of sound bites from the file histories that have been taken out of context.  Activ8's quoted remarks were made in the course of responding to rejections based on specific prior art disclosing a method or performing trans-internet purchase transactions.  To refute these rejections for specific claims then at issue, Activ8 argued that the prior art was directed solely at the digital world and failed to provide or suggest a link between the paper world and the digital world.

14

Advance cites the '006 May 28, 2002 Office Action Response at pages 5 through 8 in support of its argument that the term Unique Identification Tag is limited to a 1:1 correspondence between the Unique identification Tag and the Interactive Electronic Representation. The paragraph from which Advance cites states the following:

> As with Astiz, Kirsch [a cited prior art reference] is directed solely to the digital world and does provide any disclosure or suggestion for linking the physical world with the digital world. For example, Kirsch does not provide any unique identification tags on any physical static media objects. As mentioned above, physical static media objects include such things as printed publications, magazines, billboards, etc. Since Kirsch does not suggest placing any coded identifier on a physical object, Kirsch fails to anticipate the claimed invention and the rejection should accordingly be withdrawn.

Read in its entirety, the important distinguishing factor between the prior art reference and the '006 Patent was this association of a Static Media Object with the digital world, not the relationship between the Unique Identification Tag and the Interactive Electronic Representation. Moreover, in the response, no special meaning is attached to "unique" except that the coded identifier, the Unique Identification Tag, is unique in providing the new, inventive function of enabling retrieval of Interactive Electronic Representations from the digital world. The very prosecution history on which Advance relies undermines this theory that "unique" means 1:1 correspondence and that "unique" and "tag" are somehow ignored by Activ8 in its proposed claim interpretation.

## 2. The File Histories Do Not Support the Separately Added Limitation

RichFX cites the same passage quoted above from the prosecution history in support of its "separately added" limitation, apparently relying on the phrase "placing any coded identifier on a physical object" found in that quotation above. RichFX argues that the prosecution history therefore limits the construction of a Unique Identification Tag to something that is separately added to the static media object despite the fact that the inventors' remarks in the file history do

not say that and despite the fact the claims were never amended to include the limitation of being "separately added."

Advance and RichFX's cite to that portion of the prosecution history where the inventors distinguished the present invention from Kirsch, a prior art reference, by stating that Kirsch does not suggest placing any coded identifier on a physical object. '006 May 28, 2002 Office Action Response at pp. 5-8.  Again this statement out of the prosecution history only serves to emphasize that the overall invention of the '006 patent is the association or link between the digital world and the paper world, by whatever Unique Identification Tag is used.  Moreover, the inventors were not responding to a concern from the patent examiner that Unique Identification Tag was not separately added or could correspond to more than one Static Media Object or Interactive Electronic Representation.  Accordingly, the quoted passage from the file history does not *clearly and unambiguously* state that the Unique Identification Tag is separately added or *clearly and unambiguously* disclaim or disavow a claim interpretation that includes the Unique Identification Tag as part of the Static Media Object, such as a trademark on an advertisement.

RichFX further proposes that the Examiner's remarks in the '006 Notice of Allowance also limit a Unique Identification Tag to something "separately added."  First, the examiner's statement are irrelevant as they merely pertain to entering a catalog number to pull up a specific item number rather than the association of the Static Media Object with an Interactive Electronic Representation.  Second, this reliance on the examiner's independent remarks is not justified.  In *Salazar v. Procter & Gamble Co.*, 414 F.3d 1342, 1347 (Fed. Cir. 2005), the court refused to create a rule or presumption that the applicant in that case disavowed the scope of the claim by silence.  The court held that the "[e]xaminer's unilateral remarks alone do not affect the scope of

the claim, let alone show a surrender of claimed subject matter that cannot be recaptured under the doctrine of equivalents." *Id.*

To limit claim scope, any disavowal during the prosecution history must be "clear." *See York Products, Inc. v. Central Tractor Farm & Family Ctr.*, 99 F.3d 1568, 1575 (Fed. Cir. 1996). Clear disavowal is certainly not the case here.  Neither the prosecution histories nor the specifications disclose or even suggest requiring a 1:1 correspondence or that the Unique Identification Tag be "separately added."  Without such clear disavowal, Activ8's claim construction for the Unique Identification Tag should be adopted by the Court.

## IV.    CONVENTIONAL STATIC MEDIA OBJECT ('889 PATENT) (JOINT STATEMENT, DISPUTED ITEM 1)

Further underlining Advance and RichFX's obfuscation of the correct meaning of the terms of the patent is their reference to the prosecution histories to define Conventional Static Media Object.  Advance and RichFX propose that the term Conventional Static Media Object in the claims of the '889 Patent be defined the same as Physical Static Media Object namely,  "a static publication or object such as a page in a magazine or a newspaper, that cannot by itself provide access to related electronic information."

