Randy Lipsitz, Esq. (RL-1526)
Richard L. Moss, Esq. (RLM-7948)
Aaron M. Frankel, Esq. (AMF-9348)
KRAMER LEVIN NAFTALIS & FRANKEL LLP
1177 Avenue of the Americas
New York, New York 10036
(212) 715-9100

Attorneys for Plaintiff,
Advance Magazine Publishers Inc.
d/b/a The Condé Nast Publications
&
Attorneys for Third Party Defendant,
Advance Publications, Inc.

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ADVANCE MAGAZINE PUBLISHERS INC. d/b/a THE CONDÉ NAST PUBLICATIONS, <br><br> Plaintiff, <br><br> v. <br><br> ACTIV8NOW, LLC and ACTIVE8MEDIA, LLC, <br><br> Defendants, <br><br> v. <br><br> ADVANCE PUBLICATIONS, INC. and RICHFX, INC., <br><br> Third Party Defendants. | CIVIL ACTION NO.: <br><br> 05-CV-7516 (KMK) |

**PRE-HEARING SUR-REPLY BRIEF ON MARKMAN CLAIM TERM CONSTRUCTION OF ADVANCE MAGAZINE PUBLISHERS INC. d/b/a THE CONDÉ NAST PUBLICATIONS AND ADVANCE PUBLICATIONS, INC.**

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................................ ii

I.   INTRODUCTION ..................................................................................................... 1

II.  ADVANCE'S CONSTRUCTION OF THE CLAIM TERM "UNIQUE IDENTIFICATION TAG" IS BASED ON THE PLAIN MEANING OF THE TERM AND SHOULD BE ADOPTED BY THE COURT ................................... 3

     A.   Advance's Construction of the Claim Term "Unique Identification Tag" is Compelled by the Applicable Authority .................................................. 5

     B.   Prior Decisions Construing Unique Identification-Type Terms in Accordance With Their Plan Meaning Support Advance's Construction for "Unique Identification Tag" ........................................................................ 6

     C.   In the Present Case, "an" Must Be Construed in the Singular ....................... 7

     D.   "Unique Identification Tag" Must be Construed to Require Separate Addition ........................................................................................... 8

     E.   Trademarks Cannot be "Unique Identification Tags" as Claimed in the Suit Patents ............................................................................................ 9

     F.   The Prosecution Histories Confirm that "Unique Identification Tag" Must be Construed Consistent With its Plain Meaning ................................. 10

III. THE CLAIMS ARE NOT LIMITED TO WWW EMBODIMENTS ...................... 11

IV.  A CONVENTIONAL STATIC MEDIA OBJECT IS A PHYSICAL STATIC MEDIA OBJECT ........................................................................................ 12

V.   CONCLUSION ........................................................................................................ 15

# TABLE OF AUTHORITIES

**CASES**

Page(s)

*Abtox, Inc. v. Exitron Corp.*
  122 F.3d 1019 (Fed. Cir. 1997) ............................................................................... 8

*Acco Brands, Inc. v. Micro Security Devices, Inc.*
  346 F.3d 1075 (Fed. Cir. 2003) ............................................................................. 13

*Atofina v. Great Lakes Chem. Corp.*
  441 F.3d 991 (Fed. Cir. 2006) ................................................................................. 4

*AT&T Corp. v. Microsoft Corp.*
  2003 WL 21459573, (S.D.N.Y. June 24, 2003) ...................................................... 5

*Biovail Labs Int'l SRL v. Impax Labs, Inc.*
  ____ F.Supp.2d ____, 2006 WL 1450532 (E.D. Pa. 2006) ............................... 5, 7

*Cias, Inc. v. Alliance Gaming Corp.*
  2006 U.S. Dist. LEXIS 13610 (S.D.N.Y. Mar. 29, 2006) ....................................... 7

*Elekta Instruments S.A. v. O.U.R. Scientific Int'l*
  214 F.3d 1302 (Fed. Cir. 2000) (*en banc*) .............................................................. 4

*Elkay Mfg. Co. v. Ebco Mfg. Co.*
  192 F.3d 973 (Fed. Cir. 1999) ............................................................................. 7, 8

