Paul R. Niehaus, Esq. (PN-3994)
NIEHAUS LLP
230 Park Avenue, 10th Floor
New York, NY  10169
(212) 551-1445

Dale Lischer, Esq. (DL-9708)
T. Hunter Jefferson, Esq. (TJ-8693)
Deborah A. Heineman, Esq. (DH-5681)
SMITH, GAMBRELL & RUSSELL, LLP
Promenade II, Suite 3100
1230 Peachtree St., N.E.
Atlanta, Georgia  30309
(404) 815-3500

Attorneys for Defendants Activ8now, LLC
and Active8media, LLC

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
————————————————————————x

| | |
|---|---|
| ADVANCE MAGAZINE PUBLISHERS INC. : <br> d/b/a THE CONDÉ NAST PUBLICATIONS, : <br> : <br> : <br> Plaintiff, : <br> : <br> v. : <br> : <br> ACTIV8NOW, LLC and ACTIVE8MEDIA, LLC, : <br> : <br> : <br> Defendants, : <br> Counterclaimants Activ8now : <br> and Active8media, : <br> : <br> v. : <br> : <br> ADVANCE PUBLICATIONS, INC. : <br> and RICHFX, INC., : <br> : <br> Third Party Defendants : | CIVIL ACTION NO.: <br> 1:05-cv-07516-(KMK)(DFE) <br> ELECTRONICALLY FILED <br><br> DEFENDANTS' AMENDED <br> COUNTERCLAIMS |

————————————————————————x

## DEFENDANTS' AMENDED COUNTERCLAIMS

Defendants Activ8now, LLC ("Activ8now") and Active8media, LLC ("Active8media"), by consent of Plaintiff and Counterclaim Defendant Advance Magazine Publishers Inc. d/b/a The Condé Nast Publications, Counterclaim Defendants Advance Publications, Inc., and RichFX, hereby file their Amended Counterclaims against Plaintiff and Counterclaim Defendant Advance Magazine Publishers Inc. d/b/a The Condé Nast Publications ("Condé Nast"), and against the additional Counterclaim Defendants Advance Publications, Inc. ("Advance Publications") and RichFX (collectively the "Counterclaim Defendants"), showing the Court the following:

## THE PARTIES

1.    Counterclaim Plaintiff Activ8now is a limited liability company organized under the laws of the State of Delaware.

2.    Counterclaim Plaintiff Active8media is a limited liability company organized under the laws of the State of Delaware.

3.    Plaintiff and Counterclaim Defendant Advance Magazine Publishers Inc. d/b/a The Condé Nast Publications is a corporation incorporated under the laws of the State of New York with its principal place of business in New York, New York and is subject to the jurisdiction of this Court.

4.    Counterclaim Defendant Advance Publications is a corporation organized under the laws of the State of New York with its principal place of business in Staten Island, New York and is subject to the jurisdiction of this Court.

5.    Counterclaim Defendant RichFX is a corporation incorporated under the laws of the State of Delaware with its principal place of business in New York, New York.  RichFX is subject to the jurisdiction of this Court.

6.     This Court has jurisdiction over the subject matter of these Counterclaims pursuant to 28 U.S.C. §§ 1331, 1338 and 1367 and 15 U.S.C. § 1121 because these Counterclaims involve claims arising under the provisions of the Patent Laws of the United States of America, 35 U.S.C. § 271 *et seq.*; the provisions of the Lanham Act, 35 U.S.C. §1125(a); and under the Declaratory Judgment Act, 28 U.S.C. § § 2201 and 2202.

<u>**VENUE**</u>

7.     Venue is proper in this Court for purposes of these Counterclaims pursuant to 28 U.S.C. § 1391 (b) and (c).

<u>**ACTUAL AND JUSTICIABLE CONTROVERSY**</u>

8.     By virtue of the allegations and charges in Condé Nast's Amended Complaint, Condé Nast has created an actual and justiciable controversy.

<u>**ACTIV8NOW'S PATENTS**</u>

9.     Activ8now holds all rights, title, and interest in two patents:  United States Patent No. 6,535,889 (the " '889 Patent") and United States Patent No. 6,557,006 (the " '006 Patent").

10.     The '889 Patent issued on March 18, 2003 and protects from infringement a "System and Method for Obtaining and Displaying an Interactive Electronic Representation of a Conventional Static Media Object."

11.     The '006 Patent issued on April 29, 2003 and protects from infringement a "System and Method for Displaying an Interactive Electronic Representation of a Corresponding Static Media Object."

<u>**ACTIVE8MEDIA'S BUSINESS**</u>

12.     Active8media offers publishers the ability to turn their catalogs and magazines into interactive web pages available through the Internet.  In essence, users are able to view any page

in the physical publication online and then interact with the page. This technology is protected by the '889 Patent and the '006 Patent, both of which are exclusively licensed by Activ8now to Active8media.