The term Conventional Static Media Object only appears in the '889 Patent which is entitled "System and Method for Obtaining and Displaying an Interactive Electronic Representation of a Conventional Static Media Object."  The '889 Patent was a continuation-in-part of the '006 Patent and was specifically filed to disclose and claim a new category of Static Media Objects including electronic publications or electronic visual material.  '889 Patent, Col. 2:14-36.

Advance and  RichFX contend that Activ8 disavowed this additional subject matter, electronic static media objects, in the prosecution history by an amendment to application Claim

17

19, which became issued Claim 1 of the '889 Patent. During the prosecution, original application Claim 19 was rejected along with several other claims as being anticipated by a prior art reference Kirsch. '889 December 21, 2001 Office Action; June 3, 2002 Office Action Response. In their Response to the Office Action rejecting these claims, the inventors presented several arguments. The argument cited by Advance and RichFX is only one of several made in response by the inventors. In addition to the argument that Kirsch differed from the claims at issue because Kirsch only dealt with the physical world, the inventors also presented the argument that Kirsch related only to a method of performing trans-internet purchase transactions. '889 June 3, 2002 Office Action Response at pp. 8-9. It is certainly not clear or unambiguous which argument applied to which claims and the reason for each amendment based on these arguments. *See York Products,* 99 F.3d at 1575 (holding that to limit claim scope, any disavowal during the prosecution history must be "clear.")

Furthermore, although the claims were amended and Claim 19 was finally granted as issued Claim 1, Claim 1 retains the term Conventional Media Object which is still explicitly defined in the specification to mean "electronic publications on the Internet" or "electronic publications utilizing web pages." '889 Patent, Col. 2:14-18 and Col. 8:54-55. Claim 19 was amended and became issued Claim 1 with the deletion of the phrase "comprising electronic content." Given the fact that "comprising electronic content" is inherent in the meaning of the specification defined term Conventional Media Object, the inclusion of this phrase would have been merely redundant and its removal may have simply been to eliminate the redundancy. The removal of the phrase, given the ambiguous circumstances, cannot constitute a disavowal of electronic publication or electronic visual material from the definition of Conventional Static Media Object.

Further, if the court were to adopt Advance and RichFX's construction for Conventional Static Media Object, then Claim 2, which depends from Claim 1 of the '889 Patent would make no sense. Claim 2 of the '889 Patent explicitly discloses "[t]he method of claim 1, wherein the [conventional] static media object is contained *within an electronic publication* . . . ." How can a physical static media object, the definition urged by Advance and RichFX, be contained within an electronic publication? By adopting Activ8's definition for Conventional Static Media Object, electronic visual material, such electronic visual material can be contained within an electronic publication, and the claim set is internally consistent and meaningful. Advance and RichFX's construction is not unambiguously supported by the prosecution histories. Moreover, it is unsupportable based on the explicit language of the claims and the explicit definition in the specification of the '889 patent. For these reasons, Activ8's construction is proper.

**V.      TERMS RELATED TO INTERVENING STEPS:  Providing An/Displaying An/Forwarding The Interactive Electronic Representation Of The Static Media Object In Response To Receiving The Unique Identification Tag (joint Statement, Disputed Item 12) and Retrieving The Interactive Electronic Representation Of The Static Media Object Based Upon The Unique Identification Tag (Joint Statement, Disputed Term 18)**

Advance mischaracterizes Activ8's construction of these functional terms. Activ8 agrees that both terms must be understood as "receiving the unique identification tag." Activ8's construction includes both the transmission of the Interactive Electronic Representation to the user's browser, either a stand-alone browser or a distributed browser, from a www server and the receipt of the Unique Identification Tag by the www server. Under ordinary claim construction principles, the claim language is clear that the claims of the Activ8 Patents are infringed by any method that has each of these claims steps without regard to the addition of any intervening steps or activity.

19

Advance and RichFX attempt to ignore fundamental principles of patent law and drafting by arguing that the claims require a "direct response." First, nowhere do the specifications of the Activ8 Patents disclose or require a "direct response" as Advance proffers. Second, the law is clear that the transitional phrase "comprising" has a special meaning. "Comprising" means that the named elements are essential, but other elements may be added and still form a construct within the scope of the claim. *Amgen Inc. v. Hoeschst Marion Roussel, Inc.*, 314 F.3d 1313, 1344-45 (Fed. Cir. 2003).