*GLOBEtrotter Software, Inc. v. Elan Computer Group, Inc.*
  236 F.3d 1363 (Fed. Cir. 2001) ............................................................................... 7

*Insituform Techs., Inc. v. Cat Contracting, Inc.*
  99 F.3d 1098 (Fed. Cir. 1996) ................................................................................. 8

*Microsoft Corp. v. Multi Tech Sys., Inc.*
  357 F.3d 1340 (Fed. Cir. 2004) ............................................................................. 11

*Phillips v. AWH Corp.*
  415 F.3d 1303 (Fed. Cir. 2005) (*en banc*) ............................................... 1, 2, 3, 11

*Seachange Int'l, Inc. v. C-Cor Inc.*
  413 F.3d 1361 (Fed. Cir. 2005) ............................................................................. 13

*Unique Concepts, Inc. v. Brown*
  939 F.2d 1558 (Fed. Cir. 1991) ....................................................................... 5, 6, 8

## TABLE OF AUTHORITIES (CON'T)

*Wilson Sporting Goods v. Hillerich & Bradsby Co.*
    442 F.3d 1322 (Fed. Cir. 2006) .................................................................................... 6

*ZMI Corp. v. Cardiac Resuscitator Corp.*
    844 F.2d 1576 (Fed. Cir. 1988) .................................................................................... 5

### BOOKS

LEWIS CARROLL, ALICE'S ADVENTURES IN WONDERLAND AND THROUGH THE
    LOOKING GLASS (George Stade ed. 2004) (1871) ..................................................... 4, 5

### DICTIONARIES

THE AMERICAN HERITAGE COLLEGE DICTIONARY
    1476 (3rd ed. 1997) ...................................................................................................... 6

I.  **INTRODUCTION**

In sur-reply to Active8's Reply Brief, and as Advance's last opportunity to address the Court regarding patent claim term construction before the Markman Hearing, Advance herein addresses the untenable, inconsistent and often baffling positions emphasized in Active8's Reply Brief. First, however, for the Court's reference, Advance provides a précis of the fundamental rules of patent claim construction gleaned from the seminal Federal Circuit case *Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005) (*en banc*):

1. Because the claims of a patent define the protected invention, it is unjust to the public and an evasion of the law to construe patent claims in a manner different from the plain import of their terms. *Id.* at 1312.

2. Words of a claim are given their ordinary and customary meaning as understood by a person of ordinary skill in the art at the time of the invention; and where the ordinary meaning of the claim language is readily apparent "even to lay judges," claim construction includes little more than the application of the widely accepted meaning of commonly understood words. *Id.* at 1312-14. (This is the case here, where neither party asserts that a person of skill in the art is required, and no experts will be presented at the Markman Hearing.)

3. As part of its claim term interpretation, in addition to the claim language itself, the Court should consider the patent specification and the file prosecution history, and may consult dictionaries if helpful to determine or confirm the true meaning of language used in the claims. *Id.* at 1315-18.

4. Limitations from the specification not stated in the language of the claims should not be read into the claims. *Id.* at 1320.

5. The manner in which a patentee uses a term in the specification and in the claims usually makes clear whether the claims cover only the particular embodiment or embodiments set forth in the specification, or are intended to cover more than that. *Id.* at 1323.

As Advance demonstrates, all of the above rules are violated by Active8's attempt to broaden the claim scope of its patents by reading <u>out</u> the "unique identification tag" limitation, and, at the same time, to narrow the claim scope by reading <u>in</u> the WWW limitation. Active8 has no alternative but to read out the "unique identification tag" limitation because Advance's

accused websites do not use anything resembling a "unique identification tag" when the claim term is, as it must be here, construed in accordance with its plain meaning. Active8 improperly reads in the WWW limitation to avoid invalidating prior art.