## ACTIVE8MEDIA'S SERVICE MARKS

13.    Since as early as December 2003, Active8media has used the service mark "See It Activate It Get It" for identifying its website "activation" services (*i.e.*, providing online interactive advertisements from a print magazine for the goods and services of others via a website). Based on its use of the service mark "See It Activate It Get It," Active8media is the owner of the service mark "See It Activate It Get It" and is the owner of United States Trademark Application No. 78/685,794 to register its "See It Activate It Get It" mark on the Principal Register maintained by the United States Patent & Trademark Office.

14.    In addition, since as early as April 2004, Active8media has also used the kindred service mark "See It Click It Get It" for identifying its website "activation" services. Based on its use of the service mark "See It Click It Get It," Active8media is the owner of the service mark "See It Click It Get It" and is the owner of United States Trademark Application No. 78/685,804 to register its "See It Click It Get It" mark on the Principal Register maintained by the United States Patent & Trademark Office.

15.    In January of 2005 Active8media added a third three-part mark – "Love Learn Locate" – to its existing family of allied service marks. Since January 2005 Active8media has used "Love Learn Locate" for identifying its website "activation" services. Based on its use of the service mark "Love Learn Locate," Active8media is the owner of the service mark "Love Learn Locate" and is the owner of United States Trademark Application No. 78/664,682 to register its "Love

Learn Locate" mark on the Principal Register maintained by the United States Patent & Trademark Office.

## ACTIVE8MEDIA'S CONTRACT WITH CONDÉ NAST FOR VOGUE MAGAZINE

16.    In 2004, Active8media began to have discussions with Plaintiff and Counterclaim Defendant Condé Nast regarding the use of Activ8now's technology for Condé Nast's September 2004 issue of Vogue Magazine, the largest issue of the magazine each year.

17.    In June 2004, Condé Nast executed a contract with Active8media (the "Vogue Agreement").

18.    Pursuant to the Vogue Agreement, Active8media agreed to provide goods and services related to Activ8now's patented technology to Condé Nast for the September 2004 issue of Vogue Magazine.

19.    As part of the Vogue Agreement, Active8media provided limited licenses to Condé Nast for the '889 Patent and the '006 Patent.   The Vogue Agreement also contained mutual acknowledgements by Condé Nast and Active8media that they were the sole and exclusive owners of all right, title and interest in and to the trademarks, service marks, trade names and logos of Condé Nast and Active8media, respectively.   Both the "Publisher Marks" and the "Active8media Marks" were undefined in the Agreement.   The Vogue Agreement also contained an express acknowledgement by Condé Nast that it would have no right or license to, and would not use, copy, print, display, publish, transmit, sublicense or otherwise transfer, distribute or otherwise make available to others, edit, modify or create any derivative works of all or any part of the Active8media Technology, Customized User Interface, the Active8media Site, the Activated Images, or the Active8media Logo, including, without limitation, any URLs used in connection therewith.

20.     Because the technology, goods, and services offered by Active8media had never been used for such a large publication, Active8media agreed to offer its technology, goods, and services at an extremely reduced rate to Condé Nast.

21.     With full knowledge of the price break Condé Nast was receiving, Condé Nast executed the Vogue Agreement and immediately began a campaign to convince Vogue Magazine's advertisers to participate in the unique opportunity.

22.     As part of that campaign, Condé Nast used Activ8media's "See It Click It Get It" mark to identify that Activ8media would be providing the unique "activation" services.

23.     Active8media, working together with Condé Nast and its advertisers, worked diligently on creating www.shopseptembervogue.com.

24.     This website permitted any user to view virtually every advertisement page in the September 2004 issue of Vogue Magazine and to interact with the advertisement.

25.     The website went live on August 24, 2004.

26.     Even before the website became active and the September 2004 issue hit newsstands, Vogue Magazine's publisher began making public statements regarding the great success of Activ8now's technology and the way it was received by Vogue Magazine's advertisers.

27.     In fact, Vogue Magazine's publisher even attributed the great financial success of the September 2004 issue to Activ8now's technology.

28.     The website remained in operation until October 31, 2004.

29.     While the site was publicly operational, Counterclaim Defendant RichFX visited the site on August 27 and 30 and September 7, 10, 13, 15, 16, 17, 20, and 21, 2004.

30.     On October 31, 2004, both Condé Nast and Active8media had fully performed their obligations under the agreement between Vogue Magazine and Active8media. Thus, the Vogue

Agreement expired by its own terms at that time, and all licenses granted by Activate8media to Condé Nast under the Vogue Agreement terminated with the expiration of the Vogue Agreement.

## THE COUNTERCLAIM DEFENDANTS' CONSPIRACY

31.    After the Vogue Agreement expired, the Counterclaim Defendants formed a conspiracy to, *inter alia*, infringe on Activ8now's patents, to create a derivative work of and transfer or otherwise make available to others Activ8now and Active8media's technology and property (including, but not limited to, the Customized User interface, the Active8media site and activated images), to steal and misappropriate Activ8now's and Active8media's property, technology, and trade secrets, and to pass off different "activation" services under Activ8media's "See It Click It Get It" service mark.