The construction proposed by Advance and RichFX is unsupportable and should not be adopted.

## VI. MULTIMEDIA OBJECT (JOINT STATEMENT, DISPUTED ITEM 5)

Advance and RichFX's proposal that this claim term be construed to mean "[s]ound clips or movie files associated with a Static Media Object" imports a limitation into the claims from the preferred embodiment. Advance and RichFX again cherry pick a sentence from the specification to limit the construction of this term despite the fact that the specifications make it clear that Multimedia Object has a broader construction than the one proposed by Advance and RichFX.

Furthermore, the disclosure relied on by Advance and RichFX is open to more than one interpretation. Advance and RichFX seize on the statement that the Interactive Electronic Representation consist of "text, graphic, or multimedia objects" '006 Patent, Col. 11:40-43; '889 Patent, Col. 14-15:67-4. From that, Advance and RichFX argue that text and graphic objects are necessarily excluded from the construction of Multimedia Objects. This statement from the specification is properly understood to mean that Multimedia Objects is a larger, generic category including text objects, graphics objects, video objects, audio objects, etc. For example,

the statement that the objects consist of hammers, wrenches, or other tools certainly communicates that hammers and wrenches are within the generic category of other tools.

This broader construction is further supported in Figure 4 of the Activ8 Patents. Contrary to Advance and RichFX's argument that this Figure is not relevant, Figure 4 makes clear the breadth of the term Multimedia Object. Multimedia Object is described in Column 9, lines 31 through 36 of the '006 Patent and Column 12, lines 41 through 45 of the '889 Patent in conjunction with the earlier reference to Multimedia Objects at '006 Patent, Col. 9:12-17 and '889 Patent, Col. 12:22-28. That description demonstrates that the term Multimedia Object encompasses those objects stored in the media database that are hot-linked to an Interactive Electronic Representation and that may be transmitted from the www server to a user's computer. These "objects stored in the media database" are described as "documents and other objects." '006 Patent, Col. 9:23-24; '889 Patent, Col. 12:33-34. Multimedia objects, therefore, necessarily include the objects "from a media database 'hot-linked' to an Interactive Electronic Representation that may be transmitted from a computer" be they, text objects, graphic objects, sound clips, etc. Consequently, the specification clearly provides for a broader disclosure than the one urged by Advance and RichFX.

## VII.    OTHER CLAIM TERMS IN DISPUTE

Activ8's proposed construction of the remaining terms in dispute is based on the plain language of the claims and the disclosures in the patent specifications. For the reasons stated in the preceding sections and in Activ8's Initial Brief, the remaining terms in dispute should be construed in accordance with Activ8's proposed constructions for these terms as set forth in its Initial Brief.

## VIII.   CONCLUSION

For these reasons and the reasons set forth in Activ8's Initial Brief, Activ8's proposed constructions should be adopted and Advance and RichFX's rejected.

This 19th day of June, 2006.

> s/Deborah A. Heineman___
> Dale Lischer (DL-9708)
> T. Hunter Jefferson  (TJ-8693)
> Deborah A. Heineman (DH-5681)
>
> SMITH, GAMBRELL & RUSSELL, LLP
> Promenade II, Suite 3100
> 1230 Peachtree Street, N.E.
> Atlanta, Georgia  30309-3592
> 404.815.3500
> 404.815.3509 (Facsimile)
>
> Paul R. Niehaus (PN-3994)
> NIEHAUS LLP
> 230 Park Avenue, 10th Floor
> New York, NY  10169
> (212) 551-1445
>
> Attorneys for Activ8now, LLC and Active8media, LLC

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I have filed a copy of the within and foregoing Activ8now, LLC and Active8media, LLC's Reply to Advance Magazine Publishers d/b/a The Condé Nast Publications, Advance Publications, Inc.'s and RichFX's Claim Construction Briefs with the Clerk of Court using the CM/ECF system which will send electronic notice of such filing to::

    Randy Lipsitz, Esq. (RL-1526)
    Richard L. Moss, Esq. (RLM-7948)
    KRAMER LEVIN NAFTALIS & FRANKEL LLP
    1177 Avenue of the Americas
    New York, New York  10036

    Robert Eliot Hanlon, Esq.
    ALSTON & BIRD, LLP
    90 Park Avenue
    New York, New York  10016

    Frank G. Smith, III, Esq.
    George D. Medlock, Esq.
    ALSTON & BIRD, LLP
    1201 W. Peachtree Street
    Atlanta, Georgia 30309

This 19th day of June, 2006.

                                   s/Deborah A. Heineman___
                                   Deborah A. Heineman