Active8's claim construction proposals, however, are not only improper as a matter of law, but they are glaringly inconsistent. Active8 asserts that the suit patent claims must be construed to include a WWW limitation (even though nothing in the claims requires this) because (i) the patent specifications describe only WWW embodiments (an incorrect characterization of the specifications), and (ii) the scope of the claims must be consistent with the scope of the specifications. At the same time, even though all of the claims recite a "unique identification tag," and Active8 does not dispute that the patent specifications describe only embodiments that include both requirements of "1:1 Correspondence" and "Separate Addition" (as these requirements are defined and discussed in Advance's Answering Brief), Active8 seeks to have the Court read away such requirements which are ingrained in the claim term even though consistent with the scope of the specifications. Neither of Active8's briefs even attempts to resolve this contradiction.

In this and in its previous brief, and heeding the cardinal rules of patent claim construction laid out in *Phillips,* Advance demonstrates that (i) the claim term "unique identification tag" must be construed consistent with its plain meaning, and giving effect to both the words "unique" and "tag;" (ii) the disclosures of the suit patents are not limited to WWW implementations, nor did the suit patent applicants include any WWW limitation in the claims, so no such WWW limitation can be imported into the claims now; and (iii) the applicants clearly and unambiguously disavowed all claim coverage of electronic static media objects in order to overcome invalidating prior art, and, as a result, cannot now recapture through claim

construction the claim scope surrendered during prosecution. The remaining issues raised in Active8's Reply Brief merely rehash arguments from its Opening Brief, and have already been fully addressed by Advance in its Answering Brief.

## II. Advance's Construction of the Claim Term "Unique Identification Tag" is Based on the Plain Meaning of the Term and Should be Adopted by the Court

In its Answering Brief, Advance demonstrates that the proper construction of the term "unique identification tag" under the established claim construction principles requires that the Court look to the plain meaning of the patent applicants' chosen claim words. The inescapable result here is that "unique identification tag" must be construed to be an identification separately added to a static, non-electronic page of a magazine or other document such that the unique identification tag uniquely associates the page with a single interactive electronic representation of the page. This plain meaning equates to the "1:1 Correspondence" and "Separate Addition" requirements.

Active8 mischaracterizes Advance's proper construction of "unique identification tag" to be an allegedly improper importation of claim limitations from the specifications (while, paradoxically, also stating that the allegedly imported claim limitations are not found in the specifications). In so doing, Active8 ignores that Advance's proposed construction is drawn first and foremost from the plain meaning of the term itself in accordance with the established claim construction principles. *Philips*, 415 F.3d at 1312-13. No matter how many times Active8 states otherwise, it is not importation to construe claim terms actually recited in the claims.

Here, despite Active8's assertion to the contrary, the patent specifications do not contain a definition of the term "unique identification tag," even though the specifications contain specific definitions for other claim terms,[1] nor do they provide a context or understanding for any meaning other than the ordinary meaning of the words used in the term.[2] Similarly, the patent prosecution histories contain no suggestion that Active8 intended for "unique identification tag" to have any meaning other than its plain and ordinary meaning. *See Atofina v. Great Lakes Chem. Corp.*, 441 F.3d 991, 997 (Fed. Cir. 2006) (looking to prosecution history to confirm proposed term construction).

Given the absence of an express intent on the part of the patent applicants to impart a novel meaning to the claim term, the claim term must be construed consistent with its ordinary meaning. *See, e.g., Elekta Instruments S.A. v. O.U.R. Scientific Int'l*, 214 F.3d 1302, 1307 (Fed. Cir. 2000) (*en banc*) ("absent an express intent to impart a novel meaning, claim terms take on their ordinary meaning."). In this regard, Active8 cannot reasonably expect to avoid the fact that a "unique identification tag" must be "unique" as well as a "tag." Active8's attempt to rewrite the plain meaning of "unique identification tag" is reminiscent of Humpty Dumpty's exchange with Alice that "glory" means "a nice knock-down argument" in Lewis Carroll's famed ALICE'S ADVENTURES IN WONDERLAND AND THROUGH THE LOOKING GLASS, 219 (George Stade ed. 2004) ("'When *I* use a word,' Humpty Dumpty said, in rather a scornful

---

[1] *See, e.g.*, '889, 7:60-8:16 (section entitled "Brief Explanation of Terms").