32.    Through the conspiracy, Condé Nast hoped to be able to receive the benefits of Activ8now's technology and service mark recognition without the costs associated with purchasing or licensing any right to use the technology or service mark.

33.    Throughout the conspiracy, Advance Publications directed the actions of its subsidiary Condé Nast.

34.    On October 31, 2004, both Condé Nast and Active8media had fully performed their obligations under the Vogue Agreement between Vogue Magazine and Active8media.

35.    After the completion and expiration of the Vogue Agreement between Vogue Magazine and Active8Media, Condé Nast and Active8media began discussions regarding the March 2005 issue of Vogue Magazine.

36.     Specifically, Condé Nast desired to use Activ8now's unique technology to "activate" advertisements in the March 2005 issue of Vogue Magazine just as it had done for the September 2004 issue of Vogue Magazine.

37.     As negotiations progressed and unbeknownst to Activ8now and Active8media at the time, Condé Nast and RichFX began to access restricted portions of Active8media's network.

38.     This enabled both Condé Nast and RichFX to access and copy information, software, computer code, and other trade secrets of Activ8now and Active8media.

39.     For example, Condé Nast and RichFX accessed restricted portions of Plaintiff's network for more than twelve hours on January 10, 2005.

40.     Between February 2 and 8, 2005, Condé Nast and RichFX mined Active8media's network and downloaded and copied all files, documents, and data related to www.shopseptembervogue.com and Active8media' work in developing and implementing the site.

41.     Condé Nast and RichFX copied and downloaded the software implementation used by Active8media to develop the appearance and functionality of www.shopseptembervogue.com, the advertiser database created by Active8media for the site, and the software developed by Active8media for acquiring, analyzing and reporting performance data for the site.

42.     It was at this time that Condé Nast and RichFX inappropriately acquired Activ8now and Active8media's trade secrets.

43.     Eventually, Condé Nast ceased negotiations with Active8media and awarded the contract for the March 2005 issue of Vogue Magazine to RichFX at a substantially reduced price.

44.     In fact, on January 5, 2005, Condé Nast informed Active8media that it would not make its March 2005 issue of Vogue Magazine website similar to the one for the September 2004 issue of Vogue Magazine because of Activ8now's patents.

45.     However, throughout January and February, Condé Nast and RichFX continued to hack into restricted portions of Active8media's network and also downloaded and copied every piece of information on Active8media's network related to www.shopseptembervogue.com.

46.     In order to convince advertisers to participate in the online version of the March 2005 issue of Vogue Magazine, Condé Nast and RichFX approached Vogue Magazine's advertisers and demonstrated to them Activ8now's technology and offered to them the same technology for the March 2005 issue of Vogue Magazine.

47.     In so doing, and in order to confuse their advertising customers as to the source of the "activation" services for the March 2005 issue of Vogue Magazine, Condé Nast and RichFX informed advertisers that they could "See It, Click It, Get It Again."

48.     When the website for the March 2005 issue of Vogue Magazine went live, it used technology and methods of doing business covered by the '889 Patent and the '006 Patent.

49.     In addition, the website used technology and trade secrets which Condé Nast and RichFX misappropriated from Active8media when they hacked into Active8media's secure network.

50.     With the success of the March 2005 issue of Vogue Magazine, Condé Nast and RichFX decided to infringe on the '889 Patent and '006 Patent and to misappropriate Activ8now's and Active8media's technology and trade secrets for the May 2005 issue of Condé Nast Traveler Magazine.

51.    For the September 2005 issue of Vogue Magazine, Condé Nast and RichFX once again undertook a scheme to infringe on the '889 and the '006 Patent and to misappropriate Activ8now's and Active8media's technology and trade secrets.

52.    In addition, for the September 2005 issue of Vogue Magazine, Condé Nast and RichFX once again undertook to confuse their advertising customers by again passing off their services under Activ8media's "See It Click It Get It" service mark.

53.    Thus, as part of Condé Nast's advertising agreements with Vogue Magazine's advertisers, Condé Nast, through its relationship with RichFX, agreed to provide Vogue Magazine's advertisers with Activ8now's and Active8media's patented technology and trade secrets.

54.    In essence, Condé Nast offered to sell to all of its advertisers static advertisements in the print issue for the September 2005 issue of Vogue Magazine plus online advertisements using Activ8now's and Active8media's patented technology and trade secrets.

55.    After the commencement of this Action, Condé Nast and RichFX decided to rework the online version of the September 2005 issue of Vogue Magazine in an attempt to disguise their acts of infringement surrounding the sales of advertisements for the September 2005 issue of Vogue Magazine.

56.    However, Condé Nast has not attempted to conceal its misuse of Active8media's service marks, and in fact has continued to brazenly use Active8media's "See It Click It Get It" mark on its www.insidevogue.com website.