[2] Active8 does not, because it cannot, point to any specific definition of "unique identification tag" in the specifications. Instead, Active8 tries to elevate functional examples in the specifications of unique identification tags to the level of a definition in a futile attempt to persuade the Court to ignore the term's plain meaning. However, even the examples relied on by Active8 support Advance's proposed claim construction, as every example operates under both the 1:1 Correspondence and Separate Addition requirements.

tone, 'it means just what I choose it to mean -- neither more nor less.' 'The question is,' said Alice, 'whether you *can* make words mean so many different things.'") (emphasis in original).

### A. Advance's Construction of the Claim Term "Unique Identification Tag" is Compelled by the Applicable Authority

In an effort to distract the Court away from recognizing the limiting impact of the words "unique" and "tag" in the claim term "unique identification tag" on the scope of the suit patents, Active8 accuses Advance of improperly parsing the words. Active8's argument, unbelievably, is that since "unique identification tag" should be read as a "coherent whole" (which Advance does not dispute) it is improper to consider the separate meanings of "unique" and "tag." That is, Active8 actually asserts that it is improper to consider the meaning of the words comprising a phrase in order to understand the phrase. Active8's position not only defies common sense, but it is incorrect as a matter of law, and stands rejected by the very authority to which Active8 apparently intended to cite in its Reply Brief, *AT&T Corp. v. Microsoft Corp.*[3] In the *AT&T* case, Judge Pauley construed the claim phrase "speech pattern" as a whole, consistent with its plain meaning, and in so doing separately analyzed the constituent terms "speech" and "pattern." 2003 WL 21459573, at *16 (S.D.N.Y. June 24, 2003).[4] Advance's proposed construction is consistent with this authority in that it, as it must, takes into consideration and gives meaning to all of the component words in the claim term under consideration to understand the term as a whole. *Unique Concepts, Inc. v. Brown*, 939 F.2d 1558, 1562 (Fed. Cir. 1991)

---

[3] Active8 cites to *ZMI Corp. v. Cardiac Resuscitator Corp.*, 844 F.2d 1576, 1580 (Fed. Cir. 1988), which is cited in the *AT&T* case, as construing the term "speech pattern" as an entire phrase. *ZMI Corp.* does not stand for this proposition, nor does it construe the term "speech pattern." It is the *AT&T* case that is concerned with construing this claim term.

[4] The case *Biovail Labs. Int'l SRL v. Impax Labs., Inc.*, ___ F. Supp.2d ___, 2006 WL 1450532, at *3 (E.D. Pa. 2006) cited by Active8 also directly contradicts Active8's approach. In construing the claim term "delayed release tablet," the *Biovail* court gave meaning to both the "delayed release" and "tablet" components of the term. *Id.* at *15.

("[a]ll limitations of a claim must be considered meaningful."). Simply put, a "unique identification tag" is an "identification" that is both "unique" and a "tag."

In conducting a claim construction analysis, the Court should not lose sight of the fact that patents are legal documents carefully crafted by skilled patent practitioners. Words, phrases and terms used in a patent are not chosen lightly; rather they are chosen and used carefully, especially in the claims. The word "unique" is absolute (indeed, scholars have challenged whether the word can even ever be qualified by another word, *e.g.*, "somewhat unique"). *See, e.g.*, THE AMERICAN HERITAGE COLLEGE DICTIONARY 1476, Usage Note (3rd ed. 1997) (Exh. I). If the applicants did not mean to restrict the scope of the suit patents to a "unique identification tag," they could have easily done so by using other, less limiting, words in the claims. Instead, the applicants chose to use the limiting term "unique identification tag" in each and every claim, and Active8 must now live with that choice and the limiting consequences of that term's ordinary and plain meaning on the scope of the patents.