**ACTIVE8MEDIA'S CONTRACT WITH CONDÉ NAST**
**FOR HOUSE & GARDEN MAGAZINE**

57.     In March 2005, Condé Nast executed another contract with Active8media, this one regarding the use of Activ8now's technology for Condé Nast's June 2005 issue of House & Garden (the "House & Garden Agreement").

58.     The House & Garden Agreement, like the Vogue Agreement before it, contains mutual acknowledgements by Condé Nast and Active8media that they are the sole and exclusive owners of all right, title and interest in and to the trademarks, service marks, trade names and logos of Condé Nast and Active8media, respectively.  Both the "Publisher Marks" and the "Active8media Marks" are undefined in the Agreement.  The House & Garden Agreement also contains an express acknowledgement by Condé Nast that it shall have no right or license to, and it shall not use, copy, print, display, publish, transmit, sublicense or otherwise transfer, distribute or otherwise make available to others, edit, modify or create any derivative works of all or any part of the Active8media Technology, Customized User Interface, the Active8media Site, the Activated Images, or the Active8media Logo, including, without limitation, any URLs used in connection therewith.

59.     As with the Vogue Agreement previously, Activ8media allowed Condé Nast to use an Activ8media service mark (this time "Love Learn Locate") to promote the fact that the June 2005 issue of House & Garden would be "activated" online by Activ8media.

60.     The House & Garden Agreement by its terms expired on December 31, 2005, and all licenses granted by Activate8media to Condé Nast under the House & Garden Agreement terminated with the expiration of the House & Garden Agreement.

61.     However, as had been their *modus operandi* with Activ8media's other service marks, Condé Nast intentionally continued to use Activ8media's "Love Learn Locate" service mark

after the December 31, 2005 expiration of the House & Garden Agreement in a willful attempt to create confusion as to who would be providing the "activation" services for future issues of House & Garden Magazine.

62.     Specifically, Condé Nast improperly used Activ8media's "Love Learn Locate" mark in connection with their promotion of the "activation" of the May 2006 edition of House & Garden Magazine.

## COUNT I- PATENT INFRINGEMENT IN VIOLATION OF 35 U.S.C. § 271(a)

63.     Activ8now and Active8media repeat, reallege, and incorporate herein by reference, each and every allegation set forth in Paragraph 1 through Paragraph 62 of their Counterclaims as if the same were fully set forth herein.

64.     The Counterclaim Defendants, jointly and severally as joint and contributory infringers, have made, used, sold, and offered to sell and continue to make, use, sell, and offer to sell goods and technology which unlawfully incorporate or utilize the inventions described or claimed in the '889 Patent and the '006 Patent in violation of 35 U.S.C. § 271(a).

65.     The Counterclaim Defendants have engaged in patent infringement in furtherance of their civil conspiracy.

66.     The Counterclaim Defendants' acts of patent infringement have been willful, deliberate, and intentional.

67.     The Counterclaim Defendants' numerous and repeated acts patent infringement have actually and proximately caused damages to Activ8now and Active8media in an amount to be proven at trial.

## COUNT II - PATENT INFRINGEMENT IN VIOLATION OF 35 U.S.C. § 271(b)

68.     Activ8now and Active8media repeat, reallege, and incorporate herein by reference, each and every allegation set forth in Paragraph 1 through Paragraph 67 of their Counterclaims as if the same were fully set forth herein.

69.     The Counterclaim Defendants, jointly and severally as joint and contributory infringers, have induced others to make, use, sell, and offer to sell and continue to induce others to make, use, sell, and offer to sell goods and technology which unlawfully incorporate or utilize the inventions described or claimed in the '889 Patent and the '006 Patent in violation of 35 U.S.C. § 271(b).

70.     The Counterclaim Defendants have engaged in patent infringement in furtherance of their civil conspiracy.

71.     The Counterclaim Defendants' acts of patent infringement have been willful, deliberate, and intentional.

72.     The Counterclaim Defendants' numerous and repeated acts patent infringement have actually and proximately caused damages to Activ8now and Active8media in an amount to be proven at trial.

## COUNT III - PATENT INFRINGEMENT IN VIOLATION OF 35 U.S.C. § 271(c)

73.     Activ8now and Active8media repeat, reallege, and incorporate herein by reference, each and every allegation set forth in Paragraph 1 through Paragraph 72 of their Counterclaims as if the same were fully set forth herein.

74.     The Counterclaim Defendants, jointly and severally as joint and contributory infringers, have made, used, sold, and offered to sell and continue to make, use, sell, and offer to sell goods and technology with the knowledge that they were especially made or especially adapted to

infringe the '889 Patent and the '006 Patent in violation of 35 U.S.C. § 271(c) because the goods and technology are not staples articles or commodities of commerce suitable for substantial, noninfringing use.

75.    The Counterclaim Defendants have engaged in patent infringement in furtherance of their civil conspiracy.

76.    The Counterclaim Defendants' acts of patent infringement have been willful, deliberate, and intentional.

77.    The Counterclaim Defendants' numerous and repeated acts patent infringement have actually and proximately caused damages to Activ8now and Active8media in an amount to be proven at trial.