### B. Prior Decisions Construing Unique Identification-Type Terms in Accordance With Their Plain Meaning Support Advance's Construction For "Unique Identification Tag"

Active8 also cannot avoid the fact that Advance's proposed construction of the term "unique identification tag" is entirely consistent with district court and Federal Circuit decisions construing similar unique identification-type terms in accordance with their plain meanings. Such precedent is not "irrelevant" as Active8 asserts (without citing any supporting authority). To the contrary, the Federal Circuit has affirmatively recognized the value of reference to a prior decision construing similar terms. *Wilson Sporting Goods Co. v. Hillerich & Bradsby Co.*, 442 F.3d 1322, 1328 (Fed. Cir. 2006) (construing the claim term "annular" with reference to prior decisions construing the term in accordance with its plain meaning). Indeed,

even Active8's own cited authority recognizes that it is appropriate to consider precedential decisions construing similar claim terms. *Biovail*, 2006 WL 1450532, at *5. Thus, Judge Kaplan's approach in construing the term "unique authorized information" in *Cias, Inc. v. Alliance Gaming Corp.*, 2006 U.S. Dist. LEXIS 13610 (S.D.N.Y. Mar. 29, 2006),[5] is instructive here.[6]

### C. In the Present Case, "an" Must Be Construed in the Singular

Active8 repeats its untenable argument that 1:1 Correspondence is an improper limitation because the claims discuss creating "an" association between the unique identification tag and "an" interactive electronic representation, and, according to Active8, the article "an" is grammatically ambiguous and encompasses both the singular and the plural. First, as discussed above and demonstrated in Advance's Answering Brief, the claim term "unique identification tag" is not ambiguous; by its plain meaning in the context of the suit patents, the unique identification tag cannot be unique if it identifies multiple interactive electronic representations -- that is, it demands 1:1 Correspondence. Second, Active8 mischaracterizes the law regarding use of the article "an" in patent claims. The cases cited by Active8 regarding the use of "an" are irrelevant here because, unlike the present case, they involve the introduction of an element or a step in a process when first recited, and do not address the situation where the claims, as here, include terms that unambiguously rule out the plural case (the exception is *Elkay Mfg. Co. v.*

---

[5] Judge Kaplan recognized that "unique" modifies the term "authorized information," and applying the "common and ordinary meaning" of the term, construed the phrase to require that the authorized information be associated with only a single object, *i.e.*, uniquely (1:1 Correspondence). *Cias*, at *15.

[6] In its Answering Brief, Advance discusses a number of other court decisions construing unique identification terms as requiring 1:1 correspondence based on the common and ordinary meaning of the terms, including the Federal Circuit's decision in *GLOBEtrotter Software, Inc. v. Elan Computer Group, Inc.*, 236 F.3d 1363, 1369-70 (Fed. Cir. 2001). Answering Brief at 13-14.

*Ebco Mfg. Co.*, 192 F.3d 973, 979 (Fed. Cir. 1999), which construed "an" in the singular and supports Advance's proposed construction).

Contrary to what Active8 would have this Court believe, the Federal Circuit has held that "a" or "an" should be construed in the singular when the plain meaning of the claim term under consideration rules out the plural case. *Insituform Techs., Inc. v. Cat Contracting, Inc.*, 99 F.3d 1098, 1105-06 (Fed. Cir. 1996) (construing "a cup" to mean only one cup, where multiple cups would "eliminate an inherent feature" of the claim and the claim language and specification strongly suggested singular construction by repeatedly describing or depicting "cup" in the singular and not disclosing use of more than one cup); *Abtox, Inc. v. Exitron Corp.*, 122 F.3d 1019, 1027 (Fed. Cir. 1997), *amended on rehearing at* 131 F.3d 1009 (which, remarkably, was cited by Active8 for the contrary proposition) (construing "a metallic gas-confining chamber" to be limited to a single chamber based on the surrounding claim language and the specification). Here, with respect to the pervasive claim term "unique identification tag," by the presence of the term "unique" which plainly means one-of-a-kind, the plural reading of "an" is precluded.

### D. "Unique Identification Tag" Must be Construed to Require Separate Addition

To avoid the consequences of the "tag" limitation appearing in the claim term "unique identification tag," Active8 makes the same untenable arguments it made with respect to the term "unique." As Advance has already demonstrated, "tag" has a plain and ordinary meaning with respect to the claim term "unique identification tag" of which it is an integral part and cannot, as a matter of law, be read out of the claim term as Active8 would like. *See* Answering Brief at 19-21; *Unique Concepts*, 939 F.2d at 1562. The plain meaning of "tag" is something separately added to something else.