## COUNT IV - CONVERSION

78.    Activ8now and Active8media repeat, reallege, and incorporate herein by reference, each and every allegation set forth in Paragraph 1 through Paragraph 77 of their Counterclaims as if the same were fully set forth herein.

79.    The Counterclaim Defendants, jointly and severally as joint tortfeasors and co-conspirators, have converted the technology, trade secrets, and property of Activ8now and Active8media to their own use to the detriment of Activ8now and Active8media by, *inter alia*:

   a.  using Active8media's computer databases and proprietary software to design and operate websites;

   b.  using Activ8now's and Active8media's trade secrets to design and operate websites; and

   c.  engaging in a pattern of racketeering activity which has actually and proximately caused damage to Activ8now and Active8media.

14

80.    The Counterclaim Defendants have engaged in conversion in furtherance of their civil conspiracy.

81.    The Counterclaim Defendants' numerous and repeated material conversions of the revenue and property of Activ8now and Active8media have actually and proximately caused damages to Activ8now and Active8media in an amount to be proven at trial.

## COUNT V - MISAPPROPRIATION OF TRADE SECRETS

82.    Activ8now and Active8media repeat, reallege, and incorporate herein by reference, each and every allegation set forth in Paragraph 1 through Paragraph 81 of their Counterclaims as if the same were fully set forth herein.

83.    Activ8now's and Active8media's software code, technology, databases, and other property and proprietary information derive economic value from not being generally known to and not being readily ascertainable by proper means by other persons who could obtain economic value from its disclosure or use.  Activ8now's and Active8media's software code, technology, databases, and other property and proprietary information are the subject of efforts that are reasonable under the circumstances to maintain their secrecy.

84.    Activ8now's and Active8media's software code, technology, databases, and other property and proprietary information are trade secrets as defined in O.C.G.A. § 10-1-761(4).

85.    Counterclaim Defendants, jointly and severally as joint tortfeasors and co-conspirators, acquired Activ8now's and Active8media's trade secrets through improper means.

86.    At the time of the use, Counterclaim Defendants knew or had reason to know that knowledge of the trade secrets was derived from or through others who had utilized improper means to acquire the trade secrets.

87.    At the time of the use, Counterclaim Defendants knew or had reason to know that knowledge of the trade secrets was acquired by others under circumstances giving rise to a duty to maintain their secrecy.

88.    Counterclaim Defendants disclosed and used Activ8now's and Active8media's trade secrets without Activ8now and Active8media's express or implied consent.

89.    Counterclaim Defendants' numerous and repeated misappropriation of Activ8now's and Active8media's trade secrets have actually and proximately caused damages to Activ8now and Active8media in an amount to be proven at trial.

90.    Because Counterclaim Defendants' misappropriation of Activ8now's and Active8media's trade secrets was willful and malicious, Activ8now and Active8media are entitled to exemplary damages in accordance with O.C.G.A. § 10-1-763(b).

91.    Because Counterclaim Defendants' misappropriation of Activ8now's and Active8media's trade secrets was willful and malicious, Activ8now and Active8media are also entitled to their reasonable attorney's fees in accordance with O.C.G.A. § 10-1-764.

## COUNT VI - MISAPPROPRIATION OF PROPERTY

92.    Activ8now and Active8media repeat, reallege, and incorporate herein by reference, each and every allegation set forth in Paragraph 1 through Paragraph 91 of their Counterclaims as if the same were fully set forth herein.

93.    Activ8now's and Active8media's software code, technology, databases, and other property and proprietary information constitute property in which Activ8now and Active8media have exclusive rights and interest.

94.    Counterclaim Defendants, jointly and severally as joint tortfeasors and co-conspirators, acquired Activ8now's and Active8media's property through improper means.

95.     Counterclaim Defendants acquired and used Activ8now's and Active8media's property without Activ8now and Active8media's express or implied consent.

96.     Counterclaim Defendants' numerous and repeated misappropriation of Activ8now's and Active8media's property have actually and proximately caused damages to Activ8now and Active8media in an amount to be proven at trial.

## COUNT VII - UNJUST ENRICHMENT

97.     Activ8now and Active8media repeat, reallege, and incorporate herein by reference, each and every allegation set forth in Paragraph 1 through Paragraph 96 of their Counterclaims as if the same were fully set forth herein.

98.     The Counterclaim Defendants have been unjustly enriched by, *inter alia*:

a . converting the technology, trade secrets, and property of Plaintiff;

b . misappropriating Activ8now's and Active8media's trade secrets;

c . misappropriating Activ8now's and Active8media's technology and property;

d . unjustly enriching themselves with the technology, trade secrets, marks, and property of Activ8now and Active8media;

e . engaging in unfair competition;

f . unfairly competing against Activ8now and Active8media in violation of the Uniform Deceptive Trade Practices Act;

g . unfairly competing against Activ8now and Active8media in violation of O.C.G.A. § 23-2-55;

h . violating the Georgia Computer Protection Act; and

i . engaging in a pattern of racketeering activity which has actually and proximately caused damages to Activ8now and Active8media.