- 8 -

### E. Trademarks Cannot be "Unique Identification Tags" as Claimed in the Suit Patents

As with other of its arguments, Active8's assertion in its Reply Brief that trademarks can serve as unique identification tags is specious.[7] By equating trademarks appearing on magazine ads with page numbers added to identify each page, Active8 effectively concedes that such trademarks cannot be "unique identification tags." A page number is separately added and is unique with respect to a given publication and identifies one and only one page and the corresponding interactive electronic representation of that page. According to Active8's Wal-Mart trademark example, the Wal-Mart trademark is not separately added and neither identifies a single page nor the corresponding interactive electronic representation.[8] As demonstrated in Advance's Answering Brief, Active8's invention is the addition of a unique identification tag to a static, non-electronic page of a magazine or other document such that the unique identification tag serves to uniquely associate the page with its corresponding interactive electronic replica and allow quick, easy and direct display thereof.[9]

---

[7] Active8's reference to *Vogue's* design requirements for the September 2004 *Vogue* website, even if true, is irrelevant to the proper construction of the suit patent claims. Active8's point is premised on the incorrect and illogical assumption that Advance's decision to retain Active8 to host a website was somehow based on Active8's patents.

[8] To distract the Court away from proper claim construction, Active8, citing the Lanham Act, conflates the concept of a trademark as a unique identifier of the source of goods or services with the claimed concept of the unique identification tag uniquely identifying a single page and its corresponding interactive electronic representation.

[9] The suit patent specifications themselves state that "[o]ther methods for identifying an IER corresponding to a static media object in a media database will be apparent to those skilled in the art." '006, 10:47-49. This is a recognition that the invention is only an incremental improvement over existing technologies -- that is, the invention is limited to the addition of a unique identification tag to a static, non-electronic page of a magazine or other document such that the unique identification tag serves to uniquely associate the page with its corresponding interactive electronic replica stored in a computer database. Methods not employing a unique identification tag are already known in the prior art and not the subject of the suit patents.

### F. The Prosecution Histories Confirm that "Unique Identification Tag" Must be Construed Consistent With its Plain Meaning

Advance points out in its Answering Brief that the prosecution histories of the suit patents confirm that the patent applicants intended for "unique identification tag" to have its plain and ordinary meaning because there is nothing in the prosecution histories to suggest otherwise. Answering Brief at 15. Instead of facing this point head-on, Active8 twists it into a straw-man argument never actually raised by Advance to introduce an irrelevant line of argument dealing with prosecution history disavowal in order to avoid the requirement to construe the term consistent with its plain meaning.[10]

Along with its irrelevant straw-man argument, Active8 argues that Advance's proposed claim construction for "unique identification tag" is undermined by the applicants' decision during prosecution of the suit patents to distinguish over the Kirsch reference cited by the PTO based on the lack of a connection between the physical world and the electronic world. This argument ignores the actual prosecution history. The applicants argued that "Kirsch does not provide <u>any</u> unique identification tags on any physical static media objects." May 28, 2002 Office Action Response (Exh. D1) (emphasis added). No matter what spin Active8 tries to give it now, this statement speaks for itself and confirms that the unique identification tag is the central feature of the claimed invention, and, as such, cannot be parsed or spun out of the claims

---

[10] Advance does argue that the applicants disavowed the scope of the term "conventional static media object." *See* Answering Brief at 21-23.

by giving the term anything other than its plain meaning.[11]