99.    Activ8now and Active8media are entitled to damages from the Counterclaim Defendants for their unjust enrichment by an amount to be proved at trial.

## COUNT VIII - UNFAIR COMPETITION IN VIOLATION OF 15 U.S.C. § 1125(a): PASSING OFF

100.   Activ8now and Active8media repeat, reallege, and incorporate herein by reference, each and every allegation set forth in Paragraph 1 through Paragraph 99 of their Counterclaims as if the same were fully set forth herein.

101.   Counterclaim Defendants, jointly and severally as joint tortfeasors and co-conspirators, through their misuse of Activ8media's service marks, have used designations in interstate commerce in connection with the "activation" services provided by Counterclaim Defendants that are likely to cause confusion, or to cause mistake, or to deceive as to the origin, sponsorship, or approval of the "activation" services provided by Counterclaim Defendants.

102.   Counterclaim Defendants' misuse of Activ8media's service marks thus constitutes service mark infringement in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

103.   Counterclaim Defendants' misuse of Activ8media's service marks has been deliberate and intentional and was willfully calculated to deceive as to the origin, sponsorship, or approval of the "activation" services provided by Counterclaim Defendants.

104.   Counterclaim Defendants' misuse of Activ8media's service marks has actually and proximately caused damages to Activ8now and Active8media in an amount to be proven at trial.

105.   Because Counterclaim Defendants' misuse of Activ8media's service marks was willfully calculated to deceive, Activ8now and Active8media are entitled to up to treble damages in accordance with 15 U.S.C. § 1117.

106.   Because Counterclaim Defendants' misuse of Activ8now's and Active8media's service marks was willfully calculated to deceive, Activ8now and Active8media are also entitled to their reasonable attorney's fees in accordance with 15 U.S.C. § 1117.

### COUNT IX - UNFAIR COMPETITION IN VIOLATION OF 15 U.S.C. § 1125(a): REVERSE PASSING OFF

107.   Activ8now and Active8media repeat, reallege, and incorporate herein by reference, each and every allegation set forth in Paragraph 1 through Paragraph 106 of their Counterclaims as if the same were fully set forth herein.

108.   Counterclaim Defendants, jointly and severally as joint tortfeasors and co-conspirators, have designated falsely that Activ8now's and Active8media's goods and technology originate from Defendants in violation of 15 U.S.C. § 1125(a).

109.   Counterclaim Defendants' numerous and repeated acts of unfair competition have actually and proximately caused damages to Activ8now's and Active8media in an amount to be proven at trial.

### COUNT X  - UNFAIR COMPETITION

110.   Activ8now and Active8media repeat, reallege, and incorporate herein by reference, each and every allegation set forth in Paragraph 1 through Paragraph 109 of their Counterclaims as if the same were fully set forth herein.

111.   Counterclaim Defendants, jointly and severally as joint tortfeasors and co-conspirators, have designated falsely that Activ8now's and Active8media's goods and services originate from Defendants.

112.   Counterclaim Defendants, jointly and severally as joint tortfeasors and co-conspirators, have also designated falsely that Defendants' online interactive services originate from Activ8now and Activ8media.

113.  Counterclaim Defendants' numerous and repeated acts of unfair competition have actually and proximately caused damages to Activ8now's and Active8media in an amount to be proven at trial.

## COUNT XI - DECEPTIVE TRADE PRACTICES IN VIOLATION OF O.C.G.A. § 10-1-372(a)

114.    Activ8now and Active8media repeat, reallege, and incorporate herein by reference, each and every allegation set forth in Paragraph 1 through Paragraph 113 of their Counterclaims as if the same were fully set forth herein.

115.    Counterclaim Defendants, jointly and severally as joint tortfeasors and co-conspirators, engaged in deceptive trade practices in violation of O.C.G.A. § 10-1-372(a).

116.    Counterclaim Defendants' numerous and repeated misappropriations of Activ8now's and Active8media's property have actually and proximately caused damages to Activ8now and Active8media in an amount to be proven at trial.

## COUNT XII -UNFAIR COMPETITION IN VIOLATION OF O.C.G.A. § 23-2-55

117.    Activ8now and Active8media repeat, reallege, and incorporate herein by reference, each and every allegation set forth in Paragraph 1 through Paragraph 116 of their Counterclaims as if the same were fully set forth herein.

118.    Counterclaim Defendants, jointly and severally as joint tortfeasors and co-conspirators, attempted to encroach and actually encroached upon Activ8now's and Active8media's businesses with the intention of deceiving and misleading the public in violation of O.C.G.A. § 23-2-55.

119.    Defendants' numerous and repeated misappropriations of Activ8now's and Active8media's property have actually and proximately caused damages to Activ8now and Active8media in an amount to be proven at trial.