### III. The Claims are not Limited to WWW Embodiments

Turning a blind eye to the developed jurisprudence on claim term construction (as well as the inconsistencies of its own positions and the disclosure in its own patent specifications), Active8 would have this Court import its proposed WWW limitation into the suit patent claims despite the fact that such an importation is not only improper as a matter of law, but is premised on a gross mischaracterization of the record.[12] Active8 does not deny that the patent claims <u>do</u> <u>not</u> <u>expressly</u> <u>state</u> a WWW limitation. Active8 nevertheless argues that the claims must be construed to include a WWW limitation because the specifications disclose only a WWW embodiment and an unclaimed voice mode embodiment. This is precisely the sort of importation of claim limitations that the Federal Circuit has consistently held to be improper. *Philips*, 415 F.3d at 1323-24. If the applicants really intended to include a WWW limitation in the claims, they should have expressly recited the limitation (as they did with the words "unique"

---

[11] In its Answering Brief, Advance points to Active8's continuation-in-part ("CIP") applications to show that the applicants intentionally drafted their claims to require that the unique identification tag uniquely identify a single interactive electronic representation. Answering Brief at 17-18. Active8 incorrectly argues, without addressing the substance of Advance's argument or citing to any authority, that the CIP applications' use of a different term is irrelevant. To the contrary, "any statement of the patentee in the prosecution of a related application as to the scope of the invention is relevant to claim construction." *Microsoft Corp. v. Multi Tech Sys., Inc.*, 357 F.3d 1340, 1350 (Fed. Cir. 2004).

[12] If Vogue magazine were provided as a CD-ROM version containing interactive electronic representations of magazine pages, Active8 would no doubt be arguing that the claims are not confined to WWW implementations. However, since the prior art provides such an embodiment, Active8 is left with no choice but to argue the untenable position that a limitation from the specifications should be read into the claims.

and "tag" when they claimed "unique identification tag").[13]

## IV. A Conventional Static Media Object is a Physical Static Media Object

In its Answering Brief, Advance demonstrates that the suit patent applicants disavowed all electronic media from the scope of the claim term "conventional static media object" during prosecution of the patents. *See* Answering Brief at 21-23. Active8 does not, because it cannot, dispute that the applicants took scope limiting actions during prosecution. Instead, Active8 desperately attempts to create "reasonable doubt" as to the intent behind the applicants' actions, arguing that it is "not clear or unambiguous which argument applied to which claims and the reason for each amendment based on these arguments." This argument, however, is flatly belied by the actual prosecution history record.[14]

The argument made by the applicants during prosecution to distinguish over the Kirsch prior art reference cited by the PTO Examiner (in rejecting various claims of the '889 patent, including claim 19) that the reference does not teach connecting a physical static media object to an interactive electronic representation (Exh. E4, May 21, 2002 Office Action Response at 8) <u>necessarily</u> entails that the claims include a physical static media object limitation. If the claims were not limited to physical static media objects, then the absence of that feature <u>could</u>

---

[13] Active8's WWW Limitation argument is also based on the incorrect premise that the disclosure of the suit patents is limited exclusively to WWW embodiments. This argument is belied by the suit patent specifications (particularly, '006, 4:5-5:5, 5:10-6:64; '889, 5:1-67, 6:5-7:59), which, in fact, describe embodiments that are not limited to WWW implementations. Indeed, it is telling that Active8 is unable to cite to anything in the specifications that suggests that the invention is <u>limited</u> to WWW embodiments (as opposed to its repeated citation to <u>examples</u> implemented on the WWW). Furthermore, Active8 concedes, as it must, that the suit patents disclose at least one non-WWW based implementation (*i.e.*, the voice network embodiment).

[14] Active8 made the telling decision to not provide the Court with copies of the prosecution histories of the suit patents as exhibits to its opening claim construction brief. This is not surprising given Active8's repeated attempts to avoid the content of the prosecution histories.

not remove Kirsch as an anticipating reference. There is no ambiguity whatsoever in this disavowal. Active8's reference to other features and arguments raised by the applicants to overcome Kirsch is a smokescreen. The presence of other features not found in Kirsch has no relevance to the applicants' specific arguments to the PTO Examiner regarding the physical static media object limitation. This is precisely the type of argument that the Federal Circuit has found constitutes a "clear and unambiguous" disavowal. *Seachange Int'l Inc. v. C-Cor Inc.*, 413 F.3d 1361, 1372 (Fed. Cir. 2005). Active8 also suggests that there is some ambiguity as to "which argument applied to which claims." However, the prosecution histories show that the applicants unequivocally stated that the argument was made with respect to claims 1-7, 9, 10 and 17-20, and therefore, expressly applied to claim 19.[15] Exh. E4 at 8.[16]