## COUNT XIII - CIVIL CONSPIRACY

120.    Activ8now and Active8media repeat, reallege, and incorporate herein by reference, each and every allegation set forth in Paragraph 1 through Paragraph 119 of their Counterclaims as if the same were fully set forth herein.

121.    The Counterclaim Defendants formed a civil conspiracy to engage in the following, *inter alia*, unlawful and tortious acts:

   a.    infringing Activ8now's patents including the '889 Patent and the '006 Patent;

   b.    converting the technology, trade secrets, and property of Plaintiff;

   c.    misappropriating Activ8now's and Active8media's trade secrets;

   d.    misappropriating Activ8now's and Active8media's technology and property;

   e.    unjustly enriching themselves with the technology, trade secrets, and property of Activ8now and Active8media;

   f.    engaging in unfair competition;

   g.    unfairly competing against Activ8now and Active8media in violation of the Lanham Act;

   h.    unfairly competing against Activ8now and Active8media in violation of the Uniform Deceptive Trade Practices Act;

   i.    unfairly competing against Activ8now and Active8media in violation of O.C.G.A. § 23-2-55;

   j.    violating the Georgia Computer Protection Act; and

   k.    engaging in a pattern of racketeering activity which has actually and proximately caused damages to Activ8now and Active8media.

122.    As civil co-conspirators, the Counterclaim Defendants acted in concert and are joint tortfeasors.  They are jointly and severally liable for the illegal acts of each.

123.    The Counterclaim Defendants have engaged in acts in furtherance of their civil conspiracy.

124.    Activ8now and Active8media are entitled to an award from the Counterclaim Defendants, jointly and severally as joint tortfeasors and co-conspirators, in an amount to be proven at trial.

### COUNT XIV – DECLARATORY JUDGMENT OF NONINFRINGEMENT

125.    Activ8now and Active8media repeat, reallege, and incorporate herein by reference, each and every allegation set forth in Paragraph 1 through Paragraph 124 of their Counterclaims as if the same were fully set forth herein.

126.    Active8media owns all right, title and interest in and to the mark "Love Learn Locate" based on Active8media's prior use of the mark  "Love Learn Locate"  and its application to register its mark "Love Learn Locate" on the Principal Register maintained by the United States Patent & Trademark Office.

127.    By virtue of Active8media's ownership of the mark "Love Learn Locate," Activ8now and Active8media are entitled to a declaration under 28 U.S.C. § § 2201 and 2202 that they have not engaged in trademark infringement.

### COUNT XV – DECLARATORY JUDGMENT REFUTING UNFAIR COMPETITION AND RELATED CLAIMS

128.    Activ8now and Active8media repeat, reallege, and incorporate herein by reference, each and every allegation set forth in Paragraph 1 through Paragraph 127 of their Counterclaims as if the same were fully set forth herein.

129.    Active8media owns all right, title and interest in and to the mark "Love Learn Locate" based on Active8media's prior use of the mark "Love Learn Locate" and its application to register its mark "Love Learn Locate" on the Principal Register maintained by the United States Patent & Trademark Office.

130.    By virtue of Active8media's ownership of the mark "Love Learn Locate," Activ8now and Active8media are entitled to a declaration under 28 U.S.C. § § 2201 and 2202 that they have not unfairly competed with or otherwise violated any rights of Condé Nast.

## COUNT XVI - PUNITIVE DAMAGES

131.    Activ8now and Active8media repeat, reallege, and incorporate herein by reference, each and every allegation set forth in Paragraph 1 through Paragraph 130 of their Counterclaims as if the same were fully set forth herein.

132.    The Counterclaim Defendants' actions demonstrate willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care that would raise the presumption of conscious indifference to consequences.

133.    Punitive damages are necessary to punish, penalize, or deter the Counterclaim Defendants.

134.    Activ8now and Active8media are entitled to an award of punitive damages from the Counterclaim Defendants, pursuant to O.C.G.A. § 51-12-5.1, in an amount to be proven at trial.

## COUNT XVII - ATTORNEY'S FEES AND OTHER LITIGATION COSTS IN ACCORDANCE WITH O.C.G.A. § 13-6-11

135.    Activ8now and Active8media repeat, reallege, and incorporate herein by reference, each and every allegation set forth in Paragraph 1 through Paragraph 134 of their Counterclaims as if the same were fully set forth herein.

136.    By their willful and malicious conduct, the Counterclaim Defendants have acted in bad faith and have caused Activ8now and Active8media unnecessary trouble and expense.

137.    Accordingly, Activ8now and Active8media are entitled to recovery of the costs of this litigation, including, but not limited to, reasonable attorney fees pursuant to O.C.G.A. § 13-6-11 and other applicable law.