The applicants further disclaimed the scope of conventional static media objects covering electronic static media when they deleted the reference to "comprising electronic content" from claim 19. Active8 argues that this language may have been deleted from the claims because "the inclusion of this phrase would have been merely redundant." Active8's attempt to manufacture doubt fails for three reasons. First, the applicants would not have included it in the claims in the first place if they truly thought the phrase was redundant. Second,

---

[15] These arguments also expressly applied to original claim 20, which issued as claim 2 and depends from original claim 19. Active8 argues that issued claim 2 makes no sense after the applicants' disavowal of electronic media object scope and subsequent amendment of other claims, and therefore there was no disavowal. This view is contrary to the Federal Circuit's holding that if an applicant overcomes a prior art rejection by narrowing a first claim, but fails to amend a second, similarly rejected claim, the second claim, if allowed to issue over the prior art, must also be construed as though it had been similarly narrowed. *Acco Brands, Inc. v. Micro Security Devices, Inc.*, 346 F.3d 1075, 1078-9 (Fed. Cir. 2003). Under *Acco*, the applicants' disavowal of electronic media scope also applies to claim 2, even though it was not amended.

[16] To the extent that Active8 is arguing that the applicants' arguments were general and did not apply specifically to claims 19 and 20, the Federal Circuit has explicitly rejected this argument. *Seachange*, 413 F.3d at 1373 ("a general statement distinguishing prior art applied to all claims linked to the statement.") (emphasis added). In any event, in their Office Action response, the applicants' explicitly linked the argument to claims 19 and 20. Exh. E4 at 8.

the applicants make no reference in their Office Action response or anywhere else in the prosecution history of deleting claim language to remove redundancy. Finally, when the Office Action response is viewed as a whole, it is clear that the deletion of claim language was connected to the applicants' effort to overcome electronic media prior art by arguing the absence of a physical static media object.

Active8 also argues that the "conventional static media object" cannot be limited to non-electronic media objects, because (i) the '006 patent is limited to non-electronic media objects, (ii) the '889 patent was specifically filed to disclose and claim a "new category" of static media objects, and therefore (iii) cannot be limited to non-electronic media objects, because that would be the same as the '006 patent. This argument ignores two facts. First, "conventional static media object" only appears in claim 1 (and claim 2 by reference) of the '889 patent; Active8 does not dispute that all of the other claims of the '889 patent are limited to non-electronic media objects. Second, in order to overcome a double-patenting rejection, the applicants filed a terminal disclaimer for the '889 patent over the '006 patent, in effect, an admission that the claims of the '889 patent (including claim 19) do not represent a new invention over the '006 patent.

## V. CONCLUSION

Based upon the foregoing, Advance respectfully requests that the Court construe the disputed claim terms in accordance with Advance's proposals set forth herein as well as in its Answering Brief and in the Joint Claim Construction Statement.

Dated: New York, New York
      June 26, 2006

Respectfully submitted,

KRAMER LEVIN NAFTALIS & FRANKEL LLP

By: /s/ Randy Lipsitz
    Randy Lipsitz, Esq. (RL-1526)
    Richard L. Moss, Esq. (RLM-7948)
    Aaron M. Frankel, Esq. (AMF-9348)
    1177 Avenue of the Americas
    New York, New York 10036
    Tel.: (212) 715-9100
    Fax: (212) 715-8000
    Attorneys for Plaintiff
     Advance Magazine Publishers Inc. d/b/a
      The Condé Nast Publications
                      &
    Attorneys for Third Party Defendant
     Advance Publications, Inc.

OF COUNSEL:

Jerry S. Birenz, Esq.
Michael J. Anderson, Esq.
SABIN, BERMANT & GOULD LLP
4 Times Square, 23rd Floor
New York, NY 10036-6526
Tel.: (212) 381-7000