## **PRAYER FOR RELIEF**

WHEREFORE Activ8now and Active8media request the following relief:

A.  That Activ8now and Active8media receive a trial by jury on all issues triable to a jury;

B.  That judgment be entered in favor of Activ8now and Active8media and against Plaintiff and Counterclaim Defendants;

C.  An award of damages in an amount to be proven at trial;

D.  An award of treble damages pursuant to 35 U.S.C. § 284;

E.  An award of Activ8now's and Active8media's attorney fees pursuant to 35 U.S.C. § 285;

F.  An award of exemplary damages pursuant to O.C.G.A. § 10-1-763(b);

G.  An award of Activ8now's and Active8media's attorney fees in accordance with O.C.G.A. § 10-1-764;

H.  That Counterclaim Defendants be required to account to Activ8now and Active8media for any and all profits derived by Counterclaim Defendants from the sale of their "activation" services under Active8media's service marks, and for all damages sustained by Activ8now and Active8media by reason of said unfair competition pursuant to 15 U.S.C. § 1117(a);

I.   An award of treble damages pursuant to 15 U.S.C. § 1117(a);

J.   An award of Activ8now's and Active8media's attorney fees pursuant to 15 U.S.C. § 1117(a);

K.  A constructive trust on the various assets of the Counterclaim Defendants;

L.   An equitable lien on the various assets of the Counterclaim Defendants;

M.  Restitution from the Counterclaim Defendants in an amount to be proven at trial;

N.  A full and complete accounting of the Counterclaim Defendants;

O.  A temporary, interlocutory, and permanent injunction to stop the various tortious and illegal acts of the Counterclaim Defendants;

P.   A temporary, interlocutory, and permanent injunction to enjoin the Counterclaim Defendants from further acts of patent infringement in accordance with 35 U.S.C. § 283;

Q.  A temporary, interlocutory, and permanent injunction to enjoin the Counterclaim Defendants from further disclosing, divulging or publishing to others or using in any manner Activ8now and Active8media's trade secrets and from further violating the Georgia Trade Secrets Act in accordance with O.C.G.A. § 10-1-762(a);

R.   A temporary, interlocutory, and permanent injunction requiring the Counterclaim Defendants to pay a reasonable royalty for any future use of Activ8now's and Active8media's trade secrets if the Court should determine that it would be unreasonable to prohibit future use pursuant to O.C.G.A. § 10-1-762(b);

S.   A temporary, interlocutory, and permanent injunction requiring the Counterclaim Defendants to protect Activ8now's and Active8media's trade secrets pursuant to O.C.G.A. § 10-1-762(c);

T.  A temporary, interlocutory, and permanent injunction pursuant to 15 U.S.C. § 1116 containing such terms as the court may deem reasonable in order to prevent further violation of 15 U.S.C. § 1125(a) by Counterclaim Defendants' use of the Activ8media service marks; and requiring the Counterclaim Defendants, in accordance with 15 U.S.C. § 1116, to file with this Court and serve on Activ8media within thirty (30) days from the date of entry of any injunction a report in writing, under oath, setting forth in detail the manner and form in which Counterclaim Defendants have complied with the terms of the injunction

U.  A declaration that neither Activ8now nor Active8media have engaged in trademark infringement;

V.  A declaration that neither Activ8now nor Active8media have unfairly competed with Condé Nast;

W. An award of punitive damages in accordance with O.C.G.A. § 51-12-5.1 in an amount to be proven at trial;

X.  An award of Activ8now's and Active8media's attorney fees and cost of investigation and litigation in accordance with O.C.G.A. § 13-6-11 in an amount to be proven at trial;

Y.  An award of Activ8now's and Active8media's attorney fees and cost of investigation and litigation;

Z.  An award of pre-judgment and post-judgment interest; and

AA.    Any and all other relief which the Court deems just and proper.

This 27th day of June, 2006.

Deborah A. Heineman____
Dale Lischer (DL-9708)
T. Hunter Jefferson  (TJ-8693)
Deborah A. Heineman (DH-5681)

SMITH, GAMBRELL & RUSSELL, LLP
Promenade II, Suite 3100
1230 Peachtree Street, N.E.
Atlanta, Georgia  30309-3592
404.815.3500
404.815.3509 (Facsimile)

Paul R. Niehaus (PN-3994)
NIEHAUS LLP
230 Park Avenue, 10th Floor
New York, NY  10169
(212) 551-1445

Attorneys for Activ8now, LLC and
Active8media, LLC

## CERTIFICATE OF SERVICE

I hereby certify that I have filed a copy of the within and foregoing Defendants'
Amended Counterclaims with the Clerk of Court using the CM/ECF system which will send
electronic notice of such filing to:

    Randy Lipsitz, Esq. (RL-1526)
    Richard L. Moss, Esq. (RLM-7948)
    KRAMER LEVIN NAFTALIS & FRANKEL LLP
    1177 Avenue of the Americas
    New York, New York  10036

    Robert Eliot Hanlon, Esq.
    ALSTON & BIRD, LLP
    90 Park Avenue
    New York, New York  10016

    Frank G. Smith, III, Esq.
    George D. Medlock, Esq.
    ALSTON & BIRD, LLP
    1201 W. Peachtree Street
    Atlanta, Georgia 30309

This 27th day of June, 2006.

                        s/Deborah A. Heineman___
                        Deborah A. Heineman